UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEXTGEAR CAPITAL, INC. AND<br>WESTLAKE FLOORING COMPANY, LLC, | § § § | |
| PLAINTIFFS, | § § | CIVIL ACTION NO. _____ |
| V. | § § | |
| DEALERS CREDIT EXPRESS, INC., | § § | |
| DEFENDANT. | § | |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW NEXTGEAR CAPITAL, INC. AND WESTLAKE FLOORING COMPANY, LLC, Plaintiffs herein, complaining of DEALERS CREDIT EXPRESS, INC., and for cause would respectfully show the following

### **PARTIES**

1. Plaintiff NextGear Capital, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Carmel, Indiana.

2. Plaintiff Westlake Flooring Company, LLC, is a limited liability company organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California.

3. Defendant Dealers Credit Express, Inc. is a corporation organized and existing under the laws of the State of Texas and may be served with process by and through its registered agent, Bobby L. Howell, at 1921 Moores Lane, Texarkana, Texas 75503.

### **JURISDICTION AND VENUE**

4. Original jurisdiction exists under 28 U.S.C. § 1332. The dispute is between

citizens of different states and the amount in controversy exceeds seventh-five thousand dollars ($75,000.00), exclusive of interest and costs.

5.   Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

6.   The plaintiffs in this action, NextGear Capital, Inc. ("NextGear") and Westlake Flooring Company, LLC ("WFC"), by counsel, files this Original Complaint seeking a court order determine the perfection and priority of NextGear's and WFC's security interest in sales proceeds currently held by defendant Dealer's Credit Express, Inc. ("DCE") from the sale of motor vehicles recovered by DCE at auction.

## FACTS SPECIFIC TO NEXTGEAR

7.   On or about May 9, 2013, NextGear and Bullmoose Motor Sports, LLC d/b/a James Maverick Motor Sports ("Bullmoose") entered into a floorplan financing agreement whereby Bullmoose signed and executed a Demand Promissory Note and Loan and Security Agreement (the "NextGear Agreement") in favor of NextGear.

8.   A true and correct copy of the NextGear Agreement, along with all exhibits and attachments thereto, is attached and incorporated herein by reference as Exhibit "A." Bullmoose was a retail motor vehicle dealership located in Dallas County, Texas.

9.   Pursuant to the NextGear Agreement, NextGear, as Lender, agreed to make Advances (as defined in Appendix A subsection (2) of the Agreement) in its discretion to Bullmoose for Bullmoose's purchase and acquisition of motor vehicle inventory.

10. Concurrent with the execution of the NextGear Agreement, Bullmoose also executed an Advance/Fee Schedule and Power of Attorney in favor of NextGear. These documents are incorporated into the NextGear Agreement, attached hereto as Exhibit "A."

11. Pursuant to ¶ 2 of the NextGear Agreement, Bullmoose granted to NextGear a security interest in all of Bullmoose's Collateral (as defined in the Agreement) including Bullmoose's motor vehicle inventory, whether now existing or acquired and wherever located, and all additions, accessions, accessories, replacements, and proceeds, together with any and all chattel paper (the "NextGear Collateral").

12. NextGear perfected its security interests in the NextGear Collateral, including Bullmoose's motor vehicle inventory financed by NextGear, by filing a UCC-1 Financing Statement with the Texas Secretary of State on August 16, 2010, filing number 100023581373.

13. A true and correct copy of the UCC-1 financing statement dated August 16, 2010, along with all amendments and continuation statements, is attached hereto and incorporated herein by reference as Exhibit "B." The foregoing UCC-1 Financing Statement and amendments thereto were duly filed in full compliance with the filing provisions of TEX. BUS. & COMM. CODE §9.101 *et seq.*

14. Pursuant to §§ 9.310 and 9.311(d) of the TEX. BUS. & COM. CODE, the sole method to perfect a security interest in motor vehicles being held as inventory for sale or lease by Bullmoose is by filing a UCC-1 financing statement.

15. NextGear advanced to Bullmoose funds for the finance and purchase of Bullmoose's motor vehicle inventory. Pursuant to NextGear's Receivable Detail Report dated as of September 21, 2016 (the "NextGear RDR"), the unpaid balance of principal, interest and fees under the NextGear Agreement for advances made to Bullmoose was, at a minimum, $271,128.68.

16. A true and correct copy of the RDR is attached hereto as Exhibit "C." All of the motor vehicles listed in the NextGear RDR shall be referred to herein as the "NextGear Vehicles."

