## WESTLAKE FLOORING COMPANY, LLC
## LOAN AND SECURITY AGREEMENT - AMENDMENT

THIS LOAN AND SECURITY AGREEMENT - AMENDMENT ("Amendment") is dated as of April 21, 2016, by and between BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS ("Borrower") and WESTLAKE FLOORING COMPANY, LLC ("Lender").

    A.   WHEREAS, Lender and Borrower are parties to a certain Loan and Security Agreement dated as of April 21, 2016, as amended, modified, replaced or restated from time to time (the "Agreement"). Capitalized terms used but not otherwise defined in this Amendment shall have the meanings respectively ascribed to them in the Agreement; and

    B.   WHEREAS, Borrower wishes to purchase motor vehicles from time to time through various automotive auctions, directly from other motor vehicle dealers, or otherwise for Borrower's inventory; and

    C.   WHEREAS, Borrower requests and Lender agrees to finance the acquisition of eligible Vehicles under the Loans made by Lender to Borrower pursuant to this Agreement.

    NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Amendment, the parties agree as follows:

1.  **Reserve Program**.   Borrower agrees to the institution of a Per Car Reserve, instituted by Lender as a pre-condition and continuing requirement of the Loan and Security Agreement entered into by Borrower and Lender.   The Per Car Reserve is outlined as follows:   Borrower will pay a one-time initial deposit, which is listed below under the heading "Initial Deposit Amount" to Lender.   Borrower will attach a fixed deposit dollar amount, listed below under the heading "Per Car Reserve," to each vehicle floored at the time of vehicle payoff.   The purpose of Per Car Reserve funds collected is to hold in trust, funds which will be only applied toward monies owed to Lender in the instance of default by Borrower. The continued application of the Per Car Reserve is solely at the discretion of Lender.   At any time, Lender may deem the reserve program unnecessary based on the merit of Borrower.   In this instance, Lender will relinquish all Per Car Reserve funds.   Upon termination of Borrower's relationship with Lender in its sole and absolute discretion, Per Car Reserve funds will be relinquished to Borrower only after all Borrower's financial obligations to Lender are fulfilled and Lender is made whole.

| Type of Program | Initial Deposit Amount | Per Car Reserve |
|---|---|---|
| Reserve | $50,000.00 | $250.00 |

2.  **Limited Effect**.   Except as expressly provided hereby, all of the terms and provisions of the Agreement all other Loan Documents are and shall remain in full force and effect insofar as they are not inconsistent with this Amendment and are hereby ratified and confirmed by the parties.   This Amendment shall not be construed as a waiver or amendment of any other provision of the Agreement or the other Loan Documents or for any purpose except as expressly set forth herein.

**BORROWER**                                                         **LENDER:**

BULLMOOSE MOTOR SPORTS, LLC
DBA JAMES MAVERICK MOTOR SPORTS                WESTLAKE FLOORING COMPANY, LLC

Signature: _____                Signature: _____

Name: CARROL JAMES LEBOEUF III                Name: _____PATRICK AMATO_____
Title: _____MANAGING MEMBER_____                Title: _____VICE PRESIDENT_____

Address:                                                         Address:
**1628 W. Crosby Road Suite 109**                **4751 Wilshire Blvd., Suite 100**
**Carrollton, TX 75006**                                **Los Angeles, CA 90010**

**EXHIBIT E**

## WESTLAKE FLOORING COMPANY, LLC
## LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Agreement") is dated and entered into as of April 21, 2016\ (the "Effective Date") by and between Westlake Flooring Company, LLC, DBA Westlake Flooring Services, a California limited liability company, located at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010 ("Lender") and BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS, a TEXAS CORPORATION, located at 1628 W. Crosby Road Suite 109, Carrollton, TX 75006 ("Borrower").

    A.  WHEREAS, Borrower wishes to purchase motor vehicles from time to time through various automotive auctions, directly from other motor vehicle dealers, or otherwise for Borrower's inventory;

    B.  WHEREAS, Borrower requests and Lender agrees to finance the acquisition of eligible Vehicles under the Loans made by Lender to Borrower pursuant to this Agreement; and

    C.  WHEREAS, Loans are to be secured by a first priority lien on all inventory (as hereinafter defined) of the Borrower, including, without limitation, a purchase money security interest in all inventory, including Vehicles and vehicle parts, purchased using funds of the Loans from and after the date hereof, all on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, the parties agree as follows:

1. **Definitions.**  When used in this Agreement, the following terms shall have the following meanings:

(a) "<u>Advance</u>" has the meaning set forth in <u>Section 2(a)</u>.

(b) "<u>Advance/Fee Schedule</u>" means the schedule to this Agreement substantially in the form attached hereto as <u>Exhibit A</u>, which indicates, without limitation: (i) the Maximum Aggregate Commitment; (ii) the amount of fees applicable to each Advance; and (iii) all other fees payable under this Agreement.

(c) "<u>Applicable Percentage</u>" has the meaning set forth in each of the Promissory Notes.

(d) "<u>Base Rate</u>" has the meaning set forth in each of the Promissory Notes.

(e) "<u>Billing Period</u>" means a calendar month or such other period announced by Lender as the billing period for Advances under this Agreement.

(f) "<u>Borrower</u>" has the meaning set forth in the introduction of this Agreement.

(g) "<u>Business Day</u>" means a day other than Saturdays, Sundays, bank holidays, or other days on which the principal office of Lender is not open for business.

(h) "<u>Collateral</u>" has the meaning set forth in <u>Section 5</u>.

(i) "<u>Commitment Termination Date</u>" means for each Loan hereunder, the earliest of (a) the date of termination of Lender's obligations to make Advances or permit the Loans to remain outstanding pursuant to <u>Section 13</u>, or (b) the date of prepayment in full by Borrower of the Loans whereby the applicable outstanding balance under all Loans are reduced to zero dollars ($0), and Lender acknowledges in writing that the applicable Loan is permanently terminated.

(j) "<u>Effective Date</u>" means the date as first specified and defined above.

(k) "Environmental Laws" means all federal, state and local laws, regulation, codes, plans, orders, decrees, judgments, injunctions, notices or demand letters issued, entered, or promulgated, approved or otherwise relating to pollution or protection of the environment.

(l) "Event of Default" means any of the events specified in Section 14.

(m) "Guaranties" means the guaranties of payment and performance of all or some of Borrower's indebtedness and obligations under the Loans, executed and delivered by the Guarantors, substantially in the form attached hereto as Exhibit B.

(n) "Guarantors" means those Persons who have executed and delivered Guaranties.

(o) "Indemnified Person" has the meaning set forth in Section 17.

(p) "Initial Term" has the meaning set forth in Section 4.

(q) "Interest Rate" means the Base Rate plus the Applicable Percentage.

(r) "Inventory Finance Loan" means an inventory financing line of credit other than a Rental Fleet Loan facility.

(s) "Late Fee" means the late charges specified in the Rate and Fee Schedule attached as Exhibit J, as may be modified or revised, and generally, a charge assessed by Lender should the periodic payments due under this Agreement or a Promissory Note not be remitted on or before its due date.

(t) "Lender" has the meaning set forth in the introduction to this Agreement.

(u) "Loan Documents" has the meaning set forth in Section 24.

(v) "Loans" means, collectively, any Inventory Finance Loan or any other loan(s) provided by Lender to Borrower hereunder, and any other loans, advances, or indebtedness owing from Borrower to Lender, whenever and however arising, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, all of which are secured by this Agreement.

(w) "Maturity Date" means the date upon which an Advance is due as set forth in the Loan Documents; provided, however if no such date is specified, then the Advance shall be deemed due upon demand of Lender.

(x) "Maximum Aggregate Commitment" means the maximum aggregate principal amount that may be outstanding under the Loans as set forth in the Advance/Fee Schedule.

(y) "Notice of Advance" has the meaning set forth in Section 2(a).

(z) "Person" means any individual, sole proprietorship, partnership, corporation/LLP/LLC, or resident or general partnership (whether or not for profit), joint venture, association, estate, trust, or unincorporated organization (whether foreign, territorial, national, federal, state commonwealth, parish, county, city, municipal, local or otherwise, including, without limitation, any instrumentality, division, agency, body, or department thereof). Unless the context otherwise requires, "Person" shall not include Lender.

(aa) "Power of Attorney" means the power of attorney in the form attached hereto as Exhibit H.

(bb) "Promissory Note(s)" means that certain promissory note made by Borrower to Lender as set forth in Section 2(b), either as originally executed or as the same may from time to time be supplemented, modified, amended, renewed, extended or supplanted.

2

(cc) "Promotion": Lender reserves the right to modify or set special pricing and/or principal reductions on a periodic and interim basis outside of the terms and conditions as detailed in the Advance/Fee Schedule.

(dd) "Renewal Term" has the meaning set forth in Section 4.

(ee) "Rental Fleet Loan" means an inventory financing line of credit for Borrower's rental vehicle fleet.

(ff) "Subordination Agreement" has the meaning set forth in Section 12.

(gg) "Tangible Net Worth" has the meaning given under generally accepted accounting principles in effect at the time of such measurement.

(hh) "Uniform Commercial Code" and "UCC" each mean the Uniform Commercial Code as enacted in the state where the Borrower is located (its state of organization if a registered organization, otherwise the state in which its principal place of business is located) and the version in effect as of the Effective Date.

(ii) "Vehicle" means a vehicle, the ownership of which is embodied in a certificate of title, manufacturer's statement of origin or other document issued by an authorized governmental agency, driven or drawn by mechanical power, manufactured primarily for use on the public streets, roads and highways.

As used in the Loan Documents and in any certificate or other document made or delivered pursuant thereto, accounting terms not defined therein or in any such certificate or other document, and accounting terms partly defined therein or in any such certificate or other document, to the extent not defined therein, have the respective meanings given to them under generally accepted accounting principles. To the extent that the definitions of accounting terms in the Loan Documents or in any such certificate or other document are inconsistent with the meanings of such terms under such generally accepted accounting principles, the definitions contained therein control.

The words "hereof," "herein," "hereunder" and words of similar import when used in the Loan Documents refer to the Loan Documents as a whole and not to any particular provision or subdivision thereof. References in each Loan Document to "Article," "Section" or another subdivision or to an attachment are, unless the context otherwise requires, to an article, section or subdivision of or an attachment to such Loan Documents. The term "including" means "including without limitation." The word "or" is not exclusive.

The definitions contained in the Loan Documents are equally applicable to both the singular and plural forms of such terms and to the masculine as well as to the feminine and neuter genders of such terms.

Any agreement, instrument or statute defined or referred to below means such agreement or instrument or statute as from time to time amended, modified or supplemented, including (in the case of agreements or instruments) by waiver or consent and (in the case of statutes) by succession of comparable successor statutes and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein. References to a Person are also to its permitted successors and assigns.

All other terms contained in the Loan Documents shall, when the context so indicates, have the meanings provided for by the Uniform Commercial Code.

  **2. Loan Terms.** Lender agrees to make the Loans to Borrower during the term of this Agreement and so long as there has not occurred an Event of Default, in a total aggregate principal amount not to exceed the Maximum Aggregate Commitment amount for all such Loans, and Borrower promises to repay such Loans on the terms and conditions set forth below and in the Advance/Fee Schedule, the Promissory Note(s), and any other Loan Documents:

(a) <u>Advances: Notice of Advance</u>. Subject to the terms and conditions hereof and for so long as no default or Event of Default exists, Lender agrees to make advances (each, an "Advance") available to Borrower from time to time until the Commitment Termination Date. Lender, at its sole discretion, may make Advances directly to the seller of the inventory. Each Advance shall be in an amount of five thousand one dollars ($5,001.00) or greater. The aggregate principal amount of Advances outstanding shall not at any time exceed the Maximum Aggregate Commitment amount. Amounts repaid or prepaid under this Agreement may be reborrowed up to the Maximum Aggregate Commitment. The amount of any one Advance shall not exceed fifty thousand dollars ($50,000.00). Until the Commitment Termination Date and subject to the terms and conditions hereof, Borrower may from time to time borrow, repay, and re-borrow under this Section 2 and in accordance with the Promissory Notes and Advance/Fee Schedule. Lender, in its sole discretion, may require Borrower to provide advance written notice (each such notice, a "Notice of Advance") prior to making any Advance hereunder.

