# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| NEXTGEAR CAPITAL, INC. AND WESTLAKE FLOORING COMPANY, LLC<br><br>Plaintiffs,<br><br>v.<br><br>DEALERS CREDIT EXPRESS, INC.,<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>CARROLL LEBOUEF AND CHALLIS LEBOUEF,<br><br>Third-Party Defendants. | Case No. 3:17-cv-01012-M<br><br><br>**JURY TRIAL DEMANDED** |

## THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff Dealers Credit Express, Inc. ("DCE"), pursuant to the parties' agreed August 1, 2017 deadline to join parties (Dkt. 13, ¶ 2), states as follows for its Third-Party Complaint against Third-Party Defendants Carroll LeBouef and Challis LeBouef ("Third-Party Defendants").

## PARTIES

1. Third-Party Plaintiff DCE is a corporation organized and existing under the laws of the State of Texas.

2. On information and belief, Third-Party Defendants are individuals residing in the State of Texas and may be served with process at 2130 Shoreline Dr., Flower Mound, Texas 75022-5433.

1



EXHIBIT 1

## JURISDICTION AND VENUE

3. Jurisdiction exists in this case between DCE and Third-Party Defendants pursuant to 28 U.S.C. § 1367(a) because the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

4. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

## BACKGROUND FACTS

5. Third-Party Defendants Carroll and Challis LeBouef owned and operated Bullmoose Motor Sports, LLC d/b/a James Maverick Motor Sports ("Bullmoose"), which had its principal place of business at 628 W. Crosby Rd., Suite 109, Carrollton, Texas 75006.

6. DCE is an entity that, on or about June 29, 2016, extended a floor plan line of credit to Third-Party Defendants in the maximum amount of five hundred thousand ($500,000.00) dollars, to be used by them exclusively for the purpose of purchasing certain inventory for sale in the ordinary course of Bullmoose's business.  A copy of the Dealer Floor Plan Agreement ("Floor Plan") entered into by and between DCE and Bullmoose is attached hereto as Exhibit A, and is incorporated herein by reference.  DCE has fully complied with the agreement.  In connection with the Floor Plan, Bullmoose executed a Floor Plan Line of Credit Promissory Note (the "Note") and a Security Agreement ("Security Agreement"), true and correct copies of which are attached hereto as Exhibits B and C, respectively, and are incorporated herein by reference.

7. In connection with the Floor Plan (Exhibit A), the Note (Exhibit B) and the Security Agreement (Exhibit C), on or about June 29, 2016, both Third-Party Defendants, in their individual capacities, separately entered into agreements ("Personal Guaranties") with DCE

in which they personally guaranteed the repayment of any advances made under the Floor Plan. True and correct copies of the Personal Guaranties executed by each Third Party Defendant are attached hereto as Exhibits D and E.

8. On September 22, 2016, Bullmoose filed a Chapter 7 bankruptcy proceeding under Bankruptcy Rules 4001 and 9014, seeking relief under Sections 362(d) and 1301(c) of the Bankruptcy Code.

9. DCE had advanced to Bullmoose funds for the finance and purchase of specific motor vehicles to which DCE held the physical titles. DCE had made advances for the financing of nineteen specific vehicles, and the unpaid balance of principal for advances made to Bullmoose for those vehicles was approximately $498,664.50.

10. On September 21, 2016, prior to filing for Chapter 7 bankruptcy, Bullmoose voluntarily surrendered to DCE 14 of the 19 financed vehicles ("Recovered Vehicles") as a partial repayment of the amounts owed to DCE. DCE had advanced funds to specifically finance the Recovered Vehicles and DCE had a security interest in and held the titles for the Recovered Vehicles. DCE sent the Recovered Vehicles to Alliance Auto Auction in Dallas, Texas for storage.

11. Subsequently, DCE sold the Recovered Vehicles at auction for a collective sales amount of $331,348.58 ("Disputed Proceeds").

