## DEALER FLOOR PLAN AGREEMENT

STATE OF TEXAS              §
                            §
COUNTY OF BOWIE             §

This Agreement is executed the 29th day of June, 2016, between Bullmoose Motor Sports, LLC dba James Maverick Motor Sports, hereinafter called "Dealer", whose mailing address is 1624 W. Crosby Rd., Ste. 101, Carrollton, and Dealers Credit Express, Inc., a Texas corporation, hereinafter called "Lender", whose mailing address is P.O. Box 7030, Texarkana, Texas 75505.

Dealer hereby requests Lender to extend to Dealer a Floor Plan Line of Credit to be secured, among other collateral, by Dealer's inventory described in Paragraph 1. Lender, subject to the further terms of this Agreement, agrees to provide a Floor Plan Line of Credit #1867 (the "Line") to Dealer in the maximum amount of $500,000.00 to be used exclusively for the purpose of purchasing inventory (as described in Paragraph 1) for sale in the ordinary course of Dealer's business. Dealer may repay and re-borrow under the Line from time to time as provided herein. Lender agrees to the Line pursuant to the following terms and conditions:

1. **Collateral.** To secure all debt of Dealer to Lender under the Line, all interest, charges, expenses, attorney's or other fees, and any other sums incurred by Lender in connection with the execution, administration, or enforcement of Lender's rights and remedies hereunder (herein collectively referred to as the "Obligations" which shall include a Floor Plan Line of Credit Note #1867 in the maximum principal amount of $500,000.00, or so much thereof as may be advanced from time to time and unpaid), the Dealer grants to Lender a security interest in and agrees that Lender has and shall continue to have a security interest in the following property (all herein sometimes referred to as the "Collateral"):

The following property, whether now owned or existing or hereafter acquired by Dealer, and wherever located:

(a) All of the Dealer's inventory of new and used automobiles, held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in Dealer's business and all documents now or at any time or times hereafter obtained or acquired by Dealer covering or representing any of said goods; all of Dealer's accounts, notes, drafts, acceptances, instruments, chattel paper, and general intangibles, and all guaranties and suretyship agreements relating thereto and all security for the payment or performance thereof, whether now existing or hereafter arising; all proceeds, supporting obligations, monies, income, benefits, collections and products thereof and thereon and attributable and accruing thereto, including, the right of stoppage in transit; and all rights of Dealer, whether or not earned by performance, under contracts to sell or lease goods or render services and all proceeds thereof;

(b) All of the Dealer's equipment and deposit accounts; and

(c) Any future replacements and substitutions for, betterments of, and accessions and additions to any of the foregoing.

Initials: 


EXHIBIT A

1

Without limiting the foregoing general grant of a security interest, Collateral subject to the security interest granted herein shall include but not be limited to: (i) inventory listed on invoices submitted to Lender by third parties attached to drafts submitted by third parties for payment, which drafts Lender pays; and (ii) inventory now or hereafter in Dealer's possession set out on a list submitted by Dealer as Collateral for advances directly to Dealer.

Dealer agrees to maintain and keep the Collateral at Dealer's lot at 1624 W. Crosby Rd. Ste. 101, Carrollton, TX 75006. In the event Dealer elects to move the Collateral or any part thereof to any other location, Dealer shall notify Lender in writing of such move at least ten (10) days prior to the removal of such Collateral to such new location.

Dealer acknowledges, agrees and hereby consents to the Lender filing financing statements covering the Collateral and/or any other additional collateral for the Floor Plan Line of Credit Note without the signature of the Dealer.

2.   Advances. Advances made under this Line shall be made at the request of Dealer solely for the acquisition of automobiles to be acquired and held by Dealer as inventory for resale, and shall be evidenced by a draw request executed by Dealer in form and substance acceptable to Lender, accompanied by such other documentation as considered appropriate and necessary by Lender (such draw request and other such documentation including, but not limited to, any other agreement, security agreement, assignment of deposit, or any other agreement between Dealer and Lender governing, evidencing, or securing the Obligations). Automobiles for resale that are driven on a regular basis by Dealer or designee of Dealer will not be financed under this Agreement.

