## <u>SECURITY AGREEMENT</u>

| | |
|---|---|
| **Date:** | June 29, 2016 |
| **Debtor:** | Bullmoose Motor Sports, LLC dba James Maverick Motor Sports |
| **Debtor's Mailing Address:** | 1624 W. Crosby Rd. Ste. 101<br>Carrollton, TX 75006 |
| **Secured Party:** | Dealers Credit Express, Inc. |
| **Secured Party's Mailing Address:** | P.O. Box 7030<br>Texarkana, TX  75505 |
| **Classification of Collateral:** | Equipment; Inventory; Accounts; Instruments; Chattel Paper; Deposit Accounts; and General Intangibles |

**Collateral (including all accessions):**

The following property, whether now owned or existing or hereafter acquired by Debtor, and wherever located:

    (a) All of the Debtor's inventory of new and used automobiles, held for sale or lease or furnished or to be furnished under contracts of service or used or consumed in Debtor's business and all documents now or at any time or times hereafter obtained or acquired by Debtor covering or representing any of said goods; all of Debtor's accounts, notes, drafts, acceptances, instruments, chattel paper, and general intangibles, and all guaranties and suretyship agreements relating thereto and all security for the payment or performance thereof, whether now existing or hereafter arising; all proceeds, supporting obligations, monies, income, benefits, collections and products thereof and thereon and attributable and accruing thereto, including, the right of stoppage in transit; and all rights of Debtor, whether or not earned by performance, under contracts to sell or lease goods or render services and all proceeds thereof;

    (b) All of the Debtor's equipment and deposit accounts; and

    (c) Any future replacements and substitutions for, betterments of, and accessions and additions to any of the foregoing.

**Obligations:**

The Obligations include a) the following described promissory note, b) all obligations, responsibilities and duties of Debtor under the terms of this security agreement, c) all amounts spent by Secured Party for the maintenance, preservation or collection of the Collateral, d) the other obligations described below, e) any interest accruing on any of the Obligations, and f) all renewals, extensions, amendments and\or modifications of any of the foregoing or following:

Initials 

1



**EXHIBIT**

C

a) Note:

| | |
|---|---|
| Number: | 1867 |
| Date: | June 29, 2016 |
| Amount: | FIVE HUNDRED THOUSAND and 00/100 Dollars ($500,000.00) |
| Obligor: | Bullmoose Motor Sports, LLC dba James Maverick Motor Sports |
| Payee: | Dealers Credit Express, Inc. |

b) Other Obligations:

The Collateral shall further secure the payment to Secured Party of any and all other or additional debts, obligations and liabilities of every kind and character of any Debtor named herein or Obligor named in the Note, whether due or to become due, now or hereafter existing in favor of Secured Party, regardless of whether such debts, obligations and liabilities be direct or indirect, primary, secondary, joint, several, joint and several, fixed or contingent, and regardless of whether such debts, obligations and liabilities were originally owing to Secured Party or acquired by Secured Party or its assignees of any third party.

**Debtor's Representations Concerning Location of Collateral**:

The Collateral comprised of inventory and equipment is located solely at 1624 W. Crosby Rd. Ste. 101, Carrollton, TX 75006.

Debtors' records concerning the Collateral are located at 1624 W. Crosby Rd. Ste.101, Carrollton, TX 75006.

Subject to the terms of this agreement, Debtor grants to Secured Party a security interest in the Collateral and all its products and proceeds to secure the prompt payment and performance of Debtor's Obligations and all renewals, modifications, amendments, rearrangements and extensions of any portion of the Obligations.

**Debtor's Warranties**

1.   Financing Statement.  Except for that in favor of Secured Party, no financing statement or security agreement, verbal or written, covers the Collateral or is filed in any public office.

2.   Ownership.  Debtor owns the Collateral and has the authority to grant this security interest. Ownership is free from any set-off, claim, restriction, lien, security interest, or encumbrance except this security interest and others in favor of Secured Party and liens for taxes not yet due.

3.   Accessions.  None of the Collateral is an accession to any good, is commingled with other goods, or will become an accession, or part of a product or mass with other goods except as expressly provided in this agreement.

Initials:    2

4.    <u>Financial Statements</u>. All information about Debtor's financial condition provided to Secured Party was accurate when submitted, as will be any information subsequently provided.

5.    <u>Debtor's Name</u>. Debtor's exact legal name is set forth at the beginning of this document.

