**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

NEXTGEAR CAPITAL, INC. AND
WESTLAKE FLOORING COMPANY,
LLC

                   Plaintiffs,

    v.

DEALERS CREDIT EXPRESS, INC.
                    Defendant.

Case No.  3:17-CV-1012-M

## DEFENDANT'S SECOND AMENDED ANSWER

Defendant Dealers Credit Express, Inc. ("DCE") files this Second Amended Answer to Plaintiffs' Original Complaint ("Complaint") of Nextgear Capital, Inc. ("Nextgear") and Westlake Flooring Company, LLC ("WFC"), and would respectfully show as follows:

DCE denies each and every allegation contained in the Complaint, except as hereinafter specifically admitted. To the extent that the headings or any other non-numbered statements in the Complaint contain any allegations, DCE denies each and every allegation therein.

The numbered paragraphs 1-70 below correspond to the numbered paragraphs of the Complaint.

## PARTIES

1.      DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1 of the Complaint and, therefore, denies them.

2.      DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 of the Complaint and, therefore, denies them.

3.      DCE admits the allegations in Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.      DCE admits that Plaintiffs contend that subject matter over Plaintiffs' claims is conferred upon this Court by 28 U.S.C. §§ 1332.  DCE further admits that Plaintiffs contend that the dispute is between citizens of different states.  DCE further admits that Plaintiffs contend that the amount in controversy exceeds "seventh-five" thousand dollars ($75,000.00) exclusive of interests and costs.  The remaining allegations not specifically admitted are denied.

5.      DCE admits the allegations contained in Paragraph 5.

## FACTUAL BACKGROUND

6.      DCE admits that Nextgear and WFC have filed a Complaint seeking a court order to determine the perfection and priority of Nextgear and WFC's purported security interest in sales proceeds held by DCE.  The remaining allegations not specifically admitted are denied.

## FACTS SPECIFIC TO NEXTGEAR

7.      DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7 of the Complaint and, therefore, denies them.

8.      DCE admits that a copy of an agreement and the exhibits is attached to the Complaint.   DCE admits Bullmoose was a retail motor vehicle dealership.   DCE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8 of the Complaint and, therefore, denies them.

9.      DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 of the Complaint and, therefore, denies them.

10.      DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint and, therefore, denies them.

11.      DCE lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 11 of the Complaint and, therefore, denies them.

12.     DCE admits Nextgear appears to have filed a UCC-1 with the Texas Secretary of State on August 16, 2001.  The remaining allegations not specifically admitted are denied.

13.     DCE admits that Nextgear attached a document that appears to be a UCC-1 filed with the Texas Secretary of State on August 16, 2001 to the Complaint as Exhibit "B".  The remaining allegations not specifically admitted are denied.

14.     To the extent Paragraph 14 contains conclusions of law, no answer is required. Except as expressly admitted, DCE denies the remaining allegations of Paragraph 14.

15.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 of the Complaint and, therefore, denies them.

16.     DCE admits that Nextgear attached a document purporting to be the NextGear RDR s Exhibit "C" to the Complaint.  The remaining allegations not specifically admitted are denied.

17.     DCE admits that Bullmoose filed a Chapter 7 bankruptcy case on September 21, 2016, and that the case number was 16-33714.  The remaining allegations not specifically admitted are denied.

18.     DCE admits that Nextgear filed a motion from relief of stay.  DCE further admits the bankruptcy Court entered an agreed order on September 29, 2016.  DCE admits that the court's order is the best evidence of the contents of the order.  DCE further agrees that a copy of the order referenced in Paragraph 18 is attached to the Complaint as Exhibit "D".  The remaining allegations not specifically admitted are denied.

19.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 of the Complaint and, therefore, denies them.

20.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 of the Complaint and, therefore, denies them.

21.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 of the Complaint and, therefore, denies them.

## FACTS SPECIFIC TO WFC

22.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the Complaint and, therefore, denies them.

23.     DCE admits that WFC attached documents as Exhibit "E" to the Complaint.  The remaining allegations not specifically admitted are denied.

24.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Complaint and, therefore, denies them.

25.     DCE admits that WFC attached documents as Exhibit "E" to the Complaint.  DCE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25 of the Complaint and, therefore, denies them.

26.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 of the Complaint and, therefore, denies them.