17. Bullmoose filed a no-asset Chapter 7 bankruptcy case, case # 16-33714 (the "Bankruptcy") on September 21, 2016 (the "Petition Date").

18. During the course of the Bankruptcy, NextGear filed an emergency motion for relief from stay against Bullmoose on September 23, 2016, and after notice and a hearing, the bankruptcy Court entered an agreed order on September 29, 2016 [Doc. # 17], lifting the automatic stay as to all the NextGear Vehicles as well as Bullmoose's books and records associated with the sales of the NextGear Vehicles. The agreed order also permitted NextGear to foreclose upon and liquidate any recovered NextGear Vehicle within 30 days of entry of the agreed order unless the Chapter 7 Trustee filed an objection. A true and correct copy of the order lifting the automatic Stay as it pertained to the NextGear Vehicles is attached hereto and incorporated by reference as Exhibit "D."

19. However, NextGear was only able to locate and recover one of the NextGear Vehicles, a 2015 Lexus IS 250, VIN # JTHBF1D25F5059662 (the "NextGear Recovered Vehicle").

20. NextGear subsequently foreclosed upon and sold the NextGear Recovered Vehicle pursuant to the terms and conditions of the agreed order lifting the automatic stay, and the Chapter 7 Trustee did not file any objection to the sale and disposition of the NextGear Recovered Vehicle.

21. NextGear received $20,875.00 in net auction proceeds from the sale of the NextGear Recovered Vehicle. Accordingly, the remaining deficiency balance of $250,253.68 remains currently due and owing by Bullmoose to NextGear under the NextGear Agreement.

**FACTS SPECIFIC TO WFC**

22. On or about April 21, 2016, WFC and Bullmoose entered into a floorplan financing agreement whereby Bullmoose signed and executed a Loan and Security Agreement (the "WFC Agreement") in favor of WFC.

23. A true and correct copy of the WFC Agreement, along with all exhibits and attachments thereto, is attached hereto and incorporated by reference as Exhibit "E."

24. Pursuant to the WFC Agreement, WFC, as Lender, agreed to make Advances (as defined in section 2(A) of the WFC Agreement) in its discretion to Bullmoose for Bullmoose's purchase and acquisition of motor vehicle inventory.

25. Concurrent with the execution of the WFC Agreement, Bullmoose also executed an Advance/Fee Schedule, Promissory Note, Power of Attorney, and ACH Authorization, among other things, in favor of WFC. These documents are incorporated into the WFC Agreement and collectively attached hereto as Exhibit "E."

26. Pursuant to ¶ 5 of the WFC Agreement, Bullmoose granted to WFC a security interest in all of Bullmoose's Collateral (as defined in the WFC Agreement) including Bullmoose's motor vehicle inventory, whether now existing or acquired and wherever located, and all additions, accessions, accessories, replacements, and proceeds, together with any and all chattel paper (the "WFC Collateral").

27. WFC perfected its security interests in the WFC Collateral, including Bullmoose's motor vehicle inventory financed by WFC, by filing a UCC-1 Financing Statement with the Texas Secretary of State on May 5, 2016, filing number 16-0014599661.

28. A true and correct copy of the UCC-1 financing statement dated May 5, 2016, is attached hereto as Exhibit "F." The foregoing UCC-1 Financing Statement and amendments

thereto were duly filed in full compliance with the filing provisions of TEX. BUS. & COMM. CODE §9.101 *et seq.*

29. WFC advanced to Bullmoose funds for the finance and purchase of Bullmoose's motor vehicle inventory. Pursuant to WFC's Receivable Detail Report current as of the Petition Date (the "WFD RDR"), the unpaid balance of principal, interest and fees under the WFC Agreement for advances made to Bullmoose was $932,712.61.

30. A true and correct copy of the WFC RDR is attached hereto as Exhibit "G." All of the motor vehicles listed in the WFC RDR shall be referred to herein as the "WFC Vehicles."

31. WFC filed an emergency motion for relief from stay in the Bankruptcy proceeding against Bullmoose on November 22, 2016, and after notice and a hearing, the Court entered an agreed order on December 9, 2016 [Doc. # 50], lifting the automatic stay as to all the motor vehicles listed in the WFC RDR as well as Bullmoose's books and records associated with the sales of the WFC Vehicles.