(b) <u>Promissory Note</u>. Borrower shall execute and deliver to Lender a Promissory Note in the amount of the <u>Maximum Aggregate Commitment</u>, substantially in the form attached hereto as <u>Exhibit C</u>. At Lender's option and request, Borrower will execute and deliver to Lender such additional promissory notes as may be required or appropriate in order to describe the indebtedness of Borrower to Lender (whether for purposes of pledge, enforcement or otherwise), including the Advances owing to, or to be made by, Lender. The Promissory Notes shall represent the obligations of Borrower to pay the aggregate amounts due under the Loans or, if less, the aggregate unpaid principal amount of all Advances to Borrower together with interest and fees thereon as prescribed in Section 3. Lender shall maintain in accordance with its usual practice an account or accounts evidencing the indebtedness of Borrower to Lender resulting from each Advance from time to time, including the amounts of principal and interest payable and paid to Lender from time to time hereunder in respect of Advances. The entire unpaid balance of the Loans and all other non-contingent obligations shall be immediately due and payable in full in immediately available funds on the Commitment Termination Date. In the event of any inconsistency between the Promissory Notes and this Agreement, the provisions of this Agreement shall prevail.

(c) <u>Repayment of Advances</u>. Each Advance, from time to time or as necessary on or after the Effective Date, for the purchase of a Vehicle shall be payable in full on the earliest of:

      i.   seven (7) days after the date of the Vehicle sale, if financed, or within twenty-four (24) hours after the date Borrower receives payment by or on behalf of the purchaser of such Vehicle, whichever occurs first; or

      ii.   the Maturity Date of such Advance; or

      iii.   the termination of this Agreement.

In addition, payments of principal shall be made in accordance with the Advance/Fee Schedule. The maximum amount of Advances outstanding at any time under any Loan shall not exceed the amount set forth in the applicable Promissory Note, although Borrower shall be liable for any amounts borrowed. Any payments made by Borrower pursuant to this <u>Section 2</u> may be applied as follows: <u>first</u>, to fees and expenses of Lender then due and payable; <u>second</u>, to interest due and payable on the Loans; and <u>third</u>, to the principal balance of the Loans. The aggregate unpaid principal amount shown on any monthly statement shall be rebuttable presumption evidence of the principal amount owing and unpaid on the Loans. The failure to record the date and amount of any Advance on such monthly statement or provide such monthly statement or the Advance of amounts exceeding the limits of any Promissory Note, shall not, however, limit or otherwise affect the obligations of Borrower under this Agreement or under any other Loan Documents to repay the principal amount of the Advances together with all interest accruing thereon.

(d) <u>Payments Received from Manufacturers or Distributors</u>. At the request of Lender, in the event that Borrower receives any payments from holdback reserves, manufacturer rebates, incentives

payments, finance reserves, or any other form of payment from a manufacturer or distributor, such payments shall be immediately forwarded to Lender, and Lender shall apply such sums to the outstanding balance with respect to the applicable Loans.

(e) Repayment of Other Loans. Lender may withhold from an Advance the amount required by any floorplan finance creditor or other creditor of Borrower to release such creditor's lien on Vehicles. Lender may forward any withheld amounts directly to the applicable creditor(s).

(f) Use of Proceeds: Restrictions. The proceeds of the Loans shall only be used to purchase Vehicles to be held as inventory of Borrower and, should Borrower request, fees assessed by an auction in connection with the sale of the Vehicle at auction to Borrower. Each Vehicle financed through the Loans shall be floor planned or otherwise placed into Borrower's inventory, as applicable, within seven (7) days of its acquisition hereunder. Unless otherwise expressly approved in advance by Lender, each Vehicle financed must have a valid title or other evidence of ownership and a signed bill of sale or other evidence of title transfer. Unless otherwise expressly approved in writing by Lender, Loans shall not be used to finance salvage units, wrecked units, inoperable units, flood-damaged units, personal watercraft, Canadian imports, gray market units, motorcycles, scooters, trailers, kit cars, snowmobiles, wreckers, ATVs, limousines, RVs, buses, boats, collector or classic cars or golf carts. Dealer, its employees, agents and affiliates are barred from personal use of a floorplanned Vehicle, including Demos. At such time, and as long as Dealer remains current in its financial obligations with Westlake, one Demo will be allowed. Lender will not finance Vehicles intended for export. Any Attempt by Borrower to finance any Vehicle prohibited in this Section 2(f) constitutes an Event of Default under this Agreement.

(g) Time of Payments. Payments on Loans received by Lender in immediately available funds no later than 4:00 P.M. Pacific Time, shall be credited to Borrower's account within one (1) Business Day after the date Lender's bank records such payment.

3. **Interest/Fees.**

(a) Rates of Interest. The Loans shall bear interest until paid in full at a per annum rate equal to the Interest Rate.

(b) Interest Rate. The Base Rate shall be determined by Lender on the last Business Day of each calendar month and the Interest Rate based on such Base Rate shall be in effect for the following month. Interest shall be calculated on the basis of a 360-day year for actual days elapsed and shall be payable pursuant to the terms detailed within the Advance/Fee Schedule.

(c) Interest Accrual on Advances. Interest on each Advance shall begin to accrue on the date of the Advance and continue accruing on the aggregate unpaid Loan amount(s) with payments credited as specified in Section 2(g). In the event Lender pays an auction or other seller of a Vehicle directly on Borrower's behalf, the date of Advance shall be the date of Borrower's purchase unless Lender, in its discretion, chooses a later date.

(d) Rate Subvention. Lender and Borrower, in an effort to increase the acquisition of eligible Vehicles under the Loans made by Lender to Borrower, have agreed to a modified Interest Rate that will be assessed on each Loan pursuant to the number of Loans that were acquired by Lender from Borrower during the prior month. The schedule which memorializes both the achieved production goal from the prior month and the concurrent interest rate for the current month is attached hereto as Exhibit G.

(e) Rate & Fee Schedule. This Agreement shall be subject to the Rate & Fee Schedule attached hereto as Exhibit J, which Lender may amend or supplement from time to time in its sole discretion, provided that Lender publishes such amendments or supplements on Lender's website or gives written notice to Borrower.

4.  <u>Term</u>.  The initial term of this Agreement shall commence on the Effective Date and shall continue for one (1) year thereafter (the "Initial Term").  After the Initial Term, this Agreement shall automatically renew for one (1) year successive terms (each a "Renewal Term") unless terminated by either party notifying the other in writing no later than ninety (90) days prior to the commencement of any Renewal Term.  In addition to Lender's right to terminate this Agreement as set forth in <u>Section 13</u> below, this Agreement may be terminated at any time by Lender or by Borrower, if not in default, by such terminating party providing the other party ninety (90) days' prior written notice.  In addition to any and all rights and remedies available to Lender under this Agreement, at law, and in equity, Lender may terminate this Agreement immediately upon an Event of Default by Borrower.

5.  <u>Collateral</u>.

(a)  <u>Pledge of Collateral</u>.  For the purpose of securing the Loans, or any other indebtedness or future advances of Borrower or any Guarantor to Lender, Borrower hereby grants Lender a security interest in all of Borrower's assets and personal properties, now owned and hereinafter acquired, wherever located, including all Vehicles, inventory, parts and accessories inventory, including without limitation, purchase money inventory, the purchase of which was financed or floorplanned by or otherwise acquired through Lender, equipment, goods, fixtures, accounts, deposit accounts, accounts receivable, holdback reserves, manufacturer rebates and incentive payments, payment intangibles, instruments, commercial tort claims, letter of credit rights, investment property, securities and securities accounts, and general intangibles of Borrower; any cash, money, or other property of Borrower in the possession, custody or control of Lender; all accessions to, substitutions for, and all replacements of any of the foregoing; all chattel paper, documents, instruments, monies, documents of title, residues and property of any kind related to any of the foregoing; all books and records of Borrower related to any of the foregoing, including without limitation, computer programs, print-outs, and other computer hardware and software materials and records pertaining to any of the foregoing; together with all proceeds and products of the foregoing, including, without limitation, proceeds of insurance policies insuring any of the foregoing (collectively, "Collateral").  The security interest granted in this Agreement is in addition to and not in substitution of any right of offset, netting, or reclamation that Lender may have against Borrower pursuant to any contract or applicable law.

(b)  <u>Further Assurances</u>.  As a condition to each Advance, Borrower shall provide Lender with copies of documentation detailing the Vehicles or other inventory to be purchased, together with evidence satisfactory to Lender that the inventory so purchased has been delivered to the location of Borrower within ten (10) days of such delivery.  Borrower shall fully cooperate and promptly and duly execute and deliver any and all such further instruments and documents and take such further actions necessary to establish and maintain perfection of Lender's security interest in the Collateral and as Lender may deem desirable to protect the Collateral or otherwise obtain the full benefits of this Agreement and of the rights and powers herein granted, including without limitation, the following:  (i) execute such supplemental documents as Lender may require to evidence or perfect and maintain the security interest granted hereunder or under any other Loan Document; (ii) provide Lender and its agents and contractors with full access to the Collateral, including any and all books and records, related thereto; and (iii) deliver to Lender all Collateral consisting of negotiable documents, chattel paper, and instruments not deposited for collection in the aggregate (in each case, accompanied by bills of sale and any other instruments of transfer executed for Borrower) promptly after Borrower receives the same. By execution hereof, Borrower authorizes Lender to file any financing or continuation statements under the Uniform Commercial Code with respect to the security interest granted hereunder or under any other Loan Document, including any filings and/or notices in connection with the perfection by Lender of a purchase money security interest in all vehicles, vehicle parts and any other purchase money inventory acquired by Borrower through the Advances or Loans.

(c)  <u>Certificate of Title; Audit Rights</u>.  Lender may obtain and retain the certificate of title in its possession until the applicable Vehicle is sold by Borrower and the Advances with respect to such Vehicle are paid in full.  Lender shall have the right to inspect the Vehicles and other

Collateral and Borrower's books and records at any time during normal business hours and at other reasonable times, without advance notice.  Borrower agrees to retain and preserve its books and records at its principal place of business for a period of at least five (5) years from the date of final billing under this Agreement. Borrower shall pay Lender upon demand for the costs and expenses incurred by Lender with respect to such inspections.

6.   **Use and Protection of Collateral.**  Borrower  shall (a) maintain, exhibit, and sell the Vehicles and other Collateral only in the ordinary course of business solely at the designated places of business listed on Exhibit D hereto; (b) protect and secure the Vehicles and other Collateral; (c) maintain and preserve the Vehicles and other Collateral in good order and condition; (d) not impair the value of the Vehicles or other Collateral; (e) keep the Vehicles and other Collateral free of taxes, liens, or encumbrances, and any sums which may be paid by Lender, in its discretion, in release or discharge thereof shall be paid by Borrower to Lender upon demand; (f) not use the Vehicles and other Collateral other than as permitted by law; (g) notify Lender if any Vehicle is not located at a designated place of business listed on Exhibit D for more than twenty-four (24) hours and provide Lender with the possessor/customer's driver's license, insurance card, address, and phone number; (h) not consign any Vehicle to any other person for sale without Lender's prior written consent;  and (i) notify Lender upon request of the location of each Vehicle.

7.   **Insurance.**  Borrower is responsible for insurance covering the Vehicles and other Collateral against all risks, with an insurance company acceptable to Lender at such levels and types indicated on Exhibit E and will provide to Lender copies of insurance policies and certificates properly endorsed to show Lender's interest as loss payee, additional insured, and certificate holder, in form and substance satisfactory to Lender.  Such endorsement shall provide that the insurance companies will give Lender at least thirty (30) days' prior written notice before any such policy or policies of insurance shall be altered or canceled and that no act or default of Borrower or any other Person shall affect the right of Lender to recover under such policy or policies of insurance in case of loss or damage. Borrower hereby directs all insurers under such policies of insurance to pay all proceeds payable thereunder directly to Lender.  Proceeds payable to Lender under any such policies shall be applied to the indebtedness due Lender under this Agreement on such basis as Lender shall determine.

In the event Borrower, at any time or times hereafter, shall fail to obtain or maintain any of the policies of insurance required in this Agreement or to pay any premium in whole or in part relating thereto, then Lender, without waiving or releasing any obligation or default by Borrower under this Agreement, may (but shall be under no obligation to do so) at any time or times thereafter obtain and maintain such policies of insurance and pay such premium and take any other action with respect thereto which Lender deems advisable.  All sums so disbursed by Lender, including, without limitation, attorneys' and paralegals' fees, court costs, expenses and other charges relating thereto, shall be payable, on demand, by Borrower to Lender and shall be additional indebtedness due Lender under this Agreement and be secured by the Collateral.