12. In the instant action, Plaintiffs seek to recover the Disputed Proceeds from DCE and have filed a Complaint against DCE alleging that they have a "superior-priority blanket lien" in the Recovered Vehicles and any sales proceeds therefrom. (Complaint, Dkt. 1, at ¶ 49).

13. The Floor Plan (Exhibit A) and the Note (Exhibit B) provided for a certain method of repayment of the advancements to DCE. Third-Party Defendants failed to make payments required by the Personal Guaranties to DCE when due, and as a result, Third-Party

Defendants have defaulted on their obligations under the Floor Plan, the Note and their Personal Guaranties.

14.  As a result of Third-Party Defendants' breach of their Personal Guaranties, DCE has already been damaged and, in the unlikely event that Plaintiffs are successful in this action against DCE, will suffer additional damages, along with costs, interest and attorneys' fees in defense of Plaintiffs' action against DCE.

## PERSONAL GUARANTIES

15.  As shown on the Personal Guaranties (Exhibits D and E), the LeBouefs as guarantors ("Guarantors") unconditionally guaranteed to pay DCE all principal, interest, and collection expenses due DCE on every claim against or indebtedness of Bullmoose.  Guarantors agreed that in the event Bullmoose became a debtor in any bankruptcy or insolvency proceedings before all the indebtedness became due (which happened), DCE may accelerate the maturity of the indebtedness.  (Ex. D & E, ¶ 4).  Guarantors guaranteed that if the maturity of the indebtedness is accelerated by bankruptcy, the maturity shall also be deemed accelerated for the purpose of the Personal Guaranties without demand of notice to Guarantor.  (Exs. D & E, ¶ 6).  In addition, Guarantor's agreed that the payment of the indebtedness under the Personal Guaranties shall be primary and not secondary.  (Ex. D & E, ¶ 7).

## GUARANTORS' DEFAULT

16.  Under the terms of the Personal Guaranties (Exs. D and E), Third-Party Defendants, as Guarantors, are indebted to DCE for Principal Obligor's debt described in this Complaint.

## CAUSE OF ACTION I:  BREACH OF CONTRACT

17.  Paragraphs 1 through 16 are incorporated by reference as if set forth in full herein.

4

18. Third-Party Defendants entered into a contract with DCE to repay the debts and perform the obligations of Bullmoose.

19. Third-Party Defendants and DCE agreed upon the terms of repayment of all advances made by DCE to Bullmoose, and Third-Party Defendants signed the Personal Guaranties agreeing to pay that debt.

20. Although the debt Bullmoose owes to DCE had been accelerated by bankruptcy, Third-Party Defendants have not paid the debt as required by the Personal Guaranties they signed.

21. Third-Party Defendants owe DCE all of Bullmoose's outstanding debt and are liable to DCE for such amount.

22. DCE has been damaged by failure of Third-Party Defendants to repay Bullmoose's debt to DCE.

**CAUSE OF ACTION II:  QUANTUM MERUIT AND UNJUST ENRICHMENT**

23. Paragraphs 1 through 22 are incorporated by reference as if set forth in full herein.

24. In the alternative, DCE claims entitlement to payment under the theory of quantum meruit.

25. DCE advanced substantial cash to Third-Party Defendants for the purchase of certain vehicles.  Those cash advances were made for the benefit of Third-Party Defendants.

26. Third-Party Defendants, through their direction and control of Bullmoose, have accepted all of the cash advances from DCE.

27. Third-Party Defendants have used the cash advances made by DCE and have enjoyed the benefits of those cash advances.

28. Third-Party Defendants knew that DCE expected to be repaid for the cash advances it made.

29. Third-Party Defendants have failed to make repayments as they agreed to do.

30. The cash advances DCE made are complete and are of great value to Third-Party Defendants.

31. Third-Party Defendants owe and are liable to DCE for the cash advances made to Bullmoose.

32. Third-Party Defendants are being unjustly enriched by not repaying DCE.  It would be inequitable for Third-Party Defendants to enjoy the benefits of DCE's cash advances, but fail to repay DCE.