3.   Amount of Advances. The maximum amount allowed to be advanced for any automobile (herein sometimes referred to as the 'Automobile') purchased at auction shall be the purchase price of the said automobile including all sale fees and Lender's financing fees. The maximum amount allowed to be advanced for all other Automobile purchases shall be the NADA "Rough Trade-In" value as quoted on the date of advance plus all Lender's financing fees; however, that Lender, in its sole discretion, may, from time to time, approve an advance for an automobile in a greater amount.

4.   Conditions to Each Advance. As conditions precedent to each advance, in addition to all other requirements herein, Dealer must satisfy the following requirements and, if required by Lender, deliver to Lender evidence of such satisfaction:

> (i) There shall then exist no default under the Loan Documents, or any of them, or this Agreement nor shall there have occurred any event which with the giving of notice or the lapse of time, or both, could become a default;
>
> (ii) The representations and warranties made in the Loan Documents and in this Agreement shall be true and correct on and as of the date of each advance, and the request for an advance shall constitute the representation and warranty by Dealer that such representations and warranties are true and correct at such time; and
>
> (iii) The sum of the requested advance plus the unpaid principal balance then owing on the Floor Plan Line of Credit Note shall not exceed the Line.
>
> (iv) Lender will **NOT** advance the Line for an Automobile purchase at an auction that is not a member of the National Auto Auction Association.

Initials: [signature]

2

No advance shall constitute a waiver of any condition precedent to the obligation of Lender to make any further advance or preclude Lender from thereafter declaring the failure of Dealer to satisfy such condition precedent to be a default hereunder. All conditions precedent to the obligation of Lender to make any advance are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or to be entitled to assume that Lender will refuse to make any advance in the absence of strict compliance with such condition precedent. Any requirement of this Agreement may be waived by Lender, in whole or in part, at any time.

5. <u>Title Documents.</u> Notwithstanding anything contained herein seemingly to the contrary, Lender shall **NOT** be obligated to make any advance hereunder until the Dealer shall deliver or cause to be delivered to Lender the trust receipt, manufacturer's certificate of origin, certificate of title, or other documentary evidence of title acceptable to Lender for each automobile (herein sometimes referred to as the "Title Evidence" and which Title Evidence must reflect that Dealer is the owner of the inventory for which proceeds of the Line are being or have been advanced). Dealer agrees that upon the request of Lender, Dealer shall (at Dealer's expense) execute and deliver all such assignments, certificates, or other documents and give further assurances and do all other acts and things as Lender may reasonably request to evidence Dealer's ownership of the Collateral, to perfect Lender's interest in the Collateral or to protect, enforce, or otherwise effect Lender's rights and remedies hereunder. If Dealer is unwilling or unable to sign such other assignments, certificates, or other documents as and when reasonably requested by Lender, Dealer hereby authorizes Lender to sign as Dealer's true and lawful agent and attorney-in-fact any such assignment, certificate or other document. The Title Evidence will be properly assigned and held in Lender's safekeeping.

6. <u>Termination of Line.</u> Notwithstanding anything contained herein seemingly to the contrary, the Line may be terminated at any time by either party with or without cause upon thirty (30) days' notice in writing to the other. Upon the occurrence of a default hereunder, Lender shall have the right to terminate the Line and to mature all debt outstanding hereunder, including principal and interest, without notice to any person or lapse of time. Termination of the Line hereunder shall not affect the obligations of Dealer with respect to any debt incurred prior to termination. All obligations shall continue in full force and effect until all debt under the Line is paid in full.

7. <u>Fees and Charges:</u>

(a) On the original date of each Line advance and every SIXTY (60) days thereafter, Dealer agrees to pay Lender a fee in accordance with the fee schedule attached hereto as **Exhibit "A"**. Dealer acknowledges that Lender may modify Exhibit "A" at Lender's sole discretion and upon receipt from Lender of written notice that Exhibit "A" has been modified, Dealer agrees to pay Lender the modified fee for each Line advance after the date of said notice. Dealer agrees that Lender, at Lender's sole discretion, can add the Line advance fee to the Line balance or require Dealer to pay the Line advance fee in full as it becomes due.