6.    <u>Location</u>. Debtor's chief executive office is located at the address identified above as "Debtor's Address" and Debtor's state of organization, registration or incorporation is the State of Texas.

7.    <u>Validity and Enforceability</u>. Each account, chattel paper and instrument in the Collateral is and will be the valid, legally enforceable obligation of a third-party account debtor or obligor.

8.    <u>Business Purpose</u>. The Obligations were not incurred primarily for personal, family, or household purposes. The Collateral was not acquired and will not be held primarily for personal, family, or household purposes.

**Debtor's Covenants**

1.    <u>Protection of Collateral</u>. Debtor will defend the Collateral against all claims and demands adverse to Secured Party's interest in it and will keep it free from all liens except those for taxes not yet due and from all security interests except those in favor of Secured Party.

2.    <u>Insurance</u>. Debtor will insure the Collateral in accordance with Secured Party's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage. Policies will be written in favor of Debtor and Secured Party according to their respective interests or according to Secured Party's other requirements. All policies will provide that Secured Party will receive at least ten days' notice before cancellation, and the policies or certificates evidencing them will be provided to Secured Party when issued. Debtor assumes all risk of loss and damage to the Collateral to the extent of any deficiency in insurance coverage. Debtor irrevocably appoints Secured Party as attorney-in-fact to collect any return, unearned premiums, and proceeds of any insurance on the Collateral and to endorse any draft or check deriving from the policies and made payable to Debtor.

3.    <u>Secured Party's Costs</u>. Debtor will pay all expenses incurred by Secured Party in obtaining, preserving, perfecting, defending, and enforcing this security interest in the Collateral and in collecting or enforcing the Obligations. Expenses for which Debtor is liable include, but are not limited to, taxes, assessments, reasonable attorney's fees, and other legal expenses. These expenses will bear interest from the dates of payments at the highest rate stated in the Note, and Debtor will pay Secured Party this interest on demand at a time and place reasonably specified by Secured Party. These expenses and interest will be part of the Obligations secured by the Collateral and will be recoverable as such in all respects.

4.    <u>Additional Documents</u>. Debtor will sign any papers that Secured Party considers necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law. Debtor further agrees to execute and deliver all further documents or instruments that Secured Party may reasonably request in order to enable Secured Party to exercise and enforce its rights and remedies hereunder with respect to any of the Collateral.

5.    <u>Notice of Changes</u>. Debtor will immediately notify Secured Party of any material change in the Collateral; any change in Debtor's name, address, or location; any change in any matter warranted or represented in this agreement; any change that may affect this security interest; any change in the state in which Debtor (if other than an individual) is organized or incorporated; and any event of default that may occur hereunder or under any of the Obligations.

Initials: _____    3

6.     Use and Removal of Collateral.  Debtor will use the Collateral primarily according to the stated classification unless Secured Party consents otherwise in writing.  Debtor will not permit the Collateral to be become an accession to any goods, to be commingled with other goods, or to become a fixture, accession, or part of a product or mass with other goods except as expressly provided in this agreement.  Debtor will not permit any portion of the Collateral to be commingled with any other property without obtaining Secured Party's prior written consent.

7.     Sale.  Debtor will not sell, transfer, or encumber any of the Collateral, except in the ordinary course of business, without the prior written consent of Secured Party.  In any event, Debtor will immediately deliver all proceeds received from the sale of any Collateral to Secured Party, and agrees to keep all such proceeds segregated and separate from Debtor's other funds or property. All proceeds of any Collateral are held in trust by Debtor for the benefit of Secured Party.

8.     Reports and Inspections.  Debtor will furnish Secured Party from time to time statements and schedules describing the Collateral and such other reports in connection with the Collateral as Secured Party may reasonably request, all in reasonable detail.  Secured Party may inspect, or cause its agents, representatives or appraisers to inspect, all or any portion of the Collateral at any time during Debtor's regular business hours and as often as Secured Party in the exercise of its sole judgment shall deem necessary.  Any such inspection may be with or without notice to Debtor.

9.     Authorization to File Financing Statements.  Debtor authorizes Secured Party to file a financing statement and any addendums or amendments thereto (the "Financing Statement") describing the Collateral.  This authorization is not revocable and shall continue for so long as any of the Obligations remain unpaid, or for so long as Secured Party is committed to advance funds to Obligor or Debtor, whichever is later.