27.     DCE admits that WFC appears to have filed a UCC-1 Financing Statement with the Texas Secretary of State on or about May 5, 2016.  DCE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 27 of the Complaint and, therefore, denies them.

28.     DCE admits that WFC attached a document that appears to be a UCC-1 Financing Statement filed with the Texas Secretary of State dated May 5, 2016 as Exhibit "F" to the Complaint.  To the extent Paragraph 28 contains conclusions of law, no answer is required.

4

Except as expressly admitted, DCE denies the remaining allegations of Paragraph 28.

29.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29 of the Complaint and, therefore, denies them.

30.     DCE admits that WFC attached a copy of a document purporting to be the WFC RDR as Exhibit "G" to the Complaint.  To the extent Paragraph 30 contains allegations to which no answer is required, DCE does not answer these allegations.  Except as expressly admitted, DCE denies the remaining allegations of Paragraph 30.

31.     DCE admits that WFC filed a motion from relief of stay in a bankruptcy proceeding.  DCE further admits the Bankruptcy Court entered an agreed order on November 22, 2016.  DCE agrees that the court's order is the best evidence of the contents of the order.  The remaining allegations not specifically admitted are denied.

32.     DCE admits that the court's order is the best evidence of the contents of the order. DCE further agrees that a copy of the order referenced in Paragraph 32 is attached to the Complaint as Exhibit "H".  The remaining allegations not specifically admitted are denied.

33.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 of the Complaint and, therefore, denies them.

34.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34 of the Complaint and, therefore, denies them.

35.     DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 of the Complaint and, therefore, denies them.

## FACTS COMMON TO BOTH NEXTGEAR AND WFC

36.     To the extent Paragraph 36 contains conclusions of law, no answer is required. DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations

in Paragraph 36 of the Complaint and, therefore, denies them.

  37. To the extent Paragraph 37 contains conclusions of law, no answer is required. DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the Complaint and, therefore, denies them.

  38. To the extent Paragraph 38 contains conclusions of law, no answer is required. DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 of the Complaint and, therefore, denies them.

  39. DCE admits that it obtained possession, custody and control of fourteen (14) vehicles from Bullmoose, and that DCE sent the 14 vehicles to Alliance Auto Auction in Dallas for storage.  The remaining allegations not specifically admitted are denied.

  40. DCE admits the allegations of Paragraph 40.

  41. DCE denies the allegations of Paragraph 41.

  42. To the extent Paragraph 42 contains conclusions of law, no answer is required. DCE lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 of the Complaint and, therefore, denies them.

  43. DCE admits that it filed a UCC-1 Financing Statement securing its security interest in the vehicles on July 19, 2016, with the Texas Secretary of State.   The remaining allegations not specifically admitted are denied.

  44. DCE admits that Nextgear and WFC filed financing statements prior to the date DCE filed a financing statement on July 19, 2016.  The remaining allegations not specifically admitted are denied.

  45. To the extent Paragraph 45 contains conclusions of law, no answer is required. The remaining allegations not specifically admitted are denied.

46.     DCE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 46 of the Complaint and, therefore, denies them.

47.     To the extent Paragraph 47 contains conclusions of law, no answer is required. DCE admits it did not send a notice to Plaintiffs.  The remaining allegations not specifically admitted are denied.

48.     To the extent Paragraph 48 contains conclusions of law, no answer is required. The remaining allegations not specifically admitted are denied.

49.     To the extent Paragraph 49 contains conclusions of law, no answer is required. The remaining allegations not specifically admitted are denied.

50.     DCE admits that counsel for Plaintiffs sent e-mails to DCE's counsel regarding a request for an accounting for the 14 vehicles.  The remaining allegations not specifically admitted are denied.

51.     DCE admits that counsel for Plaintiffs sent e-mails to DCE's counsel, and made demand for turnover of the proceeds from the sale of the 14 vehicles.  DCE further admits that the court's order is the best evidence of the contents of the court's order.  DCE further admits that an e-mail string has been attached to Plaintiffs' Complaint as Exhibit "K".  The remaining allegations not specifically admitted are denied.

52.     DCE admits that it has not turned over the sales proceeds from the 14 vehicles to Plaintiffs.  The remaining allegations not specifically admitted are denied.

53.     DCE admits that its counsel sent a letter to Plaintiffs' counsel on or about December 16, 2016.  DCE further admits that the contents of the letter are the best evidence of the contents of the letter.  DCE further admits that a copy of the letter is attached to Plaintiffs' Complaint as Exhibit "L".  The remaining allegations not specifically admitted are denied.