32. The agreed order also permitted WFC to foreclose upon and liquidate any recovered WFC Vehicle. A true and correct copy of the order lifting the automatic Stay as it pertained to the WFC Vehicles is attached hereto and incorporated by reference as Exhibit "H."

33. WFC was only able to locate and recover eighteen (18) of the WFC Vehicles, all of which are described by VIN, year, make, and model in the attached Exhibit "I," attached and incorporated hereto (the "Recovered WFC Vehicles").

34. Additionally, WFC sold and liquidated the WFC Recovered Vehicles pursuant to the terms and conditions of the agreed order lifting the automatic stay. As described in Exhibit "I," WFC received $306,616.25 in net auction proceeds from the sale of the WFC Recovered Vehicle.

35. Accordingly, the remaining deficiency balance of $626,096.36 remains currently due and owing by Bullmoose to WFC under the WFC Agreement.

### FACTS COMMON TO BOTH NEXTGEAR AND WFC

36. Plaintiffs agree and acknowledge that NextGear has a first priority perfected security interest as to all of the NextGear Collateral, which includes all motor vehicles made part of Bullmoose's inventory regardless of whether NextGear financed such vehicles, and any sales proceeds and chattel paper arising from inventory vehicles sold by Bullmoose.

37. WFC's security interest in the WFC Collateral, which also includes all motor vehicles made part of Bullmoose's inventory, regardless of whether WFC financed such vehicles, and any sales proceeds and chattel thereto, is junior and subject only to NextGear's first priority security interest.[1]

38. Furthermore, Plaintiffs agree that NextGear is entitled to first recover $250,253.68 from DCE, which if and when recovered would satisfy NextGear's outstanding balance under the NextGear Agreement, with WFC entitled to recover the remaining economic damages against DCE.

39. During the course of the Bankruptcy, DCE secured in its possession, custody and control fourteen (14) vehicles, which were previously repossessed from of Bullmoose's motor vehicle inventory by DCE and sent to Alliance Auto Auction in Dallas for storage.

40. The 14 recovered vehicles are described by make, year, and VIN (the "Recovered DCE Vehicles") in the attached Exhibit "J."

---

[1] Pursuant to § 9.322 of the TEX. BUS. & COM. CODE, priority among conflicting secured creditors ranks according to the earlier of the time a UCC-1 filing covering the collateral is first made or the security interest is first perfected. Thus, in the instant case, since NextGear and WFC filed their UCC-1 financing statements prior to DCE's filing or perfection in the same collateral, NextGear and WFC have priority over and above DCE's claimed security interest.

41. All fourteen (14) Recovered DCE Vehicles were inventory held for sale by Bullmoose in the ordinary course of Bullmoose's business at the time Bullmoose filed bankruptcy on the Petition Date.

42. Although NextGear and WFC did not provide Bullmoose with financing for these specific Recovered DCE Vehicles, Plaintiffs nonetheless hold a perfected security interest in the Recovered DCE Vehicles by virtue of their priority blanket security interest in Bullmoose's motor vehicle inventory and proceeds thereto, among other things, due to the prior, earlier in time, UCC-1 filings by both NextGear and WFC.[2]

43. DCE allegedly filed a UCC-1 Financing Statement securing its alleged security interest in the Recovered DCE Vehicles on July 19, 2016, with the Texas Secretary of State's office.

44. Both NextGear and WFC filed their UCC-1 Financing Statements prior to DCE allegedly filing its UCC-1 Financing Statement with the Texas Secretary of State.

45. DCE failed to take the appropriate, affirmative steps to secure its first priority security interest in the DCE Vehicles. Pursuant to § 9.324 of the TEX. BUS. & COM. CODE, DCE could have obtained – but did not obtain – a first priority security interest in Bullmoose's motor vehicle inventory by complying with the requirements of § 9.324.

46. Plaintiffs did not receive any authenticated notification from DCE of DCE's conflicting, subsequently-filed and obtained security interest and was not informed that DCE had or expected to acquire a purchase-money security interest in any inventory of Bullmoose.

47. DCE admits that no authenticated, written notice was sent to Plaintiffs under Section 9.324 of the TEXAS BUSINESS AND COMMERCE CODE.

---

[2] *See* TEX. BUS. & COM. CODE § 9.322.

48. Accordingly, DCE cannot establish its position as a first priority secured creditor with respect to the DCE Vehicles or any sales proceeds from the sale and liquidation of any Recovered DCE Vehicles.