8.   **Borrower's Financial Condition.**  Borrower represents that it now has, and covenants that it will have at the time of any Advance through the date of repayment of the Loans, (a) reasonably adequate cash and equity capital to conduct its business and pay its debts as they mature, (b) capital and other financial resources reasonably adequate to engage in the business in which it is engaged or in any business or transaction in which it may engage hereafter, (c) the ability to pay its debts and all debts it incurs thereafter as they mature, and (d) ownership of property unencumbered and not hypothecated in any fashion to the benefit of a third party, having a value, at a fair valuation, greater than the sum of its debts. Borrower further warrants that it has not incurred and will not incur any other indebtedness, and that no other lender has or will acquire a perfected security interest in any of the Collateral, other than as disclosed via a properly perfected and timely filed purchase money security interest by a third party.

9.   **Borrower's Financial Statements and Records.**

(a)  As soon as possible, but not later than six (6) months after the close of each fiscal year of Borrower, Borrower agrees to provide Lender with the financial statements of Borrower as certified by Borrower or Borrower's independent certified public accountant and copies of Borrower's federal income tax returns from the previous calendar year.  Lender reserves the right to request audited financial statements.

(b) Upon request of Lender, Borrower agrees to provide Lender with Borrower's unaudited interim financial statements, including balance sheets and statements in of income and expense as of the month-end and for the portion of Borrower's fiscal year then elapsed, as prepared in accordance with generally accepted accounting principles and fairly presenting the financial position at such date and results of operations of Borrower for such period.

(c) Upon request of Lender, Borrower agrees to provide Lender with Borrower's bank statements and any other financial information requested by Lender.

(d) Borrower certifies that each financial statement, bank statement, and any other document provided under this <u>Section 9</u> shall be complete, accurate and current in all respects.

## 10. <u>Other Agreements of Borrower</u>.

(a) Borrower represents and warrants that:

(i) Borrower has correctly set out (x) on the signature page of this Agreement, as applicable, its legal name, state of incorporation, formation, or residency, and address of its principal place of business and (y) on <u>Exhibit D</u> hereto, correctly stated all locations at which Collateral will be kept;

(ii) Borrower is duly organized, validly existing and in good standing under the laws of the <u>state</u> of Borrower's principal place of business. Borrower is duly qualified, in good standing and authorized to do business in each jurisdiction in the nature of Borrower's business that requires such qualification or authorization, except where failure to be so qualified could not reasonably be expected to have a materially adverse effect;

(iii) Borrower has all requisite power and authority and rights to carry on its business as now conducted and as proposed to be conducted, and to enter into and perform this Agreement and the other Loan Documents executed by Borrower;

(iv) To the Borrower's actual knowledge, the execution, delivery and performance of the Loan Documents by Borrower, will not violate (a) any legal requirement affecting Borrower, or (b) any agreement to which Borrower is bound or to which it is a party, and will not result in or require the creation (except as provided in or contemplated by this Agreement) of any lien upon any of Borrower's assets;

(v) To the best knowledge of Borrower there exists no material violation of or material default by Borrower, and no event has occurred which, upon the giving of notice or the passage of time, or both, would constitute a material default by Borrower with respect to the terms of any instrument evidencing or securing any debt of Borrower;

(vi) There is no action, suit, investigation, proceeding or arbitration at law or in equity or before or by any foreign or domestic court or other governmental entity ("Legal Action"), pending or threatened against or affecting Borrower or any of its assets which could reasonably be expected to result in any materially adverse effect in the business, operations, assets or condition (financial or otherwise) of Borrower or would materially and adversely affect Borrower's ability to perform its obligations under the Loan Documents.   There is no basis known to Borrower for any such action, suit or proceeding. Borrower is not (a) in violation of any applicable law which violation materially and adversely affects or may materially and adversely affect the business, operations, assets or condition (financial or otherwise) of Borrower, (b) subject to, or in default with respect to, any other legal requirement that would have a materially

8

adverse effect on the business, operations, assets or condition (financial or otherwise) of Borrower, or (c) in default with respect to any agreement to which Borrower is a party or by which it is bound. There is no Legal Action pending or threatened against or affecting Borrower questioning the validity or the enforceability of this Agreement or any of the other Loan Documents;

(vii) There is no fact known to Borrower that materially and adversely affects the business, operations, assets or condition (financial or otherwise) of Borrower that has not been disclosed in this Agreement or in other documents, certificates and written statements furnished to Lender in connection herewith;

(viii) All tax returns and reports of Borrower required to be filed by it have been timely filed, and all taxes, assessments, fees and other governmental charges upon Borrower and upon its properties, assets, income and franchises which are due and payable have been paid prior to delinquency. Borrower knows of no proposed tax assessment against Borrower that would be material to the condition (financial or otherwise) of Borrower, and Borrower has not contracted with any government entity in connection with such taxes;

(ix) Borrower agrees to provide evidence of the identity of Borrower that Lender may request from time to time to permit Lender to verify the identity of Borrower or to otherwise comply with applicable governmental laws and regulations, including without limitation Section 326 of the USA Patriot Act of 2001, 31 U.S.C. 5318; and

(x) Borrower, by executing this Agreement, hereby represents and warrants that (i) the individual executing this Agreement on behalf of such party is duly authorized to do so, (ii) such party has full right and authority to enter into this Agreement and to consummate the transactions described in this Agreement and (iii) this Agreement constitutes the valid and legally binding obligation of such party, enforceable against such party in accordance with its terms. Borrower will execute the applicable Authorizing Resolution to Borrower substantially in the form attached hereto as Exhibit I.

(b) Borrower acknowledges that Borrower must notify Lender of any material change in financial condition that could impact Borrower's ability to pay any and all obligations set forth herein.

(c) Borrower will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the Effective Date and fully disclosed to Lender; debt subordinated in payment to Lender on conditions and terms acceptable to Lender; a purchase money lien or security interest obtained in the ordinary course of business; accounts payable incurred in the ordinary course of business and paid under customary trade terms or contested in good faith with reserves satisfactory to Lender.

(d) Without Lender's prior written consent, which consent Lender may withhold in its absolute discretion, Borrower agrees that it shall not (i) make any distributions of its property or assets, except distributions of earnings or payments of principal and interest to service indebtedness in the ordinary course; (ii) changes its name, principal place of business, state of incorporation or any material change in any of its business objectives, purpose or operations; or (iii) engage in any transaction or series of transactions to sell, liquidate, or otherwise transfer, all or substantially all of its assets, unless Borrower first provides Lender thirty (30) days' prior written notice describing the proposed transaction or series of transactions in reasonable detail and Lender consents in writing to the proposed transaction or series of transactions.

(e) Borrower shall obtain and maintain all licenses and permits necessary for it to purchase and sell Vehicles (and receive proceeds) through wholesale facilities without payment of state retail sales tax and to sell Vehicles at retail.

(f) Borrower agrees the Loans are commercial loans made for a commercial purpose and hereby waives, to the fullest extent allowed by law, the protections of any Federal or state laws and regulations intended to protect consumers or regulate consumer loans.

(g) Borrower agrees that Lender may, in its discretion, communicate and share credit, transaction, and Collateral information related to Borrower or any Guarantor with any third-party, including other creditors, merchants, or counter-parties to Borrower or any Guarantor, for purposes of evaluating an extension of credit toBorrower, evaluating the increase or decrease of any Loan amount, and or monitoring or collecting any existing Loan or Collateral, and hereby ratifies any such prior exchanges.

(h) The individual(s) signing below on behalf of Borrower expressly authorize Lender to obtain his or her consumer credit report for purposes of evaluating extensions of credit to Borrower and expressly ratifies any such prior obtained report.

(i) Borrower agrees that, in the event that Borrower has or obtains a contractual relationship with DealerCenter, Vehicle(s) financed by Lender and information related to this Agreement will be available for review and integrated within their account on the DealerCenter platform.

(j) Confidentiality: The terms and conditions of this Agreement are absolutely confidential between the parties and shall not be disclosed by Borrower to anyone else, including other dealers and floor plan companies, except upon prior written approval by Lender. Any disclosure in violation of this section shall be deemed a material breach of this Agreement and may expose Borrower to any and all available remedies in law, equity and contract.

(k) Dealer hereby authorizes the use of any information and data by Lender that may have been used and/or submitted in reference to its contractual relationship with any of Lender's affiliates and/or related companies. Dealer further consents to the receipt of any promotional material, advertisements, special offers, circulars or any such marketing materials that may be offered by Lender or any of its affiliates via email, text messages, telemarketing, facsimile transmittal or similar modes of communication. _____ *(initial)*

(l) Upon receipt of a Promotion notice from Lender, Borrower will be eligible for special pricing, terms and conditions for a defined time period.

## 11.   **Environmental Matters**.

(a) Borrower represents that it is currently in compliance, and covenants and agrees that it shall continue to manage and operate its business in compliance, with all Environmental Laws.

(b) Borrower shall send to Lender within five (5) days of receipt, any citation, notice of violation, or other notice of potential liability from any governmental or quasi-governmental authority empowered to regulate or oversee any of the foregoing activities.

(c) Borrower agrees to indemnify, defend with counsel reasonably acceptable to Lender, at Borrower's sole cost, and hold Lender harmless against any claim, response, or other costs, damages, liability, or demand (including, without limitation, attorneys' fees and costs incurred by Lender) arising out of any claimed violation of Borrower or Borrower's agents of any Environmental Laws or breach of any of the foregoing covenants or agreements. The foregoing indemnity shall survive repayment of all indebtedness due Lender under this Agreement.

**12. Conditions Precedent.** Lender shall have no obligation to make the Loans or any Advances on the Effective Date or at any time hereafter unless and until the following conditions have been and continue to be satisfied, all in form and substance satisfactory to Lender and its counsel:

    (a) No Proceedings. No action, proceeding, investigation, regulation, or legislation shall have been instituted, threatened, or proposed before any court governmental agency, or legislative body to enjoin, restrain, or prohibit, or to obtain substantial damages in respect of, or which is related to or arises out of this Agreement, or the consummation of the transactions contemplated hereby or thereby, or which, in Lender's sole discretion, would make it inadvisable to consummate the transactions contemplated by this Agreement.

    (b) No Material Adverse Change. There shall not have occurred any material adverse change in the financial condition, results of operations, businesses, or prospects of Borrower, or any event, condition, or state of facts which could materially adversely affect the financial condition, results of operations, businesses, or prospects of Borrower, as determined by Lender in its sole discretion.

    (c) Due Diligence. Lender shall have completed its business and legal due diligence with results satisfactory to Lender.

    (d) Compliance. All of the representations and warranties of Borrower herein and in the Loan Documents shall be true and correct in all material respects on and as of the Effective Date and the date of any subsequent Advance, as if made on and as of such date before and after giving effect to the making of the proposed Advance. Borrower shall have performed and shall be in compliance with all the applicable terms and provisions of this Agreement and the Loan Documents and no Event of Default shall have occurred and be continuing on and as of the Effective Date and the date of any subsequent Advance, before and after giving effect to the making of the proposed Advance. Each request by Borrower for an Advance shall, in and of itself, constitute a representation and warranty that Borrower, as of such date, is in compliance with this Section 12.

    (e) Commitment. After any Advance, the outstanding principal amount of the Loans would not exceed the Maximum Aggregate Commitment.

    (f) Loan Documents. Borrower must provide, on or prior to the Effective Date, the following documents, each duly executed and delivered to Lender, and each to be in form and substance satisfactory to Lender and its counsel: (i) All of the exhibits attached to this Agreement in complete and verifiable form and detail, including the Guaranty and Power of Attorney, and (ii) such other documents, instruments, and agreements as Lender shall request, including not not limited to, Lender's form subordination agreement ("Subordination Agreement").

**13. Termination, Modification or Suspension of Financing.** Notwithstanding anything to the contrary set forth herein, Lender may terminate, reduce the amount of the Maximum Aggregate Commitment or suspend financing under this Agreement, immediately and without further notice, as follows:

    (a) Upon the occurrence of an Event of Default or a default under any other Agreement with, or guaranty to, Lender or affiliate of Lender;

    (b) If Lender, in its sole discretion, elects to terminate the Loans, provided however that Lender shall give Borrower ninety (90) days' prior written notice of such termination;

    (c) If Lender, in its sole discretion, determines that future financing for Borrower is not justified due to a material adverse change in Borrower's financial condition, business, business prospects, ability to repay the Loans or in the Collateral;

    (d) If Borrower fails to use the Loans for a continuous sixty (60) day period; or

(e) If Lender's business, market conditions, capital markets or general economic conditions require Lender, in its sole discretion, to eliminate the applicable Loan program(s) for all similar borrowers.