## CAUSE OF ACTION III:  PROMISSORY ESTOPPEL

33. Paragraphs 1 through 32 are incorporated by reference as if set forth in full herein.

34. In the alternative, Third-Party Defendants made a promise and/or a representation to DCE, which reasonably and substantially relied on the promise to DCE's detriment.  Third-Party Defendants promised and/or represented to DCE that it would fully compensate DCE for all cash advances made.  DCE relied on Third-Party Defendants' promise and made the advances. Said reliance was foreseeable by Third-Party Defendants and was expected since they both signed the Personal Guaranties.  DCE was injured and suffered damage resulting in injustice that can be avoided only by enforcing the promise or representation.  Third-Party Defendants are estopped from denying liability hereunder.

## CAUSE OF ACTION IV:  CONVERSION

35. Paragraphs 1 through 34 are incorporated by reference as if set forth in full herein.

36. DCE owns the money made the basis of the claims set forth herein.

37. The money made the basis of the claims set forth here is personal property belonging to DCE.

38.     Third-Party Defendants wrongfully exercised dominion and control over DCE's personal property.  Third-Party Defendants continue to wrongfully exercise dominion and control over DCE'S personal property.

39.     As a result of Third-Party Defendants' wrongful exercise of dominion and control over the personal property, DCE has suffered injury.

## CONDITIONS PRECEDENT

40.     All conditions precedent have been performed or have occurred.

## ATTORNEYS' FEES

41.     Third-Party Defendants' default has made it necessary for DCE to employ the undersigned attorneys to file suit.  Third-Party Defendants have agreed to pay reasonable attorneys' fees for collection in case of default, as well as court costs, expert costs, appraisal costs, costs of preserving or liquidating any collateral and other expenses incurred by DCE in the enforcement of the promissory note or any of the obligations of Bullmoose, as shown on the Note (Ex. B, p. 2) and the Personal Guaranties (Exs. D & E, ¶ 1).

## PRAYER

WHEREFORE PREMISES CONSIDERED, Third-Party Plaintiff DCE prays that:

a.   Third-Party Defendants be cited to appear and answer;

b.   DCE be granted judgment for monetary damages as the amount due on the debt;

c.   DCE be granted judgment for pre-judgment and post-judgment interest on the matured, unpaid debt at the highest legal or contractual rate allowed by law;

d.   DCE be granted judgment its reasonable attorney's fees, with additional contingent amounts in the event of appellate proceedings;

  e. DCE be granted judgment for all costs of court, expert costs, appraisal costs, costs of preserving or liquidating any collateral and other expenses incurred by DCE in conducting this action; and

  f. DCE be granted all further relief to which DCE may be entitled.

## DEMAND FOR JURY TRIAL

Third-Party Plaintiff DCE, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

          Respectfully submitted,

          _____
          Scott E. Stevens
          State Bar No. 00792024
          David P. Henry
          State Bar No. 24027015
          **STEVENS | HENRY, PLLC**
          P.O. Box 3427
          Longview, Texas 75606
          Tel: (903) 753-6760
          Fax: (903) 753-6761
          scott@stevenshenry.com
          david@stevenshenry.com

          Amber Florio
          State Bar No. 24056643
          **FLORIO LAW FIRM, PLLC**
          420 Throckmorton Street, Suite 200
          Fort Worth, Texas 76107
          Phone: 817-727-7187
          Fax: 866-941-5321
          amber@floriolawfim.com

          **ATTORNEYS FOR DEFENDANT**
          **DEALERS CREDIT EXPRESS, INC**

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule LR-5.1(d). As such, this document was served on all counsel who are deemed to have consented to electronic service. Pursuant to Fed. R. Civ. P. 5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the _____ day of July, 2017.

_____
Scott E. Stevens