(b) A reserve charge of $200.00, hereinafter called "Reserve Charge", will be added to each advance to be held on account with Lender until the account balance totals $100,000.00, hereinafter called "Reserve Requirement", at which time Dealer may elect to continue or discontinue the Reserve Charge, so long as the reserve account balance remains equal to or greater than the Reserve Requirement. At any time

Initials: 

3

Dealer's reserve account balance is less than the Reserve Requirement, Dealer will be required to add the Reserve Charge to any and all advances. Furthermore, at any time Dealer's reserve account balance is greater than the Reserve Requirement, Dealer may request in writing to withdraw any amount above and beyond the Reserve Requirement. Upon receipt of Dealers written notice, Lender agrees to reimburse Dealer said withdrawal amount within 5 business days as long as it does not cause Dealer's reserve account balance to be less than Dealer's Reserve Requirement.

8. Assignment of Insurance. Dealer shall, at Dealer's sole cost and expense, insure the Collateral in accordance with Lender's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage. Policies must be written in favor of Dealer, be endorsed to name Lender as an additional insured and loss payee, or as otherwise directed in writing by Lender. Dealer must provide the Lender with copies of the policies and certificates to Secured Party, which provides that Lender will receive at least ten days notice before cancellation.

9. Payment of Floor Plan Line of Credit Note. Dealer shall reduce the principal balance then owing on each advance by not less than TEN (10%) percent on the SIXTH (60th) day from said advance and then further reduce the principal balance then owing on said advance by not less than TEN (10%) percent of the amount initially advanced to acquire the inventory item or items every SIXTH (60th) day thereafter.

10. Sale of Collateral. For the purposes of this paragraph, it is understood that at such time as Dealer shall acquire an automobile financed under this Agreement, Dealer will execute a request for an advance securing as to payment the amount of such advance, a security interest in such automobile (herein the "Subject Automobile"). Unless Dealer is in default under the terms of this Agreement or the Loan Documents, upon sale of the Subject Automobile, Dealer, within two (2) calendar days after the date of sale, will pay to Lender in cash that amount sufficient to pay in full the unpaid amount advanced to or for the benefit of Dealer for the purchase of such Subject Automobile. If Dealer is in default at the time of sale, all proceeds of sale will be applied to the Floor Plan Line of Credit Note. In no event shall Lender be required to release its security interest in the Subject Automobile until payment in full of the unpaid amount advanced to or for the benefit of Dealer for the purchase of such Subject Automobile.

11. Representations and Warranties. In order to induce Lender to accept this Agreement, Dealer represents and warrants to Lender (which representations and warranties will survive the creation and payment of the Line) that:

   (a)  No Encumbrances. All Collateral (including Collateral acquired after the date hereof which is included within the security interest granted herein) is or will be owned by Dealer free and clear of any security interest or encumbrance except those granted pursuant hereto. There is no financing statement or other document now on file in any public office covering any part of the Collateral, except those in favor of Lender, and so long as any amount remains unpaid on the Obligations or any obligation arising pursuant to this Agreement to the Lender, Dealer will not execute and will not file in any public office any such financing statement or other document other than those which may be filed by Lender in connection with the security interest granted hereunder.

   (b)  Other Credit. Dealer does not have financing of automobile inventory with any

Initials: [signature]

4

other lender or purchase inventory (as described in Paragraph I hereof) from any seller on credit, except as previously disclosed by Dealer to Lender in writing. Dealer shall notify Lender immediately in the event it buys inventory of automobiles or Dealer enters into any such inventory financing arrangement with any other source, giving the name and address of the lender or seller and details of the purchase or loan.

(c)  Tax Returns.  All tax returns required to be filed by the Dealer in any jurisdiction have been filed; all taxes, assessments, fees, and other governmental charges upon the Dealer or upon any of Dealers' properties or assets have been paid or adequate reserve has been provided for payment thereof.

(d)  Conduct of Business.  The Dealer will conduct Dealer's business in the manner customary for companies engaged in similar businesses and operating similar properties. The Dealer will comply with the laws, statutes, regulations, and ordinances of the United States of America, and of any state or political subdivision thereof, which relate to the Dealer's business. Dealer will continue to maintain its corporate existence and will continue to be duly qualified to transact business in the State of Texas.

(e)  Information Correct.  All information furnished to Lender concerning the Collateral and proceeds thereof, or otherwise, for the purpose of obtaining credit or an extension of credit, is or will be at the time the same is furnished, accurate and correct in all material respects.