10.    No Conversion, Merger or Name Change.  If Debtor is a legal entity, Debtor agrees that it will not merge with another entity, convert to another organizational entity or change the current name of the Business without the prior written consent of Secured Party.

11.    Identity of and Notice to Obligors.  Debtor agrees to provide to Secured Party (on or before five (5) days after Secured Party's request) a list by name and address of all persons obligated to pay all or any account, chattel paper or instrument in the Collateral.  Debtor shall account to Secured Party for all proceeds received from any collections on accounts, chattel paper or instruments in the Collateral.  On request, Debtor agrees to sign and/or cause to be delivered to any Obligor on accounts, chattel paper and instruments in the Collateral any and all notices requested by Secured Party.

12.    Preserving Liability of Obligors.  Debtor will preserve the liability of all Obligors on the Collateral and preserve the perfection and priority of all security for any of the Collateral.  On Secured Party's demand Debtor will deposit all payments received as proceeds of Collateral in a special bank account designated by Secured Party, who alone will have power of withdrawal.  Debtor will deposit the payments on receipt, in the form received, and with any necessary endorsements as security for the Obligations.  Debtor will maintain accurate books and records covering the Collateral and showing the assignment of the Collateral to Secured Party.

13.    Absence of Secured Party Obligations.  Secured Party has no obligation to collect any of the Collateral and will not be liable for the failure to collect any obligation, or for any act or omission on the part of Secured Party or Secured Party's officers, agents, or employees. Debtor understands and acknowledges that collection of the Collateral is Debtor's responsibility and that the risk of any loss on the Collateral is Debtor's

Initials:                     4

and any guarantor's risk and that Secured Party bears, and shall never bear, any risk related to the collection of the Collateral.

14.   Debtor's Acts Concerning the Collateral.   Debtor agrees to inform Secured Party, in writing and in advance, of any and all actions to be taken by Debtor or on Debtor's behalf to enforce the collection of any of the Collateral.

**Rights and Remedies of Secured Party**

1.   Generally.   Secured Party may exercise one or more of the following rights and remedies either before or after default:

        a.   take control of any proceeds of the Collateral;

        b.   release any Collateral in Secured Party's possession to any Debtor, temporarily or otherwise; and\or

        c.   take control of any funds generated by the Collateral, such as refunds from and proceeds of insurance, and reduce any part of the Obligations accordingly or permit Debtor to use such funds to repair or replace damaged or destroyed Collateral covered by insurance.

2.   Insurance.   If Debtor fails to maintain insurance as required by this agreement or otherwise by Secured Party, then Secured Party may purchase single-interest insurance coverage that will protect only Secured Party.  If Secured Party purchases this insurance, its premiums will become part of the Obligations secured by the Collateral.

3.   Payment of Taxes.   Secured Party may pay any taxes or other assessments against the Collateral or against any of the property securing the payment of any of the Collateral in order to protect and preserve the security interest conveyed herein, without regard to whether or not such tax or assessment would have a priority greater than or less than that of Secured Party's security interest.

4.   Continuing Security Interest.   This agreement creates a continuing security interest in the Collateral and shall a) remain in full force and effect until payment in full of the Obligations, b) be binding upon Debtor and its successors and assigns, and c) inure to the benefit of and be enforceable by Secured Party and its successors, transferees and assigns.  Debtor waives any right which it may have under the Texas Business and Commerce Code to demand the filing of termination statements with respect to the Collateral, and agrees that Secured Party shall not be required to send such termination statements to Debtor, or to file them with any filing office, unless and until this Agreement shall have been terminated in accordance with its terms and all Obligations paid in full in immediately available funds.

**Events of Default**

1.   Each of the following conditions is an event of default:

        a.   if Debtor defaults in timely payment or performance of any obligation, covenant, or liability in any written agreement between Debtor and Secured Party or in any other Obligation secured by this agreement;



Initials:

5

b.     if any warranty, covenant, or representation made to Secured Party by or on behalf of Debtor proves to have been false in any material respect when made;

c.     if a receiver is appointed for Debtor or any of the Collateral;

d.     if all or any portion of the Collateral is assigned for the benefit of creditors or, to the extent permitted by law, if bankruptcy or insolvency proceedings commence against or by any of these parties: i) Debtor, ii) any partnership of which Debtor is a general partner, and iii) any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the Obligations;

e.     if any financing statement including all or any portion of the Collateral but not related to this security interest and not favoring Secured Party is filed;

f.     if any lien attaches to any of the Collateral;

g.     if any of the Collateral is lost, stolen, damaged, or destroyed, unless it is promptly replaced with Collateral of like quality or restored to its former condition; and/or

h.     if any "Event of Default", as that term may be defined, in any instrument evidencing or securing the Obligations occurs.