54.     DCE admits the allegations of Paragraph 54.

55.     DCE admits that certain bills of sale and checks are attached to the Complaint as Exhibit "M".  The remaining allegations not specifically admitted are denied.

56.     To the extent Paragraph 56 contains conclusions of law, no answer is required. The remaining allegations not specifically admitted are denied.

57.     DCE denies the allegations of Paragraph 57.

58.     To the extent Paragraph 58 contains conclusions of law, no answer is required. The remaining allegations not specifically admitted are denied.

59.     DCE admits the Bankruptcy was administratively closed on or about February 9, 2017.   To the extent Paragraph 59 contains conclusions of law, no answer is required.  The remaining allegations not specifically admitted are denied.

60.     To the extent Paragraph 60 contains conclusions of law, no answer is required. DCE admits that Plaintiffs are seeking the relief requested in Paragraph 60.  The remaining allegations not specifically admitted are denied.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JDUGMETN CONCERNING PRIORITY AND EXTENT OF SECURITY INTEREST IN ESCROWED PROCEEDS

61.     To the extent that the allegations in Paragraph 61 do not require any response, no response is provided.  The remaining allegations are denied.

62.     To the extent that the allegations in Paragraph 62 do not require any response, no response is provided.  To the extent Paragraph 62 contains conclusions of law, no answer is required.  The remaining allegations are denied.

63.     To the extent that the allegations in Paragraph 63 do not require any response, no response is provided.  To the extent Paragraph 63 contains conclusions of law, no answer is required.  The remaining allegations are denied.

64.     To the extent that the allegations in Paragraph 64 do not require any response, no response is provided.  To the extent Paragraph 64 contains conclusions of law, no answer is required.  The remaining allegations are denied.

## COUNT II – ATTORNEYS' FEES

65.     To the extent that the allegations in Paragraph 65 do not require any response, no response is provided.  The remaining allegations are denied.

66.     To the extent that the allegations in Paragraph 66 do not require any response, no response is provided.  To the extent Paragraph 66 contains conclusions of law, no answer is required.  The remaining allegations are denied.

## COUNT III – CONVERSION

67.     To the extent that the allegations in Paragraph 67 do not require any response, no response is provided.  The remaining allegations are denied.

68.     To the extent that the allegations in Paragraph 68 do not require any response, no response is provided.  To the extent Paragraph 68 contains conclusions of law, no answer is required.  The remaining allegations are denied.

## COUNT IV – CONSTRUCTIVE TRUST

69.     To the extent that the allegations in Paragraph 69 do not require any response, no response is provided.  The remaining allegations are denied.

70.     To the extent that the allegations in Paragraph 70 do not require any response, no response is provided.  To the extent Paragraph 70 contains conclusions of law, no answer is

required.  The remaining allegations are denied.

**<ins>AFFIRMATIVE DEFENSES</ins>**

### 1.  Waiver

DCE pleads the affirmative defense of waiver, and would show that Plaintiffs waived any alleged rights they may have had, whether arising out of law or contract, with full knowledge of the material facts, in that they performed acts which were inconsistent with any alleged rights they assert or their intention to rely upon such rights.  Nextgear and Westlake intentionally relinquished any rights as secured creditors they may have had in the 14 vehicles at issue.  Both parties had actual knowledge that DCE was "flooring" vehicles for Bullmoose and that DCE had a security interest in the vehicles in Bullmoose's inventory.  Westlake knew that Bullmoose was surrendering and transferring the 14 vehicles to DCE and expressly consented to the transfer and DCE taking possession of the vehicles.  On information and belief, Nextgear failed to take reasonable steps to protect its alleged interest in the 14 vehicles and therefore voluntarily relinquished any right it may have had in the vehicles.  In addition, Nextgear waived its claims by "flipping" two Nextgear-financed cars over to DCE's account in August of 2016, prior to the bankruptcy filing.  As part of those flips, Nextgear sent the titles for those two cars to DCE to hold as evidence of DCE's senior purchase-money security interest, as was standard business practice among the parties and in the industry.  These acts constitute a clear recognition of DCE's priority interest in the cars for which it provided purchase money to Bullmoose.  In addition, both Plaintiffs waived their current claims by failing to object to Notification of Disposition of Collateral letters that DCE sent them in November of 2016, in which DCE notified Plaintiffs that it was about to sell the cars for which it had provided Bullmoose purchase money financing.