49. Instead, the Recovered DCE Vehicles and any sales proceeds therefrom are made part of Plaintiffs' superior-priority blanket lien with respect to Bullmoose's motor vehicle inventory and all proceeds thereto.

50. Counsel for Plaintiffs sent to counsel for DCE numerous requests for an accounting of the proceeds from the sale of the Recovered DCE Vehicles by e-mails dated November 2, December 9, December 12, and December 15, 2016.

51. Counsel for Plaintiffs also made demand for turnover of the sales proceeds of the Recovered DCE Vehicles, which DCE was required to escrow by order of the Bankruptcy Court pending a further determination as to who had priority in such escrowed proceeds. A true and correct copy of the e-mail string between counsel for Plaintiffs and counsel for DCE reflecting Plaintiffs' request for an accounting is attached hereto as Exhibit "K" and incorporated herein by reference.

52. However, DCE failed and refused to turn over the escrowed sales proceeds from the Recovered DCE Vehicles.

53. DCE served counsel for Plaintiffs with written correspondence dated December 16, 2016, whereby DCE stated it would not turn over the escrowed sales proceeds of the Recovered DCE Vehicles without a court order requiring DCE to do so, noting that "…DCE is holding proceeds of the sale of its collateral in escrow and will continue to do so until it receives further instructions from the Court." A true and correct copy of DCE's written correspondence dated December 16, 2016, is attached hereto and incorporated herein as Exhibit "L."

54. Pursuant to Bills of Sale reflecting the sale of the Recovered DCE Vehicles, DCE sold all fourteen of the Recovered DCE Vehicles for a collective sales amount of $331,348.58 (the "Disputed Proceeds").

55. The bills of sale and copies of checks associated with the sale and liquidation of the Recovered DCE Vehicles is attached hereto as Exhibit "M."

56. Despite having knowledge of Plaintiffs' security interests in the Recovered DCE Vehicles, and prior to the sale of the Recovered DCE Vehicles, DCE failed to send to NextGear or WFC any authenticated notification of disposition in compliance with TEX. BUS. & COM. CODE § 9.611.

57. Accordingly, Plaintiffs were not provided an authenticated notification from DCE describing the collateral that was the subject of the intended disposition, the method of the intended disposition, or the time and place of a public disposition or the time after which any other disposition was to be made.

58. As a result of DCE's intentional withholding of information it otherwise had a legal and statutory duty to provide, Plaintiffs were unable to take any steps to ensure the Recovered DCE Vehicles were being sold in a commercially reasonable manner. In fact, DCE's wholesale failure to provide the legal and statutory notices to Plaintiffs renders DCE's sale of the Recovered DCE Vehicles presumptively commercially unreasonable to the detriment of Plaintiffs.

59. The Bankruptcy was administratively closed on February 9, 2017, without any resolution or determination as to who has a priority security interest in the Disputed Proceeds.

60. Accordingly, Plaintiffs are filing the instant lawsuit so that this Court can make a determination as to whether DCE should be required to disburse the Disputed Sales Proceeds to

Plaintiff, whether DCE wrongfully withheld and/or converted the Disputed Sales Proceeds contrary to Plaintiffs' senior security interest therein, and enter an order compelling DCE to turnover and release the Disputed Proceeds to Plaintiffs, or alternatively, grant judgment in favor of Plaintiffs awarding Plaintiffs their economic damages as a result of DCE's conduct set forth herein.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT CONCERNING PRIORITY AND EXTENT OF SECURITY INTEREST IN ESCROWED PROCEEDS

61. Plaintiffs re-allege and incorporate by reference all allegations set forth in the previous paragraphs to this Original Complaint, the same as if set forth verbatim herein.

62. By refusing to turn over the Disputed Proceeds to Plaintiffs, DCE has placed in controversy the rights, remedies, obligations of the parties in controversy concerning Plaintiffs' superior, perfected security interest in the DCE Recovered Vehicles and the Disputed Proceeds currently in the possession and control of DCE.