(f) If Borrower changes its location without providing Lender with reasonable and sufficient notice to properly amend and record all applicable documents.

All debts, obligations, and remedies existent at the time of any suspension or termination shall continue in effect until the indebtedness of Borrower under this Agreement is paid in full.

**14. Event of Default.** An "Event of Default" for Borrower shall include the following: (a) a default by Borrower in the payment or performance of any obligation or promise under this Agreement or any other agreement with, or guaranty to, Lender; (b) any representation or warranty, whether made in or pursuant to this Agreement or any other obligation or debt to Lender, is found to be untrue; (c) the institution of a proceeding in bankruptcy, receivership, or insolvency by or against Borrower or its property or by or against any Guarantor; (d) an assignment by Borrower or any Guarantor for the benefit of creditors; (e) Borrower is or becomes unable to pay its debts as such debts become due; (f) a default by any Guarantor in the payment or performance of any obligation under a Guaranty; (g) the death or incompetence of any Guarantor; (h) the termination of any Guaranty; (i) if Lender shall deem itself insecure; (j) should there be damage to Collateral after lapse in in physical damage insurance coverage with Lender as Loss Payee; (k) if there is a material change in ownership and/or management of Borrower; or (l) a default in the performance of any term, obligation, covenant, condition, agreement or duty contained in any other agreement between Borrower or its guarantors and their affiliates and Lender or its parents, subsidiaries, or affiliates. Time is of the essence in the performance of all obligations of Borrower under the Loan Documents. The parties agree that Lender's charging of a Vehicle Not Found Fee or Sold Out of Trust Fee shall not constitute a waiver of any rights of Lender under this Agreement.

**15. Offset.** As additional security for payment and performance of all indebtedness due Lender under this Agreement and any other agreement with Lender, Borrower hereby gives Lender a lien on, and Lender shall also have right of offset against, all of Borrower's deposits, credits, sums owing, Vehicles, and any other Collateral now or hereafter in the possession or control of Lender or its parent company or may be in transit to Lender or its parent company. Lender may at any time apply any or all of the property (or the proceeds thereof),including such deposits, credits, sums owing, Vehicles, and any other Collateral due to Lender's parent company to any amounts due under said indebtedness.

**16. Rights and Remedies upon Default.** Upon the occurrence of an Event of Default or if Vehicles or other Collateral are in danger of misuse, loss, seizure, or confiscation, Lender may, in its discretion, accelerate the entire outstanding amount due from Borrower under this Agreement and may take immediate possession of Vehicles or other Collateral without demand, protest, presentment, notice of dishonor, or further notice of any kind, and without legal process, all of which are expressly waived by Borrower. Further, any commitment to make Advances and all other obligations of Lender and all rights of Borrower and any other parties under the Loan Documents shall be suspended or terminated at Lender's option without notice to or demand upon Borrower, which are expressly waived by Borrower. In furtherance thereof, Borrower shall, if Lender so requests, assemble Vehicles or other Collateral and make them available to Lender at a reasonable place designated by Lender. Lender shall have the right, and Borrower hereby authorizes and empowers Lender, to enter upon the premises wherever Vehicles and other Collateral may be and remove same. Borrower shall pay all expenses and reimburse Lender for any expenditures, including reasonable attorneys' fees and legal expenses (including, but not limited to, bankruptcy and appeals), in connection with (i) Lender's exercise or defense of any of its rights and remedies under this Agreement, and (ii) any third party claims to title and/or Collateral. In the event of such repossession by Lender, in addition to the rights specified in this Agreement, all the rights and remedies afforded by applicable law shall apply. Lender shall have the right to present for payment immediately any payment instrument from Borrower, notwithstanding any other agreement. Should Lender elect to proceed through court process, Borrower waives any court or state law bond requirements for possessory or injunctive relief.

**17. Indemnity.** Borrower agrees to indemnify Lender, and Lender's respective officers, directors, employees, attorneys, agents, and representatives (each, an "Indemnified Person"), from and against any and all liabilities,

obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or disbursements of any kind or nature whatsoever (including, without limitation, attorneys' fees and court costs incurred by Lender) which may be imposed on, incurred by, or asserted against any Indemnified Person in any litigation, proceeding, or investigation instituted or conducted by any governmental agency or instrumentality or any other person, including Borrower and any Guarantor, with respect to any aspect of, or any transaction contemplated by, or referred to in, or any matter related to, this Agreement, whether or not an Indemnified Person is a party thereto, except to the extent that any of the foregoing arises out of the gross negligence or willful misconduct or such Indemnified Person.

**18.** <u>**DAMAGE WAIVER.**</u> **IN NO EVENT WILL LENDER OR ANY OTHER INDEMNIFIED PERSON BE LIABLE TO BORROWER FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, WHETHER OR NOT LENDER OR SUCH OTHER INDEMNIFIED PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND IN NO EVENT WILL LENDER OR ANY OTHER INDEMNIFIED PERSON BE LIABLE TO BORROWER FOR DAMAGES IN EXCESS OF THE SUMS PAID BY BORROWER TO LENDER UNDER THIS AGREEMENT.**

**19.** <u>**WAIVER OF JURY TRIAL.**</u> **Borrower understands that the right to trial by jury is an unconditional right afforded by the United States Constitution and understands that right may be waived. Borrower has consulted with or has had the opportunity to consult with his/her attorney and hereby knowingly, intentionally and voluntarily waives any right to trial by jury regarding any litigation arising out of or in connection with this Agreement. Borrower understands that Lender also has waived its right to trial by jury and agrees that such waiver by Borrower and Lender are for the mutual benefit of the parties. Further, Borrower understands and agrees that such waiver is a material inducement for both parties in entering into this Agreement and transactions relating thereto.**

**20.** <u>**JUDICIAL REFERENCE.**</u> **IF DEBTOR'S PLACE OF BUSINESS IS WITHIN THE STATE OF CALIFORNIA, THE FOLLOWING PROVISIONS APPLY: IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (EACH, A "CLAIM") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, BORROWER AND LENDER HEREBY AGREE AS FOLLOWS:**

**(A) WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBPARAGRAPH B BELOW, ANY CLAIM WILL BE RESOLVED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1.**

**(B) THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A REFERENCE PROCEEDING: (1) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF), (2) APPOINTMENT OF A RECEIVER AND (3) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS NOTE DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (3) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THE NOTE.**

**(C) UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B). A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS,**

AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED.

(D)  ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(E)  THE REFEREE SHALL APPLY THE RULES OF DISCOVERY AND EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA TO THE REFERENCE PROCEEDING AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW

**21.  Successors and Assigns; No Third Party Beneficiaries.**  This Agreement shall be binding upon the parties' successor and assigns, provided however that Borrower shall have no right of assignment, without the prior written consent of Lender. Borrower and Lender do not intend that there be any third party beneficiaries under this Agreement. Specifically, and without limiting the generality of the foregoing, any manufacturer, distributor or supplier of Vehicles or other goods purchased by Borrower is not a third-party beneficiary under this Agreement, and shall have no right to rely upon the Lender's agreement to make Advances or to issue commitments to make Advances to Borrower.

**22.  Savings Clause.**  Any provision in this Agreement prohibited by law shall be ineffective to the extent of such prohibitions without invalidating the remaining provisions in this Agreement.  If any provision of this Agreement is held to be invalid, illegal, or unenforceable by a court of competent jurisdiction, such provision will be deemed restated, in accordance with applicable law, to reflect as nearly as possible the original intentions of the parties, and the remainder of the Agreement will remain in full force and effect.

**23.  Applicable Law and Consent to Jurisdiction.**

(a)  This Agreement and other Loan Documents and all transactions hereunder and thereunder shall be governed by and construed in accordance with the internal laws of the State of California, where Lender has its principal place of business, where payment is to be made, without reference to the conflict of laws principles of such state, provided however, that with respect to the creation, perfection, priority and enforcement of the lien and security interest created by this Agreement, the security instrument and the other Loan Documents, and the determination of deficiency judgments, the laws of the state where the Borrower or property is located, as applicable, shall apply.  With respect to any claim, action, or dispute arising under or in connection with this Agreement or related to any matter which is the subject of this Agreement, Borrower irrevocably and unconditionally submits to the nonexclusive jurisdiction of the state courts in Los Angeles County, California, and any appellate courts from any thereof, as to any action or for recognition or enforcement of any judgment brought in such court by Lender.  Each of the parties hereto irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such California state court.

(b)  Borrower irrevocably and unconditionally waives any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other Loan Document brought in any court referred to in paragraph (a) of this section, and irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. NOTHING IN THIS AGREEMENT, THE PROMISSORY NOTE OR THE OTHER LOAN DOCUMENTS WILL BE DEEMED TO PRECLUDE LENDER FROM BRINGING AN ACTION OR PROCEEDING WITH RESPECT HERETO IN ANY OTHER COURT OR JURISDICTION. Each party hereto acknowledges

14

and agrees that such party has been induced to enter into this Agreement by, among other things, the provisions of this Section 23.

**24.** <u>**Entire Agreement and Amendments.**</u>  This Agreement, including the exhibits and schedules hereto, along with the other loan documents executed on or near this date, and any supplemental agreements, documents, certificates, or instruments between the parties executed on or near this date or in the future, including, without limitation, any Promissory Notes, Guarantees, Subordination Agreements, Advance/Fee Schedule, and Power of Attorney (collectively, the "Loan Documents"), constitute the entire agreement of the parties, and supersede all other promises or representations.  Any amendment or modification of this Agreement must be made in writing and must be executed by Borrower and Lender, provided however that this <u>Section 24</u> may not be amended in any circumstance.

**25.** <u>**Multiple Borrowers.**</u>

(a) <u>Joint and Several Liability</u>.  If more than one entity comprise the "Borrower" as defined hereunder, then each such Borrower is jointly and severally, directly and primarily, liable for the payment, performance and indefeasible satisfaction in full of the Loans, and such liability is independent of the duties, obligations, and liabilities of the other Borrowers.  Lender may proceed against one Borrower to enforce the Loans without waiving its right to proceed against any other Borrower.  This Agreement and the Loan Documents are a primary and original obligation of each Borrower and shall remain in effect notwithstanding future changes in conditions, including any change of law or any invalidity or irregularity in the creation or acquisition of any Loan or in the execution or delivery of any agreement between Lender and any Borrower.  If any Borrower fails to perform any obligation under any Loan Document, or make a payment when due, then each of the other Borrowers immediately shall cause such payment to be made or such obligation to be performed.  Each Borrower acknowledges that it shall be absolutely and unconditionally liable for existing and future Loans in full, as if all of the credit was advanced to such Borrower, and that such liability shall be continuing.  Lender may rely on any representation made by any Borrower as made on behalf of, and binding on, all Borrowers. Each Borrower waives any right to revoke its liability under this Agreement and any Loan Documents as to future indebtedness, and waives any rights it may have under Section 2815 of the California Civil Code.  Each Borrower appoints each other Borrower as its agent with all necessary power and authority to give and receive notices, certificates or demands for and on behalf of all Borrowers, to act as disbursing agent for receipt of any loans on behalf of each Borrower and to apply to Lender on behalf of each Borrower for Advances, any waivers and any consents.  This authorization cannot be revoked, and Lender need not inquire as to one Borrower's authority to act for or on behalf of another Borrower.

(b) <u>Subrogation and Similar Rights</u>.  Each Borrower irrevocably waives, until all Advances are indefeasibly satisfied, all rights that it may have at law or in equity (including any law subrogating Borrower to the rights of Lender under any agreement) to seek contribution, indemnification, or any other form of reimbursement from any other Borrower, or any other person now or hereafter primarily or secondarily liable for any of the Loans, for any payment made by Borrower with respect to the Loans or otherwise and all rights that it might have to benefit from, or to participate in, any security for the Loans as a result of any payment made by Borrower with respect to the Loans or otherwise.  Any agreement providing for indemnification, reimbursement or any other arrangement prohibited under this section shall be null and void.  If any payment is made to a Borrower in contravention of this section, such Borrower shall hold such payment in trust for Lender and such payment shall be promptly delivered to Lender for application to the Loans, whether matured or unmatured.