(f)  No Default at Time of Advance.  At the time Dealer may request of Lender an advance under this Agreement, there shall exist no default under or on the Floor Plan Line of Credit Note, this Agreement or any other Loan Document in connection with the loan, nor shall there have occurred any event which with the giving of notice or the lapse of time, or both, could become a default; the representations and warranties made in this Agreement shall be true and correct, especially including the representation that the proceeds of any such advance shall be used exclusively for the purpose of purchasing Collateral for sale in the ordinary course of Dealer's business and the request for an advance shall constitute the representation and warranty by Dealer that such representations and warranties are true and correct at such time; and the sum of the requested advance plus the unpaid principal balance then owing on the Notes shall not exceed the Line.

(g)  Legal Owner of Collateral.  Dealer is or will be upon payment of the advance the legal owner of the Collateral which shall be subject to no other liens or encumbrances. Dealer has the full right, power and authority to grant a first lien security interest in the Collateral. No dispute, counterclaim, or defense exists with respect to any part of the Collateral. Dealer shall defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein adverse to Lender. This Agreement constitutes a legal, valid, and binding obligation of Dealer enforceable against Dealer in accordance with its terms.

(h)  Documents, Etc. to be Correct.  No representation or warranty made by Dealer

Initials: 

5

under this Agreement and no document, instrument, or certificate furnished, to be furnished or caused to be furnished by Dealer to Lender in anticipation of or pursuant to this Agreement, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements contained therein not misleading.

    (i)    <u>Automobiles Off-Site at Time of Inspection.</u> If an Automobile is not on site at the time of inspection or readily available for inspection at an alternate site (i.e. body shop, garage, detailer), Dealer agrees to have the Automobile on site within three (3) business days and to notify Lender. If an Automobile is not on site at the time of inspection and is not returned to Dealer's place of business within three (3) business days thereafter, Dealer shall pay the amount that was financed on said automobile. If this condition is not met, the Line will be suspended. Failure by Dealer to have any automobile on-site for inspection within the time period herein set forth shall constitute an Event of Default as defined below.

12.    <u>Default.</u> The term "Event of Default", as used herein, shall include the occurrence of any one or more of the following events:

    (a)    The failure of Dealer to timely pay the Floor Plan Line of Credit Note when due.

    (b)    The Dealer shall fail to reduce the principal balance then owing on such Floor Plan Line of Credit in accordance with the repayment terms described in Paragraph 9 (Payment of Floor Plan Line of Credit Note) of this Dealer Floor Plan Agreement.

    (c)    If Dealer fails to perform any covenant or agreement herein or contained in any of the Loan Documents.

    (d)    Any representation or warranty made by the Dealer herein or in any of the Loan Documents or made in any statement or certificate furnished or to be furnished by the Dealer to the Lender pursuant to this Agreement, the Obligations or other document in connection with the Line proves incorrect in any material respect.

    (e)    If the Dealer or Guarantor becomes insolvent; if a custodian or receiver is appointed for any of the property of Dealer or Guarantor if a case Is commenced by or against the Dealer or Guarantor, under Title 11 of the United States Code, or under any law relating to the insolvency, liquidation, or reorganization of debtors and such case is not dismissed within sixty (60) days from the date of filing.

    (f)    Substantial loss, theft, damage, destruction, or encumbrance of any of the Collateral.

13.    <u>Remedies.</u> If an Event of Default shall occur, Lender may exercise any one or more of the remedies herein provided or as may be provided by law, including:

Initials: _____

(a) <u>Acceleration.</u> Lender may declare all or part of the indebtedness secured hereby, including the Floor Plan Line of Credit Note, immediately due and payable and enforce payment of the same by either Dealer or Guarantor, if any, (provided however, that any partial payments by either Dealer or Guarantor, if any, pursuant to the Obligations shall not be deemed to be payment in full of such indebtedness, or an accord and satisfaction of such indebtedness, or a waiver by Lender of any of rights or remedies hereunder). Lender shall be under no duty whatsoever to make or give any presentment, notice of dishonor, protest, demand for performance, notice of non-performance, or other notice or demand in connection with any Collateral, or in connection with any lien given to secure the Floor Plan Line of Credit Note, or the Obligations, or to take any steps necessary to preserve any rights against Guarantor, if any, or other person or entity. Dealer waives any right of marshaling in respect of any or all Collateral, and waives any right to require Lender to proceed against Guarantor, if any, or other person or entity, exhaust any Collateral or enforce any other remedy which Lender now has or may hereafter have against any other person or entity. Dealer hereby agrees that if Lender agrees to a waiver of any provision hereunder, or an exchange of or release of the Collateral or the Deed of Trust lien, or the addition to or release of Guarantor or other person or entity, any such action shall not constitute a wavier of any of Lender's other rights or of Dealer's obligations hereunder. Dealer hereby waives any demand, notice of default, notice of acceleration of the maturity of the Obligations, notice of intention to accelerate the maturity of the Obligations, presentment, protest, and notice of dishonor as to any action taken by Lender in connection with this Agreement, the Obligations, or other document.

(b) <u>Code Remedies.</u> Lender may exercise any rights or remedies granted hereunder or under any Loan Document or under the Uniform Commercial Code as presently in effect in the State of Texas (the "Code") or as may otherwise be available to Lender under any applicable laws or in equity, and the resort to any remedy provided hereunder or provided by the Code or any other law of Texas shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies. The Dealer agrees to make the Collateral available to Lender at a place to be designated by Lender which is reasonably convenient to both parties. Expenses of retaking, holding, preparing for sale or lease, selling, leasing, and the like, shall include Lender's reasonable attorney's fees and legal expenses incurred in connection therewith.

(c) <u>Books and Records.</u> Lender may take possession of all books and records of Dealer pertaining to the Collateral. Lender shall have the authority to enter upon any real property or improvements thereon in order to obtain any such books or records and remove the same therefrom without liability.

(d) <u>Application of Proceeds.</u> Lender may apply proceeds of the disposition of Collateral to the Obligations in any manner elected by Lender and as permitted by the Code or otherwise permitted by law or in equity. Such application may include, without limitation, the reasonable attorney's fees and legal expenses incurred by Lender.

(e) <u>Appointment of Agent.</u> Lender may appoint any party as agent to perform any

Initials: _____

7

act or acts necessary or incident to any sale or transfer by Lender of the Collateral.

(f) <u>Written Record of Fact.</u> Lender may make a written record as to the nonpayment of the Obligations, the occurrence of any event of default, acceleration of the indebtedness evidenced by the Obligations, or as to any other act or thing having been done by Lender in any notification, request, assignment, or other instrument executed by Lender in respect of any foreclosure upon the Collateral, and such written record of facts by Lender, shall be taken as prima facia evidence of the truth of the facts so stated and recited.

(g) <u>Disposition of Collateral.</u> Lender may, as may be applicable, sell or otherwise dispose of any or all of the Collateral in any commercially reasonable manner as Lender may elect, in a public or private transaction, at any location as deemed reasonable by Lender either for cash or credit or for future delivery at such price as Lender may deem fair, and (unless prohibited by the Code) Lender may be the purchaser of any or all Collateral so sold. Any such sale or transfer by Lender either to itself or to any other person shall be absolutely free from any claim or right by Dealer, including any equity or right of redemption, stay, or appraisal which Dealer has or may have under any rule of law, regulation, or statute now existing or hereafter adopted. Lender may, at its discretion, provide for a public sale, and any such public sale shall be held at such time or times within ordinary business hours and at such place or places as Lender may fix in the notice of such sale. Lender shall not be obligated to make any sale pursuant to any such notice. Lender may, without notice or publication, adjourn any public or private sale by announcement at any time and place fixed for such sale, and such sale may be made at any time or place to which the same may be so adjourned. If only part of the Collateral is sold or transferred such that the Obligations remain outstanding (in whole or in part), Lender's rights and remedies hereunder shall not be exhausted, waived, or modified, and Lender is specifically empowered to make one or more successive sales or transfers until all the Collateral shall be sold or transferred and all the Obligations are paid. In the event the proceeds of any such sale or other lawful disposition by Lender of the Collateral are insufficient to pay the Obligations in full, then the Dealer agrees to pay any deficiency.