## Remedies of Secured Party on Default

1.     <u>Remedies</u>.  During the existence of any event of default, Secured Party may declare the unpaid principal and earned interest of the Obligations immediately due in whole or part, enforce the Obligations, and exercise any rights and remedies granted by the Texas Business and Commerce Code or by this agreement, including the following:

a.     require Debtor to deliver to Secured Party all books and records relating to the Collateral;

b.     require Debtor to assemble the Collateral and make it available to Secured Party at a place reasonably convenient to both parties;

c.     take possession of any of the Collateral and for this purpose enter any premises where it is located if this can be done without breach of the peace;

d.     sell, lease, or otherwise dispose of any of the Collateral in accord with the rights, remedies, and duties of a secured party under chapters 2 and 9 of the Texas Business and Commerce Code after giving notice as required by those chapters; unless the Collateral threatens to decline speedily in value, is perishable, or would typically be sold on a recognized market, Secured Party will give Debtor reasonable notice of any public sale of the Collateral or of a time after which it may be otherwise disposed of without further notice to Debtor; in this event, notice will be deemed reasonable if it is mailed, postage prepaid, to Debtor at the address specified in this agreement at least ten (10) days before any public sale or ten (10) days before the time when the Collateral may be otherwise disposed of without further notice to Debtor;

Initials: 

6

e.    surrender any insurance policies covering the Collateral and receive the unearned premium;

f.    apply any proceeds from disposition of the Collateral after default in the manner specified in chapter 9 of the Texas Business and Commerce Code, including payment of Secured Party's reasonable attorney's fees and court expenses;

g.    if disposition of the Collateral leaves the Obligations unsatisfied, collect the deficiency from Debtor; and\or

h.    take any other action or exercise any other remedy permitted under the terms of this agreement or any other agreement included among the Obligations.

2.    <u>Cumulative Rights.</u>  The rights and remedies expressly conferred by this agreement are cumulative of all other rights and remedies conferred by any other agreement between Debtor and Secured Party, any other agreement included in the Obligations, by law or in equity. They shall not be deemed to deprive Secured Party of any other legal or equitable rights or remedies, by judicial proceedings or otherwise, appropriate to enforce the conditions, covenants, and terms of this agreement and of the Note. The employment of any remedy hereunder, or otherwise, shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

3.    <u>Sales on Credit.</u> If Secured Party sells any of the Collateral upon credit, Debtor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the indebtedness of the Purchaser. In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor shall be credited with the proceeds of the sale.

4.    <u>No Obligation to Pursue Others.</u> Secured Party has no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them and Secured Party may release, modify or waive any collateral provided by any other person to secure any of the Obligations, all without affecting Secured Party's rights against Debtor.  Debtor waives any right it may have to require Secured Party to pursue any third person for any of the Obligations.

5.    <u>Compliance With Other Laws.</u>  Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

6.    <u>Warranties.</u> Secured Party may sell the Collateral without giving any warranties as to the Collateral.  Secured Party may specifically disclaim any warranties of title or the like.  This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

7.    <u>Agency.</u>  Debtor hereby irrevocably makes, constitutes and appoints the Secured Party its agent and attorney-in-fact, such agency being coupled with an interest, giving unto the attorney irrevocable power, either in its own name or in the name of Debtor, to take all necessary steps, by proceedings in court or otherwise to notify parties of its interest in the Collateral and to collect all revenues, issues and premises, to cause the Collateral to be sold or otherwise transferred or conveyed, and to do all such things in such manner and on such terms as said Secured Party may deem best, including but not limited to the negotiating and dealing in all respects with the Certificates of Title evidencing ownership in the Collateral and to endorse the name of Debtor on any document, check, or interest dealing with or involving the Collateral after an event of default has occurred.

Initials        7

**General Provisions**

1.    <u>Parties Bound</u>.  Secured Party's rights under this agreement shall inure to the benefit of its successors and assigns.  Assignment of any part of the Obligations and delivery by Secured Party of any part of the Collateral will fully discharge Secured Party from responsibility for that part of the Collateral.  If Debtor is more than one, all their representations, warranties, and agreements are joint and several.  Debtor's Obligations under this agreement shall bind Debtor's personal representatives, successors, and assigns.