Plaintiffs further waived their current claims based upon their actions and inaction in Bullmoose's bankruptcy proceeding. For example, during those bankruptcy proceedings, in their emergency motions to lift the automatic stay with respect to the vehicles they were flooring for Bullmoose, they identified and defined as "Financed Vehicles" only the cars for which they had specifically provided purchase-money financing. They only requested permission to take necessary actions to preserve their collateral in the cars they were respectively flooring. They did not identify the cars that DCE was flooring or request that they be allowed to take any action with respect to DCE-floored vehicles. DCE also filed a motion to lift the automatic stay with respect to the cars it was flooring. Westlake never objected to DCE's motion and the Court overruled Nextgear's objection. Nextgear never thereafter moved to amend or re-file its own motion to include the DCE-floored vehicles in its list of "Financed Vehicles."

### 2. Quasi-Estoppel

DCE would further show that Plaintiffs are estopped to assert their current claims to DCE's disadvantage due to their prior inconsistent acts and omissions. Both parties had actual knowledge that DCE was "flooring" vehicles for Bullmoose and that DCE had a security interest in the vehicles in Bullmoose's inventory. Westlake consented to DCE taking possession of the vehicles. In addition, as described above, Nextgear flipped two cars to DCE in recognition of DCE's senior security interest, Plaintiffs both failed to object to DCE's Notice of Disposition letters, neither Plaintiff requested in the bankruptcy to take any action to preserve DCE's floored vehicles as their own collateral in their motions to lift the automatic stay, and Westlake never objected to DCE's own motion to lift the stay. It would be inequitable to award Plaintiffs the money from the sale of cars it specifically financed when Plaintiffs' acts and omissions are inconsistent with Plaintiffs' claim to the money.

### 3. Equitable Estoppel

DCE further pleads the defense of equitable estoppel, and would show that Plaintiffs are estopped from claiming any right or interests in the vehicles at interest in this matter. As stated, in August of 2016, Nextgear flipped two vehicles to DCE. The purchase money on those two vehicles was almost $86,000. Nextgear sent the titles to DCE to hold as evidence of DCE's senior purchase-money security interest. If DCE had known that Nextgear would later claim a prior security interest on the cars DCE was flooring, it never would have agreed to the flip. Nextgear's actions were an express recognition of DCE's senior security interest in the cars DCE was flooring for Bullmoose. DCE relied on Nextgear's actions and representations to its detriment.

### 4. Collateral Estoppel

DCE further pleads the affirmative defense of collateral estoppel, and would show that Plaintiffs are estopped from claiming any right or interests in the vehicles at interest in this matter. On or about October 4, 2016, DCE filed an Unopposed Emergency Motion for Relief from the Automatic Stay ("Motion to Lift Stay"), seeking permission from the Bankruptcy Court to sell the DCE vehicles. On or about October 12, 2016, Nextgear filed an objection to DCE's Motion to Lift Stay, and raised its first priority security interest argument in its response. Although Nextgear objected to DEC's Motion to Lift Stay, on October 19, 2016 the Bankruptcy Court entered an order and ruled that the automatic stay would be lifted so DCE could proceed with liquidating the DCE vehicles. The Bankruptcy Court did not recognize Nextgear's request that it be recognized as having a first priority security interest in the collateral. Neither Plaintiff in this matter appealed the Bankruptcy Court's order, or the final discharge of the bankruptcy matter. As such, Plaintiffs are estopped from challenging the Bankruptcy Court's orders in this

case or the effect of those orders.