63. Plaintiffs prior-perfected security interest in the Disputed Proceeds (as well as the prior perfected security interest in the DCE Recovered Vehicles) is superior to that of DCE because Plaintiffs' UCC-1 Financing Statements were filed with the Texas Secretary of State prior to DCE filing its UCC-1 Financing Statement, and DCE failed to comply with § 9.324 of the TEX. BUS. & COM. CODE in order to "jump ahead" of previous perfected secured creditors in terms of priority concerning vehicles financed by DCE on behalf of Bullmoose, along with any sales proceeds thereto.[3]

---

[3] A secured creditor may "jump ahead" of previous perfected secured creditors pursuant to § 9.324 of the TEX. BUS. & COM. CODE only when a secured creditor has a purchase-money security interest ("PMSI") in inventory and all of the following occur: (1) the PMSI is perfected when the debtor receives possession of the inventory; (2) the PMSI secured creditor sends an authenticated notification to the holder of the conflicting security interest; (3) the holder of the conflicting security interest receives any required notification within five years before the debtor receives possession of

64. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.*, and Tex. Bus. & Com. Code § 37.001 *et seq.* as to extent of DCE's liability and resulting economic loss to Plaintiffs as a result of DCE's commercially unreasonable disposition of the Recovered DCE Vehicles under § 9.625(b) of the TEX. BUS. & COMM. CODE. Moreover, Plaintiffs also seek an order declaring Plaintiffs' security interests in the Disputed Proceeds superior to that of DCE whereby NextGear will be entitled to the first $250,253.68 in Disputed Proceeds and WFC shall be entitled to the remaining Disputed Proceeds, and further seek an order requiring DCE to release and tender the Disputed Proceeds to Plaintiffs.

## COUNT II – ATTORNEYS' FEES

65. Plaintiffs re-allege and incorporate by reference all allegations set forth in the previous paragraphs to this Complaint, the same as if set forth verbatim herein.

66. The conduct of DCE has required Plaintiffs to retain the undersigned attorneys. Plaintiffs, therefore, seek recovery of their reasonable and necessary attorneys' fees related to prosecuting their declaratory judgment claims against DCE for the recovery of the Disputed Proceeds. Although the federal Declaratory Judgment Act does not specifically allow for recovery of attorneys' fees, state law governs in a diversity suit, and Texas law allows recovery of attorneys' fees by the prevailing party in a declaratory judgment action.[4]

## COUNT III – CONVERSION

67. Plaintiffs re-allege and incorporate by reference all allegations set forth in the previous paragraphs to this Complaint, the same as if set forth verbatim herein.

---

the inventory; and (4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in inventory of the debtor and describes the inventory.

[4] *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1487 (5th Cir. 1990) (in a diversity case, Texas law governs the award of attorneys' fees); *see also* Chapter 37.001 *et seq.* of the TEX. CIV. PRAC. & REM. CODE.

68. DCE's conduct as set forth herein constitutes conversion of the Disputed Proceeds to Plaintiff's detriment. Although Plaintiffs made demand upon DCE to surrender the Disputed Proceeds, DCE wrongfully failed to do so even though Plaintiff's had a priority security interest in the Disputed Proceeds that trumps DCE's junior and subordinate security interest. Accordingly, DCE has damaged Plaintiffs in the amount of $331,348.58.

### COUNT IV – CONSTRUCTIVE TRUST

69. Plaintiffs re-allege and incorporate by reference all allegations set forth in the previous paragraphs to this Complaint, the same as if set forth verbatim herein.

70. DCE's retention of the Disputed Proceeds despite Plaintiffs' demand for surrender was wrongful and will unjustly enrich DCE if DCE is permitted to retain the Disputed Proceeds. Accordingly, Plaintiffs request the imposition of a constructive trust as to the Disputed Proceeds, requiring DCE to convey to Plaintiffs the Disputed Proceeds to satisfy Plaintiffs' priority security interests in same.

**WHEREFORE**, Plaintiffs NextGear Capital, Inc. and Westlake Flooring Company, LLC, respectfully request that the Court enter judgment (i) declaring Plaintiffs' security interest in the Disputed Proceeds superior to the claimed interest of DCE and awarding Plaintiffs possession of such Disputed Proceeds; (ii) awarding Plaintiffs recovery of Plaintiffs' reasonable and necessary attorneys' fees; (iii) imposing a constructive trust on the Disputed Proceeds; and (iv) such other and further relief as the Court may deem just and proper.

                                                               **Respectfully submitted,**

PADFIELD & STOUT, L.L.P
421 W. Third Street, Suite 910
Fort Worth, Texas 76102
Phone: 817-338-1616
Fax: 817-338-1610


/s/ Christopher V. Arisco
Alan B. Padfield
State Bar I.D.# 00784712
abp@livepad.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@livepad.com

*Attorneys for NextGear and WFC*