(c) <u>Waivers of Notice</u>.  Each Borrower waives, to the extent permitted by law, notice of acceptance hereof; notice of the existence, creation or acquisition of any of the Loans; notice of an Event of Default except as set forth herein; notice of the amount of the Loans outstanding at any time; notice of any adverse change in the financial condition of any other Borrower or of any other fact that might increase any Borrower's risk; presentment for payment; demand; protest and notice thereof as to any instrument; and all other notices and demands to which such Borrower would otherwise be entitled by virtue of being a co-borrower or a surety. Each Borrower waives any defense arising from any defense of any other Borrower, or by reason of the cessation from any cause whatsoever of the liability of any other Borrower.  Lender's failure at any time to require strict performance by any Borrower of any provision of this Agreement or any Loan Document shall not waive, alter or diminish any right of Lender thereafter to demand strict compliance and performance therewith.  Each Borrower also waives any defense arising from any act or omission of Lender that changes the

scope of Borrower's risks hereunder. Each Borrower hereby waives any right to assert against Lender any defense (legal or equitable), setoff, counterclaim, or claims that such Borrower individually may now or hereafter have against another Borrower or any other person liable to Lender with respect to the Loans in any manner whatsoever.

(d) <u>Subrogation Defenses</u>. Until all Loans are paid in full and Lender has no further obligation to make loans to Borrower, each Borrower hereby waives any defense based on impairment or destruction of its subrogation or other rights against any other Borrower and waives all benefits which might otherwise be available under California Civil Code Sections 2809, 2810, 2819, 2839, 2845, 2848, 2849, 2850, 2899, and 3433, as those provisions are now in effect and hereafter amended, and under similar statutes now and hereafter in effect.

**26.** **Cumulative Rights.** The rights, powers, and remedies of Lender under this Agreement shall be in addition to all rights, powers, and remedies given to Lender by virtue of any statute or rule of law, any agreements, instruments, or documents evidencing or securing the Loans or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's security interest in the Collateral.

**27.** **Counterparts.** This Agreement may be executed in two counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument. A facsimile transmission, digital version or e-mail of a portable document format version (including any such version submitted via online portal, mobile application or any similar process) of this Agreement executed by a party shall be deemed to be an original. Lender may, in its discretion, keep and store only an electronic copy of this Agreement and/or any of the other Loan Documents, and any photostatic, microphotographic, photographic, optical image, digital or other reproduction of such Loan Document(s), executed by the parties hereto or thereto, shall be admissible in evidence in any proceeding before any court, board, bureau, department, commission, or agency of the state, in lieu of and without accounting for the original of such writing or record, if such reproduction accurately reproduces or forms a durable medium for reproducing the original.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and effective as of the Effective Date.

**BORROWER**

BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS

Signature: _____

Name: CARROL JAMES LEBOUEF III

Title: _____ MANAGING MEMBER

Address:
**1628 W. Crosby Road suite 109**
**Carrollton, TX 75006**

Signature: _____

Name: CHARLIS LEE LEBOUEF

Title: OWNER / VP / MEMBER

**LENDER:**

WESTLAKE FLOORING COMPANY, LLC

Signature: _____

Name: Patrick Amato

Title: _____

Address:
**4751 Wilshire Blvd., Suite 100**
**Los Angeles, CA 90010**

Loan and Security Agreement

16

## EXHIBIT A

**Advance/Fee Schedule to**
**Loan and Security Agreement dated** April 21, 2016
(as amended, restated, extended, supplemented or otherwise
modified in writing from time to time, the **"Agreement"**)

1.   (a)  Borrower: BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS

    (b)  Lender:  Westlake Flooring Company, LLC

2.   Maximum Aggregate Commitment: $1,000,000

3.   Loan and Audit Fees:

    Please note current Rate and Fee Schedule for all such fees

4.   Principal Reduction and Floorplan Fee:

| Period | Number of Days in Period | Required Principal Reduction to Extend Maturity Date | Floorplan Fee |
|--------|--------------------------|------------------------------------------------------|---------------|
| 1 | 60 | 5% | $75 |
| 2 | 60 | 5% | $75 |
| 3 | 60 | 100% | $75 |
|  |  |  |  |
|  |  |  |  |

5. Dealer may pay the Floorplan Fee at the time of the Advance to avoid incurring interest charges thereon. If Dealer elects not to pay the Floorplan Fee at the time of the Advance, the Interest on the Floorplan Fee will accrue per the terms of this Note.  By initialing the box at the end of this sentence, Dealer acknowledges that Interest will accrue on the Floorplan Fee per terms of the Note. *(initial)*

6. Lender and Borrower hereby agree that the only charge imposed by Lender upon Borrower for the use of money in connection with the Loans is and shall be the Interest Rate expressed in the Agreement and the Promissory Note.  Borrower shall pay to Lender an initial administrative setup fee in the amount set forth above on each Vehicle financed hereunder.  Such administrative fees and all other charges imposed in connection with the Loans, including, without limitation, any floorplan fees, audit fees, overline fees, highline fees, default and late charges, reasonable attorney's fees, and other reimbursement  for costs and expenses paid by Lender to third parties are and shall be deemed to be charges made to compensate Lender for underwriting and administrative services and costs, and other services, costs, or losses performed or incurred, and to be performed or incurred, by Lender in connection with the Loan and shall under no circumstances be deemed to be interest or other charges for the use of money.  All such charges shall be fully earned and nonrefundable when due.

7. Borrower acknowledges and agrees that Lender reserves the right to amend the Advance availability amounts and Fees set forth above, as well as the Interest Rate(s) applicable to the Loans, from time to time.   In such event, the Borrower agrees to execute a replacement Promissory Note(s) and/or Advance/Fee Schedule, as requested by Lender.  Lender may amend the Advance availability amounts immediately at its discretion, but Lender will provide Borrower with  advance notice of amendments to Fees or Interest Rate(s), unless Lender is terminating or suspending financing.  In addition to the other grounds noted in the Agreement, Borrower acknowledges and agrees that Lender may terminate or suspend financing if Borrower fails to use the program for a sixty (60) day period.  By executing this

Schedule, Borrower acknowledges that the terms and conditions set forth in the Agreement, Promissory Note, and related Loan Documents shall be ratified in all respects.

**Borrower:**     BULLMOOSE MOTOR SPORTS, LLC
                   DBA JAMES MAVERICK MOTOR SPORTS

Signature: _____

Name: _____ CARROL JAMES LEBOUEF III _____

Title: _____ MANAGING MEMBER _____

**Westlake Flooring Company, LLC**

Signature: _____

Name: _____ PATRICK AMATO _____

Title: _____ VICE PRESIDENT _____

Exhibit A to LSA

## EXHIBIT B

## INDIVIDUAL PERSONAL GUARANTY

WHEREAS, BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS (hereinafter sometimes referred to as "Borrower") contemporaneously executed and delivered to Westlake Flooring Company, LLC, a California limited liability company ("Lender") a Loan and Security Agreement dated April 21, 2016 (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Agreement"); and

WHEREAS, any present or future loans or other credit or financial advances by Lender to Borrower is conditioned upon said indebtedness being personally guaranteed as to the payment thereof by CARROL JAMES LEBOUEF III hereinafter referred to as "Guarantor"); and

WHEREAS, for value received and in consideration of the financial and other support that the Borrower has provided, and such financial and other support as the Borrower may in the future provide, to the Guarantor, and in order to induce Lender to make present or future Loans or other credit or financial advances Loans to Borrower, and because Guarantor has determined that executing this Individual Personal Guaranty (hereinafter referred to as "Guaranty") is in its interest and to its financial benefit, the Guarantor is willing to guarantee the obligations of Borrower under the Agreement; and

WHEREAS the Guaranty shall be irrevocable, continuing and unconditional as to all obligations owed by Borrower at all times;

1. NOW, THEREFORE, the Guarantor, in executing this Guaranty, jointly and severally in the case of more than one guarantor, hereby absolutely and unconditionally guarantees to Lender that Borrower will promptly pay the full amount of principal and interest, all costs and fees, including but not limited to, reasonable attorneys' fees and collection costs, and any other liabilities arising out of the Agreement as and when the same shall in any manner be or become due, either according to the terms and conditions provided in the Agreement or upon acceleration of the payment thereof by reason of a default, as a primary not a secondary liability of Guarantor. It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Agreement, Promissory Note, or other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

2. Without limiting the generality of the foregoing, the Guarantor agrees that he/she will pay the full amount of principal and interest outstanding under the Agreement now or hereafter due as and when the same shall in any manner be or become due, either according to the terms and conditions provided in the Agreement or upon acceleration of the payment thereof by reason of a default, as primary and not a secondary liability of Guarantor.

3. The Guarantor hereby waives demand, notice of dishonor, presentment for payment, protest and notice of protest, and of non-performance on all of said indebtedness; and if said indebtedness is renewed, or if the time for payment thereof be extended (to which Guarantor hereby expressly consents to any such renewal or extension) either with or without notice to Guarantor, Guarantor unconditionally guarantees the payment of such indebtedness at the time fixed for the payment thereof in and by any such renewal or extension. Guarantor further waives all rights, by statute or otherwise, to require the holder of the Agreement to institute suit against the original maker of the Agreement; also to exercise diligence in enforcing this or any other instrument.

4. To the extent permitted by law, Guarantor waives all defenses legally available to Guarantor, Guarantor being bound to the payment of said indebtedness of the original maker of the Agreement. The holder of the Agreement may take any new or additional or substituted security from time to time without in any way impairing the obligation of the undersigned; and the impairment of the security, which said holder may from time to time hold as security for said Loan, shall in no way operate to discharge the undersigned in whole or in part, it being specifically agreed that the holder is not required to exercise diligence to enforce its rights against the original maker of the Agreement. The holder is hereby authorized at any time, in its sole discretion and without notice, to take, change, release or in any way deal with the security herein; but the holder of the Agreement shall be under no obligation to collect or to protect any of

1

such security or said indebtedness, and its neglect or failure to collect or protect the same is excused. Acceptance of the Guaranty is waived.

5. Forbearance on the part of Lender to take steps to enforce payment of said indebtedness arising from Guarantor's default in any respect whatever, or the giving of further time to the original maker of the Agreement, shall in no way release the undersigned, but the undersigned shall remain jointly and severally liable hereunder for the prompt payment of said indebtedness.

6. This Guaranty is for the use and benefit of the holder of the Agreement, who in the first instance will be Lender. This Guaranty shall also be for the use and benefit of any subsequent owner of the Agreement, and each owner of the Agreement may assign this Guaranty to its successor owner of the Agreement.

7. All reasonable costs and expenses, including attorneys' fees, incurred by the holder of the Agreement to enforce this Guaranty, shall be paid by the undersigned.

8. The liability of the Guarantor shall continue until payment is made of every obligation of the Borrower now or hereafter incurred in connection with the Agreement, and until payment is made of any loss or damage incurred by Lender with respect to any matter covered by this Guaranty.

9. Guarantor consents that, without affecting the Guarantor's liability, Lender may, without notice to or consent of Guarantor on such terms as Lender may deem advisable, extend in whole or in part, by renewal or otherwise, the time of payment of the debt now or hereafter owing by the Borrower to Lender or held by Lender as security for any obligation herein described, or may do or refrain from doing any act whatever. Guarantor also consents that Lender may release, surrender, exchange, modify, impair or extend the periods of duration or the time for performance or payment of any Collateral securing the obligations of Borrower to Lender, and may also settle or compromise any claim of Lender against Borrower or against any other person or corporation whose obligation is held by Lender as collateral security for any obligation of Borrower or Lender. Guarantor hereby ratifies and affirms any such actions, and all such actions shall be binding on Guarantor, and Guarantor hereby waives all defenses, counterclaims or offsets which Guarantor may have.

10. Guarantor also waives notice of failure of any person to pay to Lender any debt held by Lender as collateral security for the obligations of Borrower, and all defenses, offsets and counterclaims which Guarantor may at any time have to any claim of Lender against Borrower.

11. Guarantor represents that at the time of the execution and delivery of this Guaranty, nothing exists to impair the effectiveness of this Guaranty.

12. Guarantor understands that so long as any indebtedness exists from Borrower to Lender, Borrower is not permitted to repay any loans or obligation owing Guarantor, present or future. Guarantor agrees that any such payments made by Borrower to Guarantor shall be held in trust for the benefit of Lender and shall be immediately delivered to Lender.

13. Lender may, at its option, proceed in the first instance against the Guarantor to collect the obligations covered by this Guaranty without first proceeding against any other person, firm or corporation, including Borrower, and without resorting to any property held by Lender as collateral security.