(h) <u>Reasonable Notice.</u> If any applicable provision of any law requires Lender to give reasonable notice of any sale or disposition of any of the Collateral or other action, Dealer hereby agrees that ten (10) days' prior written notice shall constitute reasonable notice thereof. Such notice, in case of public sale, shall state the time and place fixed for such sale, and in case of private sale, the time after which any such sale is to be made.

(i) <u>Right to Offset Reserve Account.</u> Lender reserves a right of offset in Dealer's Reserve Account with Lender. Dealer authorizes Lender to charge or offset all sums owing on Dealer's Line against Dealer's Reserve Account.

(j) <u>Default Interest Rate.</u> In the event Dealer is in default, Lender reserves the right to charge an interest rate on all outstanding advances not to exceed the the

Initials: _____

8

maximum rate allowed by applicable law beginning from the original date of each advance.

14. **ARBITRATION.** ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY RELATED AGREEMENTS OR INSTRUMENTS, INCLUDING CLAIMS BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (OR IF NOT APPLICABLE, THE TEXAS GENERAL ARBITRATION ACT) INCLUDING WHETHER SUCH DISPUTE OR CLAIM IS ARBITRABLE. THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED UNDER THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME A DEMAND FOR ARBITRATION WAS MADE AND THE "SPECIAL RULES" SET FORTH BELOW. IN THE EVENT OF ANY INCONSISTENCY, THE SPECIAL RULES SHALL CONTROL. A DECISION OF THE ARBITRATOR MADE UNDER THE AFOREMENTIONED RULES SHALL BE EXCLUSIVE, FINAL AND BINDING ON BOTH PARTIES AND THEIR HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, AND ASSIGNS. JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. ANY PARTY TO THIS AGREEMENT MAY BRING AN ACTION, INCLUDING A SUMMARY OR EXPEDITED PROCEEDING, TO COMPEL ARBITRATION OF ANY CONTROVERSY OR CLAIM TO WHICH THIS AGREEMENT APPLIES IN ANY COURT HAVING JURISDICTION OVER SUCH ACTION. THE EXPENSES OF THE ARBITRATION SHALL BE BORNE EVENLY BY THE PARTIES. THE PREVAILING PARTY SHALL BE AWARDED REASONABLE ATTORNEY'S FEES AS MAY BE DETERMINED BY THE ARBITRATORS.

A. **SPECIAL RULES.** THE ARBITRATION SHALL BE CONDUCTED IN BOWIE COUNTY, TEXAS. ALL ARBITRATION HEARINGS WLL BE COMMENCED WITHIN NINETY (90) DAYS OF THE DEMAND FOR ARBITRATION; FURTHER, THE ARBITRATOR SHALL ONLY, UPON A SHOWING OF CAUSE, BE PERMITTED TO EXTEND THE COMMENCEMENT OF SUCH HEARING FOR AN ADDITIONAL SIXTY (60) DAYS.

B. **RESERVATION OF RIGHTS.** NOTHING IN THIS AGREEMENT SHALL BE DEEMED TO (i) LIMIT THE APPLICABILITY OF ANY OTHERWISE APPLICABLE STATUTES OF LIMITATION OR REPOSE AND ANY WAIVERS CONTAINED IN THIS AGREEMENT; OR (ii) LIMIT THE RIGHT OF ANY PARTY HERETO (A) TO EXERCISE SELF-HELP REMEDIES SUCH AS (BUT NOT LIMITED TO) SETOFF, OR (B) TO FORECLOSE AGAINST ANY REAL OR PERSONAL PROPERTY COLLATERAL, OR (C) TO OBTAIN FROM A COURT PROVISIONAL OR ANCILLARY REMEDIES SUCH AS (BUT NOT LIMITED TO) INJUNCTIVE RELIEF OR THE APPOINTMENT OF A RECEIVER. ANY PARTY MAY EXERCISE SUCH SELF-HELP RIGHTS, FORECLOSE UPON SUCH PROPERTY, OR OBTAIN SUCH PROVISIONAL OR ANCILLARY REMEDIES, BEFORE, DURING, OR AFTER THE PENDENCY OF ANY ARBITRATION PROCEEDING BROUGHT PURSUANT TO

Initials: 