2.    <u>Waiver</u>.  Neither delay in exercise nor partial exercise of any of Secured Party's remedies or rights shall waive further exercise of those remedies or rights.  Secured party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights.  Secured Party's waiver of any default does not waive further default.  Secured Party's waiver of any right in this agreement or of any default is binding only if it is in writing.  Secured Party may remedy any default without waiving it.

3.    <u>Reimbursement</u>.  If Debtor fails to perform any of Debtor's Obligations, Secured Party may perform those Obligations and be reimbursed by Debtor on demand at the place where the note is payable for any sums so paid, including attorney's fees and other legal expenses, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts.  The sum to be reimbursed shall be secured by this security agreement.

4.    <u>Interest Rate</u>.  Interest included in the Obligations shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited to the principal of the Obligations or, if that has been paid, refunded.  On any acceleration or required or permitted prepayment of the Obligations, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal amount of the Obligations or, if the principal amount has been paid, refunded.  This provision overrides other provisions in this and all other instruments concerning the Obligations.

5.    <u>Modifications</u>.  No provision of this agreement shall be modified or limited except by written agreement.

6.    <u>Severability</u>.  The unenforceability of any provision of this agreement will not affect the enforceability or validity of any other provision.

7.    <u>After-Acquired Property</u>.  This security interest shall attach to after-acquired Collateral only to the extent such is permitted by law.

8.    <u>Applicable Law</u>.  This agreement will be construed according to Texas law.

9.    <u>Place of Performance</u>.  This agreement is to be performed in the county of Secured Party's mailing address.

10.    <u>Financing Statement</u>. A photographic, or other reproduction of this agreement or any financing statement covering the Collateral is sufficient as a financing statement. Debtor further authorizes Secured Party to file a financing statement describing the Collateral with any clerk or filing office including, but not limited to, the Secretary of the State of Texas and of the state (if different) in which Debtor was organized.

11.    <u>Presumption of Truth and Validity</u>.  If the Collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth, and all prerequisites to the sale specified by this agreement and by the Texas Business and Commerce Code will be presumed satisfied.

Initials                     8

12.  Singular and Plural.  When the context requires, singular nouns and pronouns include the plural.  All references to "Debtor" include each Debtor and any combination of Debtors (if more than one).

13.  Priority of Security Interest.  This security interest shall neither affect nor be affected by any other security for any of the Obligations.  Neither extensions of any of the Obligations nor releases of any of the Collateral will affect the priority or validity of this security interest with reference to any third person.

14.  Cumulative Remedies.  Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms of this agreement.  All remedies of Secured Party may be exercised at the same or different times, and no remedy shall be a defense to any other. Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this agreement.

15.  Definitions.  The terms defined at the beginning of this instrument shall have the meanings and/or definitions so stated.  Any other term used herein and defined in the Texas Business and Commerce Code (as such Code is from time to time amended) shall have the same definition contained in said Code, unless expressly provided otherwise herein.

16.  Addresses for Notices.  All notices and other communications provided for hereunder or required by law shall be in writing and shall be delivered by registered, certified or first class mail, postage prepaid, addressed to the party to be notified as follows:

|  | |
|---|---|
| If to Secured Party: | P.O. Box 7030<br>Texarkana, TX  75505 |
| If to Debtor: | 1624 W. Crosby Rd., Ste. 101<br>Carrollton, TX 75006 |

Notices delivered by mail shall be effective upon deposit in the U.S. Mail.

17.  Waiver of Marshaling.  Debtor hereby waives any and all rights that would otherwise require Secured Party to marshall or prioritize for sale all or any portion of the Collateral.  Secured Party may sell all or any portion of the Collateral without regard to other property securing the Obligations, and without regard to equitable or common law principles of marshaling.

18.  Purchase Money Security Interests.  To the extent the Collateral secures any obligation that was not incurred for the purchase of the Collateral, payments applied to the indebtedness shall be applied, first, to the discharge of the non-purchase money obligation.

**SECURED PARTY:**
Dealers Credit Express, Inc.,
A Texas Corporation

By: _____
Name: Lucas Ponder
Its: General Manager

**DEBTOR:**
Bullmoose Motor Sports, LLC, a Texas Limited
Company dba James Maverick Motor Sports

By: _____
Name: Carroll LeBouef
Its: Member

By: _____
Name: Challis LeBouef
Its: Member

Initials: _____

9