### 5. Implied-In-Fact Contract

DCE would further show that DCE had an implied-in-fact contract with each of the Plaintiffs in which they agreed to recognize, and did recognize, each other's senior security interests in specific automobiles in inventory for which each party providing purchase-money financing.  This is evidenced by the industry standards to which the parties adhered, the parties' conduct, their earlier course of dealing, and other surrounding circumstances.  As is standard in the industry, the Plaintiffs and DCE only provided purchase-money financing on a per-car basis as cars were acquired in inventory of dealerships at which they were flooring cars.  In other words, the parties did not provide financing on inventory dealerships already had, or on inventory generally, because each party knew that another financier had provided the purchase money for the inventory for which the party had not.  As evidence of this understanding, each party held the physical titles to the specific cars for which they provided purchase-money financing.  They all recognized that holding the titles evidenced each of their priority purchase-money security interests.  From time to time, a financier may have transferred flooring on a dealer's vehicle to another financier for that dealer.  This is referred to as a "flip."  When flips were done, the financier transferring the obligation sent the vehicle title to the party taking on the obligation.  That is exactly what Nextgear did with DCE in August of 2016 for two cars in Bullmoose's, which was at the request of Nextgear and was an express recognition by Nextgear of the parties' implied-in-fact contract.  If such an agreement did not exist between the parties, and DCE thought Nextgear would later attempt to appropriate those flipped cars from DCE when DCE had already paid Nextgear for them in the flip, then DCE would have never consented to the flip.  As for Westlake, its representative was physically present at Bullmoose's lot with DCE

13

when DCE repossessed the cars for which it had provided Bullmoose purchase-money financing. Westlake's representative actually assisted DCE in locating the cars DCE was flooring for Bullmoose, and consented to DCE's repossession of those cars, again, in recognition of its implied-in-fact contract with DCE. The fact that, in the bankruptcy, neither Nextgear nor Westlake moved to take any action with respect to DCE-financed cars in their Emergency Motions for Relief from the Automatic Stay further evidences the existence of the implied-in-fact contracts.

### 6. Constructive Notice

DCE would further show that, due the industry standards to which the parties adhered and the parties' conduct in dealing with each other, Plaintiff's had constructive notice of DCE's provision of purchase-money security interest for automobiles in Bullmoose's inventory. As stated, the parties only provided purchase-money to Bullmoose for specific cars and never provided financing for inventory in general. They each held the titles for the cars that they were financing and did not hold titles for vehicles financed by another party. They closely monitored and audited Bullmoose's inventory to monitor the status of the cars for which they provided the purchase-money financing. If they did not hold the title to a particular car on Bullmoose's lot, and had not provided the purchase money financing for that car, they had constructive notice that the purchase-money financing had been provided by another party. Thus, the parties performed open, visible and unequivocal acts that clearly showed they each had an exclusive, senior security interest the specific cars they each were respectively flooring for Bullmoose.

### 7. Unjust Enrichment

DCE would further show that allowing Plaintiffs to recover from DCE in this matter would unjustly enrich Plaintiffs.

**8. Superior Right to Posses**

With respect to Plaintiffs' conversion claim, DCE would show that it has a superior right to posses the vehicles at issue in this matter, in that Plaintiffs knew DCE had a floor plan with Bullmoose, that DCE held titles to vehicles that were floored to Bullmoose, and that Bullmoose voluntarily surrendered the vehicles to DCE in partial satisfaction of its debt. DCE would further show that Plaintiffs waived any alleged rights they may have had, whether arising out of law or contract, with full knowledge of the material facts, in that they performed acts which were inconsistent with any alleged rights they assert or their intention to rely upon such rights.

**9. Proportionate Responsibility**

With respect to Plaintiffs' conversion claim, DCE would further show that Plaintiffs own acts and omissions caused or contributed to Plaintiffs' alleged damages, if any.

## RESERVATION OF RIGHTS

DCE reserves the right to amend its pleadings, assert and rely on all proper affirmative defenses lawfully available, including those which may be disclosed or discovered through further assertions by Plaintiffs or otherwise through discovery.

## JURY DEMAND

DCE demands a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, DCE prays for judgment that:

a. Plaintiffs' Original Complaint be dismissed in its entirety with prejudice;

b. Plaintiffs are not entitled to the relief prayed for in their Complaint, or to any relief whatever;

c. DCE be awarded reasonable costs and its attorneys fees; and

d.  DCE be awarded such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Scott E. Stevens
State Bar No. 00792024
David P. Henry
State Bar No. 24027015
**STEVENS | HENRY, PLLC**
P.O. Box 3427
Longview, Texas 75606
Tel: (903) 753-6760
Fax: (903) 753-6761
scott@stevenshenry.com
david@stevenshenry.com

Amber Florio
State Bar No. 24056643
**FLORIO LAW FIRM, PLLC**
420 Throckmorton Street, Suite 200
Fort Worth, Texas 76107
Phone: 817-727-7187
Fax: 866-941-5321
amber@floriolawfim.com

**ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule LR-5(d).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Pursuant to Fed. R. Civ. P. 5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 16th day of October, 2017.

Scott E. Stevens