14. Guarantor waives any and all rights, benefits and defenses it may have under California Civil Code Sections 2809, 2810, 2815, 2819, 2839, 2845, 2848, 2849, 2850, 2899, and 3433, as those provisions are now in effect and hereafter amended, and under similar statutes now and hereafter in effect.

15. The validity, enforceability and interpretation of this Agreement shall be governed by the laws of the State of California without regard to conflicts of law provisions thereof, and   Any dispute arising under or in connection with this Guaranty or related to any matter which is the subject of this Guaranty shall be subject to the exclusive jurisdiction of the state courts of Los Angeles County, California.  Guarantor expressly consents to such jurisdiction and venue of

the state courts in Los Angeles County, California as to any action brought in such court by Lender and waives any claim of inconvenient forum with respect to any such action.

16. Guarantor understands that the right to trial by jury is an unconditional right afforded by the United States Constitution and understands that right may be waived. Guarantor has consulted with or has had the opportunity to consult with his/her attorney and hereby knowingly, intentionally and voluntarily waives any right to trial by jury regarding any litigation arising out of or in connection with this Guaranty. Guarantor understands that Lender also has waived its right to trial by jury and agrees that such waiver by Guarantor and Lender are for the mutual benefit of the parties. Further, Guarantor understands and agrees that such waiver is a material inducement for both parties in entering into this Guaranty and transactions relating thereto.

17. JUDICIAL REFERENCE. IF DEBTOR'S PLACE OF BUSINESS IS WITHIN THE STATE OF CALIFORNIA, THE FOLLOWING PROVISIONS APPLY: IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (EACH, A "CLAIM") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, BORROWER AND LENDER HEREBY AGREE AS FOLLOWS:

(A)   WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBPARAGRAPH B BELOW, ANY CLAIM WILL BE RESOLVED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1.

(B)   THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A REFERENCE PROCEEDING: (1) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF), (2) APPOINTMENT OF A RECEIVER AND (3) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS NOTE DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (3) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THE NOTE.

(C)   UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B). A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS, AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED.

(D)   ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(E) THE REFEREE SHALL APPLY THE RULES OF DISCOVERY AND EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA TO THE REFERENCE PROCEEDING AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW

18. Any provision of this Guaranty that is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Guaranty or affecting the validity or enforceability of any provision of this Guaranty.

19. Words of "Guaranty" contained herein in no way diminish or impair the absolute liability hereby created.

20. POLICY CONCERNING THE FURNISHING OF NEGATIVE INFORMATION TO CONSUMER REPORTING AGENCIES. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Executed by the undersigned this 21ST day of APRIL , 2016

Signature: _amoel_

Name: CARROL JAMES LEBOUEF III

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of Texas

County of Dallas

On 4.21.16 before me, ( Carrie Hoagenson ), personally
Name of Notary Public

appeared Carrol LeBouef , who proved to me on the
Name of Signatory

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Notary Public Signature

CARRIE HOAGENSON
My Commission Expires
June 5, 2019

Notary Public Seal

Guaranty                                    4

EXHIBIT B

## INDIVIDUAL PERSONAL GUARANTY

WHEREAS, BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS (hereinafter sometimes referred to as "Borrower") contemporaneously executed and delivered to Westlake Flooring Company, LLC, a California limited liability company ("Lender") a Loan and Security Agreement dated April 21, 2016 (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Agreement"); and

WHEREAS, any present or future loans or other credit or financial advances by Lender to Borrower is conditioned upon said indebtedness being personally guaranteed as to the payment thereof by CHALLIS LEE LEBOUEF hereinafter referred to as "Guarantor"); and

WHEREAS, for value received and in consideration of the financial and other support that the Borrower has provided, and such financial and other support as the Borrower may in the future provide, to the Guarantor, and in order to induce Lender to make present or future Loans or other credit or financial advances Loans to Borrower, and because Guarantor has determined that executing this Individual Personal Guaranty (hereinafter referred to as "Guaranty") is in its interest and to its financial benefit, the Guarantor is willing to guarantee the obligations of Borrower under the Agreement; and

WHEREAS the Guaranty shall be irrevocable, continuing and unconditional as to all obligations owed by Borrower at all times;

1. NOW, THEREFORE, the Guarantor, in executing this Guaranty, jointly and severally in the case of more than one guarantor, hereby absolutely and unconditionally guarantees to Lender that Borrower will promptly pay the full amount of principal and interest, all costs and fees, including but not limited to, reasonable attorneys' fees and collection costs, and any other liabilities arising out of the Agreement as and when the same shall in any manner be or become due, either according to the terms and conditions provided in the Agreement or upon acceleration of the payment thereof by reason of a default, as a primary not a secondary liability of Guarantor. It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Agreement, Promissory Note, or other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

2. Without limiting the generality of the foregoing, the Guarantor agrees that he/she will pay the full amount of principal and interest outstanding under the Agreement now or hereafter due as and when the same shall in any manner be or become due, either according to the terms and conditions provided in the Agreement or upon acceleration of the payment thereof by reason of a default, as primary and not a secondary liability of Guarantor.

3. The Guarantor hereby waives demand, notice of dishonor, presentment for payment, protest and notice of protest, and of non-performance on all of said indebtedness; and if said indebtedness is renewed, or if the time for payment thereof be extended (to which Guarantor hereby expressly consents to any such renewal or extension) either with or without notice to Guarantor, Guarantor unconditionally guarantees the payment of such indebtedness at the time fixed for the payment thereof in and by any such renewal or extension. Guarantor further waives all rights, by statute or otherwise, to require the holder of the Agreement to institute suit against the original maker of the Agreement; also to exercise diligence in enforcing this or any other instrument.

4. To the extent permitted by law, Guarantor waives all defenses legally available to Guarantor, Guarantor being bound to the payment of said indebtedness of the original maker of the Agreement. The holder of the Agreement may take any new or additional or substituted security from time to time without in any way impairing the obligation of the undersigned; and the impairment of the security, which said holder may from time to time hold as security for said Loan, shall in no way operate to discharge the undersigned in whole or in part, it being specifically agreed that the holder is not required to exercise diligence to enforce its rights against the original maker of the Agreement. The holder is hereby authorized at any time, in its sole discretion and without notice, to take, change, release or in any way

deal with the security herein; but the holder of the Agreement shall be under no obligation to collect or to protect any of such security or said indebtedness, and its neglect or failure to collect or protect the same is excused. Acceptance of the Guaranty is waived.

5. Forbearance on the part of Lender to take steps to enforce payment of said indebtedness arising from Guarantor's default in any respect whatever, or the giving of further time to the original maker of the Agreement, shall in no way release the undersigned, but the undersigned shall remain jointly and severally liable hereunder for the prompt payment of said indebtedness.

6. This Guaranty is for the use and benefit of the holder of the Agreement, who in the first instance will be Lender. This Guaranty shall also be for the use and benefit of any subsequent owner of the Agreement, and each owner of the Agreement may assign this Guaranty to its successor owner of the Agreement.

7. All reasonable costs and expenses, including attorneys' fees, incurred by the holder of the Agreement to enforce this Guaranty, shall be paid by the undersigned.

8. The liability of the Guarantor shall continue until payment is made of every obligation of the Borrower now or hereafter incurred in connection with the Agreement, and until payment is made of any loss or damage incurred by Lender with respect to any matter covered by this Guaranty.

9. Guarantor consents that, without affecting the Guarantor's liability, Lender may, without notice to or consent of Guarantor on such terms as Lender may deem advisable, extend in whole or in part, by renewal or otherwise, the time of payment of the debt now or hereafter owing by the Borrower to Lender or held by Lender as security for any obligation herein described, or may do or refrain from doing any act whatever. Guarantor also consents that Lender may release, surrender, exchange, modify, impair or extend the periods of duration or the time for performance or payment of any Collateral securing the obligations of Borrower to Lender, and may also settle or compromise any claim of Lender against Borrower or against any other person or corporation whose obligation is held by Lender as collateral security for any obligation of Borrower or Lender. Guarantor hereby ratifies and affirms any such actions, and all such actions shall be binding on Guarantor, and Guarantor hereby waives all defenses, counterclaims or offsets which Guarantor may have.

10. Guarantor also waives notice of failure of any person to pay to Lender any debt held by Lender as collateral security for the obligations of Borrower, and all defenses, offsets and counterclaims which Guarantor may at any time have to any claim of Lender against Borrower.

11. Guarantor represents that at the time of the execution and delivery of this Guaranty, nothing exists to impair the effectiveness of this Guaranty.

12. Guarantor understands that so long as any indebtedness exists from Borrower to Lender, Borrower is not permitted to repay any loans or obligation owing Guarantor, present or future. Guarantor agrees that any such payments made by Borrower to Guarantor shall be held in trust for the benefit of Lender and shall be immediately delivered to Lender.

13. Lender may, at its option, proceed in the first instance against the Guarantor to collect the obligations covered by this Guaranty without first proceeding against any other person, firm or corporation, including Borrower, and without resorting to any property held by Lender as collateral security.

14. Guarantor waives any and all rights, benefits and defenses it may have under California Civil Code Sections 2809, 2810, 2815, 2819, 2839, 2845, 2848, 2849, 2850, 2899, and 3433, as those provisions are now in effect and hereafter amended, and under similar statutes now and hereafter in effect.

15. The validity, enforceability and interpretation of this Agreement shall be governed by the laws of the State of California without regard to conflicts of law provisions thereof, and   Any dispute arising under or in connection with this Guaranty or related to any matter which is the subject of this Guaranty shall be subject to the exclusive jurisdiction of the state courts of Los Angeles County, California.  Guarantor expressly consents to such jurisdiction and venue of

the state courts in Los Angeles County, California as to any action brought in such court by Lender and waives any claim of inconvenient forum with respect to any such action.

16. Guarantor understands that the right to trial by jury is an unconditional right afforded by the United States Constitution and understands that right may be waived. Guarantor has consulted with or has had the opportunity to consult with his/her attorney and hereby knowingly, intentionally and voluntarily waives any right to trial by jury regarding any litigation arising out of or in connection with this Guaranty. Guarantor understands that Lender also has waived its right to trial by jury and agrees that such waiver by Guarantor and Lender are for the mutual benefit of the parties. Further, Guarantor understands and agrees that such waiver is a material inducement for both parties in entering into this Guaranty and transactions relating thereto.

17. JUDICIAL REFERENCE. IF DEBTOR'S PLACE OF BUSINESS IS WITHIN THE STATE OF CALIFORNIA, THE FOLLOWING PROVISIONS APPLY: IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (EACH, A "CLAIM") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, BORROWER AND LENDER HEREBY AGREE AS FOLLOWS:

(A) WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBPARAGRAPH B BELOW, ANY CLAIM WILL BE RESOLVED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1.

(B) THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A REFERENCE PROCEEDING: (1) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF), (2) APPOINTMENT OF A RECEIVER AND (3) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS NOTE DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (3) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THE NOTE.

(C) UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B). A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS, AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED.

(D) ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(E) THE REFEREE SHALL APPLY THE RULES OF DISCOVERY AND EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA TO THE REFERENCE PROCEEDING AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW

18. Any provision of this Guaranty that is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Guaranty or affecting the validity or enforceability of any provision of this Guaranty.

19. Words of "Guaranty" contained herein in no way diminish or impair the absolute liability hereby created.

20. POLICY CONCERNING THE FURNISHING OF NEGATIVE INFORMATION TO CONSUMER REPORTING AGENCIES. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Executed by the undersigned this 21st day of APRIL , 2016

Signature _Challis Lee LeBouef_

Name: CHALLIS LEE LEBOUEF

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas

County of Dallas }

On 4-21-16 before me, ( Carrie Hoagenson ), personally
Name of Notary Public

appeared Challis LeeLeBouef , who proved to me on the
Name of Borrower

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature

Notary Public Seal

CARRIE HOAGENSON
My Commission Expires
June 5, 2019

## EXHIBIT C

## PROMISSORY NOTE

**$1,000,000**                                                                          **Los Angeles, California**
**April 21, 2016**

FOR VALUE RECEIVED, the undersigned BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS, a TEXAS LIMITED LIABILITY COMPANY ("Borrower"), promises to pay to Westlake Flooring Company, LLC ("Lender"), or order, at its place of business at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010, or at such other place as may be designated in writing by the holder of this Promissory Note ("Note"), so much of the principal sum of ONE MILLION DOLLARS ($1,000,000) (the "Total Principal Amount"), or the aggregate outstanding amount under the Loans made by Lender to Borrower (if the total amount outstanding is less than the Total Principal Amount) pursuant to the terms of the Loan and Security Agreement **dated April 21, 2016,** and related loan agreements, between Borrower and Lender (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Agreement"), together with interest on the unpaid principal balance advanced hereunder from the date of the Advance until paid, at a fluctuating Interest Rate per annum equal to the Base Rate plus an Applicable Percentage as set forth below, provided however that amounts outstanding with respect to the following types of Advances may not exceed the limits listed below:

| Types of Advances | Amount | Applicable Percentage |
|---|---|---|
| Inventory Finance Loan | $1,000,000 | 4.5% |

Capitalized terms used but not otherwise defined in this Note shall have the meanings given to them in the Agreement. The initial Advance, all subsequent Advances, and all payments made on account of principal may be reflected via an online portal if provided by Lender to Borrower.  The aggregate unpaid principal amount shown on any monthly statement shall be rebuttable presumptive evidence of the principal amount owing and unpaid on this Note.  The failure to record the date and amount of any Advance on such monthly statement or provide such monthly statement or the Advance of amounts exceeding the limits of this Note shall not, however, limit or otherwise affect the obligation of Borrower under the Agreement or under this Note to repay the principal amount of the Advances together with all interest accruing thereon.