THIS AGREEMENT. AT LENDER'S OPTION, FORECLOSURE UNDER A SECURITY AGREEMENT MAY BE ACCOMPLISHED BY EITHER EXERCISE OF POWER OF SALE PROVIDED BY THE CODE OR AS MAY OTHERWISE BE AVAILABLE TO LENDER UNDER APPLICABLE LAW OR BY JUDICIAL FORECLOSURE. NEITHER THE EXERCISE OF SELF-HELP REMEDIES NOR THE INSTITUTION OR MAINTENANCE OF AN ACTION FOR FORECLOSURE OR PROVISIONAL OR ANCILLARY REMEDIES SHALL CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY, INCLUDING THE CLAIMANT IN SUCH ACTION, TO ARBITRATE THE MERITS OF THE CONTROVERSY OR CLAIM OCCASIONING RESORT TO SUCH REMEDIES.

THE PROVISIONS OF THIS PARAGRAPH 14 SHALL SURVIVE ANY TERMINATION, AMENDMENT, OR EXPIRATION OF THIS AGREEMENT UNLESS THE PARTIES OTHERWISE EXPRESSLY AGREE IN WRITING.

15. Miscellaneous.

   (a) Notice. Any notice required or permitted to be given under or in connection with this Agreement shall be in writing and shall be mailed by registered or certified mail, return receipt requested, or personally delivered to the receiving party. All such communications shall be mailed, sent, or delivered at the address respectively indicated at the beginning of this Agreement or at such other address as either party may have furnished the other party in writing. Any communication so addressed and mailed shall be deemed to be given when so mailed, and any communication so delivered in person shall be deemed to be given when receipted for by Dealer or Lender, as the case may be. Notwithstanding anything to the contrary in this Agreement, if any applicable provision of any law requires Lender to give reasonable notice of any action, Dealer hereby agrees that ten (10) days' prior written notice shall constitute reasonable notice thereof.

   (b) Photocopy as Financing Statement. A photocopy or other reproduction of this Agreement or any financing statement covering the Collateral shall be sufficient as a financing statement, and the same may be filed with any appropriate filing authority for the purpose of perfecting Lender's interest in the Collateral.

   (c) Payment of Obligations. Upon the complete payment of the Obligations and the compliance by Dealer with all covenants and agreements hereof, Lender, at the written request and expense of Dealer, will release, reassign, and transfer the Collateral to Dealer and declare this instrument to be of no further force or effect. Neither this acceptance of this Agreement by Lender nor any action taken pursuant hereto shall be construed as relieving any party liable for the Obligations from any liability or deficiency thereon.

   (d) Other Security. The execution and delivery of this Agreement shall not in any manner affect any other security for the Obligations, nor shall any security

Initials:

10

taken hereafter as security for the Obligations impair or affect this Agreement.

(e) <u>Compliance.</u> It is the intention of the parties hereto to conform strictly to usury laws applicable to Lender. Accordingly, if the transactions contemplated hereby would be usurious under applicable state or federal law, then, in that event, notwithstanding anything to the contrary in this Agreement or in any other agreement entered into in connection with or as security for the Obligations, it is agreed as follows: (a) the aggregate of all consideration which constitutes interest under law applicable to Lender that is contracted for, taken, reserved, charged or received under the Obligations, this Agreement or under any of such other agreements or otherwise in connection with the Obligations shall under no circumstances exceed the maximum amount allowed by such applicable law, and any excess shall be automatically and if theretofore paid shall be credited by Lender on the principal amount of the Obligations (or, to the extent that the principal amount of the Obligations shall have been or would thereby be paid in full, refunded by Lender to Dealer; and (b) in the event that the maturity of the Obligations is accelerated by reason of an election of Lender resulting from any Event of Default under this Agreement or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest under law applicable to Lender may never include more than the maximum amount allowed by such applicable law, and excess interest, if any, provided for in this Agreement or otherwise shall be canceled automatically as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited by Lender on the principal amount of the Obligations (or, to the extent that the principal amount of the Obligations shall have been or would thereby be paid in full, refunded by Lender to Dealer). To the extent that Article 5069-1.04 of the Texas Revised Civil Statutes is relevant to Lender for the purpose of determining the maximum lawful rate of non-usurious interest, Lender hereby elects to determine the applicable rate ceiling under such Article by the indicated (weekly) rate ceiling from time to time in effect, subject to Lender's right subsequently to change such method in accordance with applicable law.