"Base Rate" shall mean the greater of (a) the "Prime Rate" published in The Wall Street Journal on the date(s) noted below (in the event no such rate is published in The Wall Street Journal on such date(s), the Base Rate shall be the "Prime Rate" published therein for the most recent business day preceding the last business day of such month on which such rate was published) or, in the event The Wall Street Journal does not quote a "Prime Rate," the rate quoted as the "Prime Rate" in a publication as Lender may, from time to time, hereafter designate in writing), and (b) five percent (5%).  The Base Rate shall be determined by Lender on the last Business Day of each calendar month and the Interest Rate based on such Base Rate shall be in effect for the following month.  Interest shall be calculated on the basis of a 360-day year for actual days elapsed.

Principal and interest hereunder shall be due and payable by Borrower on the dates and in the manner as follows:

(a) Subject to any payment changes resulting from changes in the Base Rate, Borrower will pay (i) regular periodic installments of interest, due as of each payment date, pursuant to the Advance/Fee Schedule with all subsequent payments to be due thereafter or on such other dates as may be specified by Lender; and (ii) payments of principal required by Lender from time to time as set forth on the Advance/Fee Schedule.

(b) Any Advance for a Vehicle shall be payable on the earliest of:

(i)      seven (7) days after the date of the Vehicle sale, if financed, or within twenty-four (24) hours after the date Borrower receives payment by or on behalf of the purchaser of such Vehicle, whichever occurs first;

(ii)     the Maturity Date (as defined below) for such Advance; or

(iii)    the termination of the Agreement.

1

In addition, payments of principal shall be made in accordance with the Advance/Fee Schedule. The "Maturity Date" for the Advance shall mean the date upon which the Advance is to be repaid as set forth in the Agreement; provided however, if no such date is specified by Lender, then the Advance shall be deemed due upon demand of Lender. Borrower may prepay at any time all or part of the principal balance under this Note without penalty. All principal and interest, costs, and expenses due hereunder are payable in lawful money of the United States of America.

This Note has been executed and delivered pursuant to the Agreement. Terms defined in the Agreement and not otherwise defined herein are used herein with the meanings defined for those terms in the Agreement. Upon the occurrence of any Event of Default, all amounts owed under the Loans shall, at the option of Lender, mature and be immediately due and payable.

The obligations under this Note are secured by the Collateral pledged by Borrower to Lender pursuant to the Agreement.

Borrower and all others who may become liable for all or any part of this obligation, hereby agree to be jointly and severally bound, and jointly and severally waive and renounce presentment, protest, demand, notice of dishonor, and any and all lack of diligence or delays in collection or endorsement hereof, and expressly consent to any extension of time, release of any party liable for this obligation or any guaranty of this obligation, release of any security which may have been or which may hereafter be granted in connection herewith or any guaranty of this obligation, or any other indulgence or forbearance which may be made without notice to said party and without in any way affecting the liability of such party.

Nothing contained herein nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively (a) to require the payment of interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate or (b) to require the payment or the doing of any act contrary to law; but if any clause or provision herein contained shall otherwise so operate to invalidate this Note and/or the transaction related hereto, in whole or in part, then such clause(s) and provision(s) only shall be held for naught as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

If for any reason, interest in excess of the amount as limited in the foregoing paragraph shall have been paid hereunder whether by reason of acceleration or otherwise, then in that event any such excess interest shall constitute and be treated as a payment of principal hereunder and shall operate to reduce such principal by the amount of such excess, or if in excess of the then principal indebtedness, such excess shall be refunded upon notice and demand from Borrower.

The rights and remedies of Lender as provided in this Note or any document security this Note shall be cumulative and concurrent and may be pursued singly, successively, or together against Borrower, any guarantor of these obligations, or any security for the debt evidenced by this Note, at the discretion of Lender.

The rights and obligations of Borrower and Lender shall be binding upon and benefit the successors, assigns, administrators, and transferees of the parties.

Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection, to defend or enforce any of Lender's rights hereunder, under the Agreement, under any other agreements related to this Note, or under any documents securing this Note, whether or not litigation is commenced, Borrower shall pay to Lender its reasonable attorneys' fees (including, but not limited to, bankruptcy and appeals), together with all court costs and other expenses which are incurred or paid by Lender in connection therewith.

**IN NO EVENT WILL LENDER BE LIABLE TO BORROWER FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, WHETHER OR NOT LENDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND IN NO EVENT WILL LENDER BE LIABLE TO BORROWER FOR DAMAGES IN EXCESS OF THE SUMS PAID BY BORROWER TO LENDER UNDER THIS NOTE.**

Borrower has consulted with or has had the opportunity to consult with his/her attorney and hereby knowingly, intentionally and voluntarily waives any right to trial by jury regarding any litigation arising out of or in connection with this Note. Borrower understands that Lender also has waived its right to trial by jury and agrees that such waiver

by Borrower and Lender are for the mutual benefit of the parties. Further, Borrower understands and agrees that such waiver is a material inducement for both parties in entering into this Note and transactions relating thereto.

JUDICIAL REFERENCE. IF DEBTOR'S PLACE OF BUSINESS IS WITHIN THE STATE OF CALIFORNIA, THE FOLLOWING PROVISIONS APPLY: IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (EACH, A "CLAIM") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, BORROWER AND LENDER HEREBY AGREE AS FOLLOWS:

    (A)    WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBPARAGRAPH B BELOW, ANY CLAIM WILL BE RESOLVED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1.

    (B)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A REFERENCE PROCEEDING: (1) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF), (2) APPOINTMENT OF A RECEIVER AND (3) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS NOTE DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (3) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THE NOTE.

    (C)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B). A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS, AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED.

    (D)    ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

    (E)    THE REFEREE SHALL APPLY THE RULES OF DISCOVERY AND EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA TO THE REFERENCE PROCEEDING AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW

Failure to exercise any right or option herein given to Lender shall not constitute a waiver of the right to exercise the same at a later time or upon the occurrence of any subsequent event permitting such exercise.

This Note and the transactions hereunder shall be governed and construed in accordance with the internal laws of the State of California where the Lender has its principal place of business, where payment is to be made, and where Lender negotiated the terms of this Note and the Agreement, without reference to the conflict of laws principles of such State. Any dispute arising under or in connection with this Agreement or related to any matter which is the subject of this Agreement shall be subject to the exclusive jurisdiction of the sate courts of Los Angeles County, California. Borrower expressly consents to such jurisdiction and venue of the state courts in Los Angeles County, California as to any action brought in such court by Lender and waives any claim of inconvenient forum with respect to any such action.

Borrower may not assign this Note or any of the rights or interests, or delegate any of its obligations, hereunder, by operation of law or otherwise, in whole or in part, without the prior written consent of Lender.

This Note may not be changed, modified, amended, or terminated orally, but may only be changed, modified, amended, or terminated by an agreement in writing signed by both Borrower and Lender, except that this paragraph my not be changed, modified, amended, or terminated under any circumstance. If the original version of this Note cannot be found, a facsimile transmission or e-mail of a portable document format version of this Note executed by Borrower shall be deemed to be an original. Lender may, in its discretion, keep and store only an electronic copy of this Note and any photostatic, microphotographic, photographic, optical image, or other reproduction of such, executed by Borrower, shall be admissible in evidence in any proceeding before any court, board, bureau, department, commission, or agency of the state, in lieu of and without accounting for the original of such writing or record, if such reproduction accurately reproduces or forms a durable medium for reproducing the original.

[Signatures To Appear On Following Page]

IN WITNESS WHEREOF, Borrower has caused this Note to be executed by its duly authorized officer as of the date first above written.

**BORROWER:**

BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS,
a  TEXAS LIMITED LIABILITY COMPANY

Signature: _____

Name: _____ CARROL JAMES LEBOEF III _____

Title: _____ MANAGING MEMBER _____


GUARANTOR ACKNOWLEDGMENT in his/her individual capacity and as Guarantor of this Promissory Note:

Signature: _____

Name: CARROL JAMES LEBOEF III

Date: ___ 4·21·16 ___

Signature: _____

Name: CHALLIS LEE LEBOEF

Date: ___ 4·21·16 ___

**EXHIBIT D**

**LOCATION OF COLLATERAL**

**1628 W. Crosby Road Suite 109, Carrollton, TX 75006**

## EXHIBIT E

## INSURANCE REQUIREMENTS

Inventory Insurance:

1:      Comprehensive insurance in an amount no less than 50% of the approved line of credit amount, with a deductible of no more than $500.00 per vehicle and a per occurrence deductible acceptable to Lender. Lender shall be the loss payee.

2.      Collision insurance with a deductible of no more than $500.00 per vehicle.

Lender shall be the loss payee, and should be specified as:

    Loss Payee:

    Westlake Flooring Company, LLC
    4751 Wilshire Blvd., Suite 100
    Los Angeles, CA 90010

Insurance Carriers:    Insurance carriers shall have an AM Best's Policyholder's rating of not less than "A-" and a class size of not less than "VI."

Garage Insurance: Borrower agrees to obtain and keep in effect liability coverage at or above the minimum amount required by the state in which it is located.

These Insurance Requirements are subject to change by Lender, within Lender's sole discretion, effective thirty (30) days from the date of a notice to Borrower, or upon default by Borrower.

## EXHIBIT F

## POWER OF ATTORNEY

This Power of Attorney is executed by the undersigned borrower ("Borrower") and delivered to Westlake Flooring Company, LLC (together with such party's successors, assigns, and corporate affiliates, referred to collectively herein as "Lender") in connection with a Loan and Security Agreement **dated as of April 21, 2016** between the Borrower and Lender (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "Agreement"). No person to whom this Power of Attorney is presented, as authority for Lender to take any action or actions contemplated hereby, shall be required to inquire into or seek confirmation from Borrower as to the authority of Lender to take any action described below, or as to the existence of or fulfillment of any condition to this Power of Attorney, which is intended to grant to Lender unconditionally the authority to take and perform the actions contemplated herein, and Borrower irrevocably waives any right to commence any suit or action, in law or equity, against any person or entity which acts in reliance upon or acknowledges the authority granted under this Power of Attorney. The power of attorney granted hereby is coupled with any interest and may not be revoked or canceled by Borrower without Lender's written consent. All capitalized terms used herein shall have the meanings set forth in the Agreement.

With or without the occurrence of an Event of Default under the Agreement, Borrower irrevocably appoints Lender (and all officers, employees, or agents designated by Lender), with full power of substitution, as Borrower's true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Borrower and in the name of Borrower or in its own name, from time to time in Lender's discretion, to take any and all appropriate action and to execute and deliver any and all documents and instruments which may be necessary or desirable to accomplish the purposes of the Loan Documents. Without limiting the generality of the foregoing, Borrower hereby grants to Lender the power and right, on behalf of Borrower, without further notice to or assent by any Borrower, at any time, to do the following:

(a) execute such security agreements, invoices, notes, and related documentation as may be necessary for Borrower to acquire Vehicles and secure the Loans, and for Lender to perfect and secure a first priority in the Collateral;

(b) make, settle, and adjust claims under policies of insurance and endorse any check, draft, instrument or other item of payment for the proceeds of such policies of insurance and make all determinations and decisions with respect to such policies of insurance; and

(c) endorse the name of Borrower upon any document, instrument, certificate, evidence of title, state registration documents, trust receipt, or related or similar documents, and checks or other items of payment as necessary to pay for or protect the Collateral.