(f) <u>Situs.</u> This Agreement shall be deemed to have been made and to be performed in Texarkana, Bowie County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.

(g) <u>Partial Invalidity.</u> If any provision of this Agreement is or becomes unenforceable for any reason, Dealer and Lender shall promptly meet and negotiate a substitute provision thereof, but all of the remaining provisions of this Agreement shall remain in full force and effect.

(h) <u>Assignment.</u> Without the prior written consent of Lender, Dealer may <u>not</u> assign any rights, duties or obligations hereunder. The covenants and agreements herein contained by or on behalf of Dealer shall bind Dealer, and Dealer's heirs, legal representatives, successors or assigns and shall inure to the benefit of Lender, its successors and assigns.

(i) <u>Continuing Security Agreement.</u> This Agreement shall constitute a continuing

Initials: _____

11

security agreement and all representations and warranties, covenants, and agreements shall, as applicable, apply to all future as well as existing transactions. Provisions of this Agreement, unless by their terms exclusive, shall be in addition to other agreements between the parties.

(j) **Headings.** Any paragraph or section titles contained in this Agreement are for convenience only and are without substantive meaning and are not a part of this Agreement.

(k) **Counterparts.** This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signatures of all parties hereto be contained on any one counterpart hereof. Each counterpart shall be deemed an original, but all such counterparts taken together shall constitute one and the same instrument. This Agreement may be amended only by an instrument in writing executed jointly by Dealer and Lender and may be supplemented only by documents delivered or to be delivered in accordance with the express terms hereof.

(l) **Waiver.** Lender may consent to or waive any action or any failure to act by Dealer with respect to any obligation of Dealer hereunder. Any consent or waiver on the part of Lender shall be binding upon Lender only when in writing and signed by an officer of Lender, and no failure to take action with respect to any default shall constitute a waiver thereof. No waiver of any default shall be a waiver of any other or future default of that or any other nature.

(m) **Review of Line.** Lender shall annually review the credit for performance, pricing, amount of Line, and Dealer's financial condition.

(n) **Other Documentation.** The terms and conditions outlined within this Agreement are in addition to any terms and conditions contained within any Obligations or other such documentation as may be required by Lender.

(o) **Business Purpose.** Dealer's execution of this Agreement is intended to reflect its understanding that proceeds of Notes executed under this Agreement are to be utilized by Dealer for business purposes and not personal purposes or use.

(p) **Financial Information.** Dealer shall furnish Lender with a balance sheet, a profit and loss statement and cash flow statement on the dealership within thirty (30) days after Dealer's fiscal year end. Additionally, Dealer will furnish a personal financial statement and cash flow statement on any and all persons signing the floor plan note and/or guaranteeing said note on an annual basis. Within thirty (30) days after the returns have been filed, Dealer will provide annual tax returns for the business and any individuals for which financial information is required.

(q) **Incorporation into Other Documents.** The Dealer and Lender have entered into a transaction generally described as a Floor Plan Agreement. In conjunction with this transaction, the parties have executed (or will execute) a Floor Plan Line of Credit Note, acknowledgment of advance or advances, assignments, security agreements, or other documents (sometimes referred to in this

Initials: _____

12

agreement as the "Loan Documents" or in this paragraph as the "Additional Line Documents"). It is the intention of the parties that this acknowledgment be incorporated by reference into each of the documents so executed for this transaction. The parties warrant and represent that the entire agreement made between the parties is contained within the executed documents, as amended and supplemented hereby and herein, and that no agreements or promises exist between the parties that are not reflected in the language of the various documents executed in conjunction with this transaction. In the event of any inconsistency between the Additional Line Documents and this Agreement, this Agreement shall control.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OR PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**DEALER:**

Bullmoose Motor Sports, LLC, a Texas Limited Company, dba James Maverick Motor Sports

By: _____
Name: Carroll LeBouef
Its: Member

By: _____
Name: Challis LeBouef
Its: Member

**LENDER:**

Dealers Credit Express, Inc., a Texas Corporation

By: _____
Name: Lucas Ponder
Its: General Manager

Initials: 

13