Upon the occurrence of an Event of Default under the Agreement, Borrower hereby irrevocably constitutes and appoints Lender (and all officers, employees, or agents designated by Lender), with full power of substitution, as Borrower's true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Borrower and in the name of Borrower or in its own name, without notice to or assent by Borrower, from time to time in Lender's discretion to do the following:

(a) endorse the name of Borrower upon any items of payment or proceeds of Collateral and the Vehicles and deposit the same to the account of Lender on account of the indebtedness due under the Agreement;

(b) endorse the name of Borrower upon any chattel paper, document, instrument, invoice, freight bill, bill of lading, or similar document or agreement relating to the Collateral;

(c) use the information recorded on or contained in any data processing equipment and computer hardware and software relating to the Collateral to which Borrower has access;

1

(d)  pay or discharge any taxes, liens security interests, or other encumbrances levied or placed on or threatened against Borrower or the Collateral;

(d)  file or prosecute any claim, litigation, suit, petition, writ, or proceeding in any court of competent jurisdiction or before any arbitrator or other neutral, or take any other action otherwise deemed appropriate by Lender for the purpose of collecting any and all such moneys due to Borrower whenever payable and to enforce any other right in respect of the Collateral, including without limitation confessing to or consenting to judgment, writs of replevin or possession, and/or other equitable relief in favor of Lender; and

(e)  communicate with any party to any contract with regard to the assignment of the right, title, and interest of Borrower in and under such contracts and/or the Collateral and other matters relating thereto.

A facsimile transmission or e-mail transmission of a portable document format version of this Power of Attorney executed by Borrower shall be deemed to be an original.  Lender may, in its discretion, keep and store only an electronic copy of this Power of Attorney, and any photostatic, microphotographic, photographic, optical image, or other reproduction of such, executed by Borrower, shall be admissible in evidence in any proceeding before any court, board, bureau, department, commission, or agency of the state, in lieu of and without accounting for the original of such writing or record, if such reproduction accurately reproduces or forms a durable medium for reproducing the original.

[Signature page follows]

2

Borrower hereby ratifies, to the extent permitted by law, all that Lender shall lawfully do or cause to be done by virtue hereof.

This Power of Attorney is dated April 21, 2016.

**BORROWER:** BULLMOOSE MOTOR SPORTS, LLC
DBA JAMES MAVERICK MOTOR SPORTS

Signature: _____

Name: CARROLL JAMES LEBOUEF III

Title: MANAGING MANAGER

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of _Texas_

County of _Dallas_                                    }

On _4-21-16_ before me, ( _Carrie Hoagenson_ ), personally
                                                    Name of Notary Public
appeared _Carroll Lebouef_ , who proved to me on the
          Name of Signatory

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_____

Notary Public Signature

CARRIE HOAGENSON
My Commission Expires
June 5, 2019

Notary Public Seal

**EXHIBIT G**

## RATE SUBVENTION

Interest rates based on the following schedule will be reduced for the next following calendar month based on the previous month's Westlake Financial Services production volume and the express condition that Dealer's account is current and compliant with all terms and conditions of the Agreement.*

| Funded Deals | Rate Subvention |
|---|---|
| 1 Funded Deals | |
| 2 Funded Deals | |
| 3 Funded Deals | |
| 4 Funded Deals | |
| 5 Funded Deals | |
| 6 Funded Deals | |
| 7 Funded Deals | |
| 8 Funded Deals | |
| 9 Funded Deals | |
| 10 Funded Deals | |

\* Rate Subvention availability is subject to modification or termination at the sole and absolute discretion of Lender at any time with or without notice.

**EXHIBIT H**

## AUTOMATIC CLEARING HOUSE (ACH) AUTHORIZATION FORM

### TERMS AND CONDITIONS

The undersigned Dealer hereby authorizes Westlake Flooring Services ("Westlake") to initiate Automated Clearing House ("ACH") for Dealer credit entries and to initiate, if necessary, debit or credit entries and adjustments for any debit or credit entries in error to Dealer's checking/savings account indicated below. Westlake may initiate an authorized withdrawal in the amount requested by Dealer in a written or oral communication with Westlake or in the amount due and owing by Dealer under the Agreement, including any interest and fees thereon. Dealer shall receive documentation that the pre-authorized transfer occurred and the amount of the transfer by notice on an itemized receipt. Dealer understands that there is no charge for this service.

In the event the below bank account shall lack sufficient funds for any debit due to an erroneous credit, Dealer agrees that it will reimburse Westlake for the entire amount of the erroneous credit, including any reasonable collection expenses and attorneys' fees and costs, should Westlake be required to institute legal proceedings. Dealer is solely responsible for any overdraft charges or other fees that its bank may assess in connection with transfers initiated pursuant to this ACH Authorization Form. Westlake will not be liable for any incidental or consequential damages resulting from any ACH transaction it initiates pursuant to this ACH Authorization Form. Dealer will remain liable for all amounts owed under the Agreement which remain unpaid as a result of an unsuccessful attempt to withdraw funds from the account below. Dealer is bound by NACHA guidelines as in effect from time to time.

THIS AUTHORITY SHALL REMAIN IN FULL FORCE AND EFFECT UNLESS AND UNTIL WESTLAKE HAS RECEIVED TEN (10) DAYS' WRITTEN NOTICE FROM DEALER OF TERMINATION OF THIS AGREEMENT, OR UNTIL WESTLAKE TERMINATES THIS AGREEMENT UPON TEN (10) DAYS' WRITTEN NOTICE TO DEALER.

### PART 1. DEALER INFORMATION

Dealership Name: *Bullmoose Motor Sports LLC*

DBA: *James Maverick Motor Sports*

Address: *1624 W. Crosby Rd   Suite 101*

Dealer Code:

Dealership Contact Name: *Carroll LeBouef*

Dealership Contact Phone:

Dealership Contact E-mail:

### PART 2. BANK ACCOUNT INFORMATION

Bank Name: *Woodhaven National*

Name on Account: *James Maverick Motor Sports*

Bank Account #:

Bank Routing #:

Bank Address: *4607 Colleyville Blvd   Colleyville TX 76034*

### PART 3. DEALER AUTHORIZATION

The undersigned Dealer hereby authorizes Westlake to initiate entries to the above account and, if necessary, initiate adjustments for any transactions credited/debited in error. I understand and agree that this authorization will be subject to all terms and conditions as outlined in this agreement.

Dealer Signature

Name & Title: *Carroll LeBouef   Owner/Pres*

Date: *4.21.16*

**EXHIBIT I**

## CORPORATE / LLC AUTHORIZING RESOLUTION TO BORROW AND CERTIFICATION

[SEE ATTACHED]

[Use **_One_** of Corporate or LLC Authorizing Resolution, as applicable]

**EXHIBIT I**

## LLC AUTHORIZING RESOLUTION TO BORROW OF
### BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS,
#### a TEXAS LIMITED LIABILITY COMPANY

Pursuant to applicable state laws and the Operating Agreement of BULLMOOSE MOTOR SPORTS, LLC DBA JAMES MAVERICK MOTOR SPORTS ("Company"), the undersigned, being all of the Manager(s) and/or Member(s) of the Company, do hereby approve and consent to the following actions without a meeting, with the intention that such actions shall have the same force and effect as if passed at a meeting duly called and held:

**Execution of LSA and Loan Documents**

WHEREAS, the Manager(s) and the Member(s) of Company find that it is in the best interests of Company to obtain a loan (the "Loan") with Westlake Flooring Company, LLC ("Lender") pursuant to that certain Loan And Security Agreement dated April 21, 2016 (as amended, restated, extended, supplemented or otherwise modified in writing from time to time, the "LSA") and the Loan Documents as defined in the LSA, executed by Lender and Company; and

WHEREAS, the Loan will be secured by all assets as set forth in the LSA;

NOW, THEREFORE, BE IT RESOLVED, that the Manager(s) and the Member(s) of the Company hereby approve the Loan and Company's entering into the transactions contemplated by the LSA and the Loan Documents.

RESOLVED FURTHER, that the LSA and the Loan Documents, and the execution, delivery and performance thereof, are hereby ratified, confirmed and approved in all respects, and that Company's Manager(s) is/are authorized to consummate the transactions contemplated by the LSA and the Loan Documents and to cause Company to perform all of its duties and obligations thereunder.

**Certification**

RESOLVED FURTHER, that the Manager(s) is/are directed to certify this resolution and to deliver the certification in support of the authority of the managers and members named herein to act on behalf of this Company.

Pursuant to the Operating Agreement of the Company, the following are the members and managers of the Company, and the signatures set forth opposite the names are genuine signatures.

MANAGERS:

| Name | Title | Signature |
|---|---|---|
| CARROL JAMES LEBOUEF III | Manager/Managing Member | |
| CHALLIS LEE LEBOUEF | Manager/Managing Member | |

MEMBERS:

| Name | Ownership (%) | |
|---|---|---|
| CARROL JAMES LEBOUEF III | 99% | |
| CHALLIS LEE LEBOUEF | 1% | |

We/I have read all the provisions of this Authorizing Resolution To Borrow, and I certify that all statements and representations made in this Resolution are true and correct. This Authorizing Resolution To Borrow is dated April 21, 2016.

_____
CARROL JAMES LEBOUEF III, Manager/Managing Member

_____
CHALLIS LEE LEBOUEF, Manager/Managing Member

_____
CARROL JAMES LEBOUEF III, Member

_____
CHALLIS LEE LEBOUEF, Member

EXHIBIT J

## RATE & FEE SCHEDULE

[SEE ATTACHED]

## RATE & FEE SCHEDULE
### *BOSS DEALER*

1.  Loan Fees:

      (a)  Administrative Fee (per Vehicle)           $0

      (b)  Late Fee (per delinquent Advance)         $75

      (c)  NSF Fee     $25

      (d)  Overline Fee (% of amount in excess of Advance Availability)     0%

      (e)  Highline Fee (per Vehicle Advance in excess of $25,000)     1.5% of floored amount/per term

      (f)  Outside Flooring Fee     $60

      (g)  Trusted Title Fee     $25

      (h)  Shipping
          (i)  Overnight     $0
          (ii)  Priority Overnight     $25
          (iii)  Saturday Delivery     $35

      (i)  Manual Payment Fee     $15

      (j)  Loan Payoff Fee     $100

      (k)  Extension Fee     $150 + term fee

      (l)  Temporary Increase     1% of increase amount

2.  Audit Fees:

      (a)  Audit Fee (per location)     $0

      (b)  Vehicle Not Found (per Vehicle)[*]     $100

      (c)  Audit Lot Revisit (per location)
          (i)  Locations 6 – 15 mi from the dealership     $0
          (ii)  Locations 15mi or more from the dealership     $0

      (d)  Sold out of Trust (per Vehicle)[*]     $100

[*] - Lender's charging this fee shall not constitute a waiver of any rights of Lender under the Agreement.

*Published Rate and Fee Schedule as of 3/14/2016*

# FLOORPLAN AGREEMENT INSTRUCTIONS

| SECTION | INSTRUCTIONS |
|---|---|
| Other Agreements of Borrower | Read through section 10 and at Section 10(k), initial to acknowledge. |
| Counterparts | • Below section 27, please sign, print your name, and write your title within your organization. |
| Exhibit A: Advance/Fee Schedule | • In section 5, please initial at the end of the section. <br> • Underneath the borrower name, please sign, print your name, and write your title within your organization. |
| Exhibit B: Individual Personal Guaranty | • At the end of Section 20, please sign above your name. <br> • Please notarize the personal guaranty. <br><br> ** NOTE: THIS SECTION WILL BE OMITTED FROM THE CONTRACT FOR SOLE PROPRIETORSHIPS |
| Exhibit C: Promissory Note | • Please sign underneath the dealership name, print your name and title within your organization. <br> • Please sign the **Guarantor Acknowledgement** as well, print your name, and add the date. |
| Exhibit F: Power of Attorney | • Underneath the borrower name, please sign, print your name and title within your organization. <br> • Please notarize this section. |
| Exhibit H:  ACH Form | Please fill out the ACH form. |
| Exhibit I:  LLC Authorizing Resolution to Borrow <br> **OR** <br> Corporate Authorizing Resolution to Borrow | • Please sign where indicated to certify name, title and % ownership (where noted). <br> • Sign at bottom <br><br> ** NOTE: THIS SECTION WILL BE OMITTED FROM THE CONTRACT FOR SOLE PROPRIETORSHIPS |